# EXHIBIT B



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency     GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**     DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

November 16, 2018

Evan Dwin
Dwin Legal, APC, 2121 Palomar Airport Road Suite 170
Carlsbad, California 92011

RE: **Notice to Complainant's Attorney**
DFEH Matter Number: 201811-04256716
Right to Sue: Kailikole / Palomar Community College District

Dear Evan Dwin:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

Exhibit B
P. 1



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**          DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

November 16, 2018

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 201811-04256716
Right to Sue: Kailikole / Palomar Community College District

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency　　　　　　　　　　　GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**　　　　　　　DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

November 16, 2018

Kathryn Kailikole
1145 Festival Road
San Marcos, California 92078

RE: **Notice of Case Closure and Right to Sue**
　　DFEH Matter Number: 201811-04256716
　　Right to Sue: Kailikole / Palomar Community College District

Dear Kathryn Kailikole,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective November 16, 2018 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Kathryn Kailikole                                    DFEH No. 201811-04256716

                    Complainant,

vs.

Palomar Community College District
1140 West Mission Road, San Marcos, CA 92069,
San Marcos, California 92069

                    Respondents

1. Respondent **Palomar Community College District** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Kathryn Kailikole**, resides in the City of **San Marcos** State of **California.**

3. Complainant alleges that on or about **June 13, 2018**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical or mental) and as a result of the discrimination was terminated, suspended, denied a work environment free of discrimination and/or retaliation, denied reasonable accommodation for a disability, other.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, participated as a witness in a discrimination or harassment claim, requested or used a disability-related accommodation and as a result was terminated, reprimanded, suspended, denied a work environment free of discrimination and/or retaliation.

**Additional Complaint Details:** This case concerns the Palomar Community College District's ("Defendant" or the "District") campaign to discredit, discriminate

-1-
*Complaint – DFEH No. 201811-04256716*

Date Filed: November 16, 2018

against, embarrass, retaliate against and illegally terminate Plaintiff Dr. Kathryn Kailikole ("Plaintiff" or "Dr. Kailikole") who was the Dean of Mathematics and the Natural and Health Sciences ("MNHS") Division for Palomar Community College ("Palomar College").

A. Plaintiff Is Appointed As Interim Dean.

On or about January 13, 2016, Daniel Sourbeer, the Dean of the Mathematics and the MNHS Division accepted the position of Interim Vice-President of Instruction which required the College to hire an interim Dean.

Plaintiff was hired as interim Dean of the MNHS Department or about January 13, 2016 Plaintiff was recommended for the position by Sourbeer.

The term of Plaintiffs written Contract to be employed as Interim Dean was January 13, 2016 through June 30,2016. The Agreement was amended on May 10,2016 so that Plaintiff s term as Interim Dean was extended from July 1,2016 through June 30,2017. Thus, as of May 10, 2016, the administration and Board was plainly satisfied with Plaintiffs performance.

Pursuant to her contract, Plaintiff could only be terminated for a "material and substantial breach" of her Agreement and/or "for cause." Cause is defined as "actions, omissions, or behaviors which are detrimental to the operations of the District and/or its major instructional, student and administrative divisions, or which impair the District's mission purpose or objectives ... which includes, but is not limited to, unsatisfactory work performance, dishonesty, misconduct, unprofessional conduct, or insubordination."

B.   Plaintiff Reports Professors Nakajima and Gerwig To The Campus Police For Improperly Using An Airgun In The Classroom.

Shortly after her appointment as interim Dean, on or about April 19,2016, two students advised Plaintiffs assistant, Debra McBrayer of a safety concern regarding their Physics 230 Class.

The students reported that Professor Takashi Nakajima ("Nakajima") used an airsoft gun as part of a rotational inertia lab in an unsafe manner. Specifically, the students alleged that, among other things, Nakajima failed to take appropriate safety measures and stayed in the back of the room talking with Gerwig and other students while the gun was being used.

Immediately after receiving the report from the two students, Ms. McBrayer reported the incident to the Campus Police.

-2-
Complaint – DFEH No. 201811-04256716
Date Filed: November 16, 2018

When Plaintiff returned to her office, she spoke with the students and Ms. McBrayer.

Ms. McBrayer informed Plaintiff that she spoke with the Campus Police. Plaintiff responded by calling the Campus Police and requesting that they come to her office to speak with her.

At Plaintiff's request, the Campus Police conducted an investigation, including dispatching Officer So'Oto of the Palomar Community College Police Department to meet with Plaintiff and the two students.

During the course of the investigation, Plaintiff provided Officer So'Oto with a copy of the District's policy on the use of weapons in the class room, which requires that such uses are approved by the Chief of Police. The students later e-mailed Dr. Kailikole the details of their allegations as well as a video, which she provided to the Campus Police.

In addition to reporting the matter to the Campus Police, Plaintiff reported the incident to her supervisor, Sourbeer.
Officer So'Oto interviewed Nakajima as part of his investigation. Nakajima told him that he had been using the gun as part of his curriculum for two years.

Officer So'Oto determined that Nakajima needed to get approval from the Chief of Police if he wanted to use the gun in class.
Accordingly, Plaintiff directed Nakajima to cease using the gun without first obtaining approval from the Chief of Police.
At the time of the gun incident, Plaintiff had only worked for the District for about three months. Thus, she was the first (and only) administrator to ever take any action on Nakajima's use of an airsoft gun in his physics lab, even though it started two years before Plaintiff's appointment as Dean. Plaintiff did not receive any further complaints about the gun after she directed Nakajima to stop using it.

C.     The District Promotes Dr. Kaikole to Dean Of The MNHS Division.

On April 28, 2017, Sourbeer submitted a formal evaluation of Plaintiff's performance as Interim Dean.

In the review, Sourbeer stated that Plaintiff "stepped into the MNHS Interim Dean position with confidence and passion." Sourbeer further stated that Plaintiff had been "a fierce advocate for students and has taken on some difficult issues."

In addition, Sourbeer determined that:

- "[m]orale" was high in the division which "speaks" to Plaintiffs

-3-
Complaint – DFEH No. 201811-04256716

Date Filed: November 16, 2018

"ability to work effectively with faculty and staff in her division."

- Plaintiff is "an excellent communicator" and that her "contributions toward grant writing and management have been superior."

- Plaintiff has "an excellent understanding of budgets and how to use them."

- Plaintiff has "a tremendous work ethic and works to exhaustion" and that she "wrote a funded proposal for $2m in one day."

- That the "welfare" of the students is "always in [Plaintiffs] thoughts, and she is also appreciative of the commitments and work of staff and faculty."

In May 2017, Dr. Jack Kahn was hired by the District as the Vice-President of Instruction. Rather than exercise his retreat rights, Sourbeer retired, which left open the permanent position of Dean of the MNHS Department. Due to its satisfaction with Plaintiffs performance as Interim Dean, the Board promoted Plaintiff to the position of Dean of the MNHS Department.

Plaintiff was hired as Dean of the MNHS Department pursuant to an Employment Contract with the District dated as effective April 11, 2017 and executed by Plaintiff on May 9, 2017. The term of the Employment Contract is July 1, 2017 through June 30, 2019. As with her prior contracts, Plaintiff could only be terminated for "a material and substantial breach of the agreement" and/or for "cause."

D. Plaintiff Reports Racist And Sexually Harassing Conduct By Nakajima and Gerwig.

Sometime in May 2017, the Chair of the Physics and Engineering Department, Dr. Daniel Finkenthal reported to Plaintiff that a student complained to him about various posters and other materials that were posted conspicuously on the walls and doors of rooms NS-249 and NS-252 in the Physics and Engineering Department. Dr. Finkenthal showed the materials to Plaintiff. NS-249 and NS-252 are rooms used by Nakajima and Professor Arthur Gerwig ("Gerwig").
On May 31, 2017, in response to the report from Dr. Finkenthal, Plaintiff reported to Shawna Cohen, Manager Equal Employment Opportunity and Compliance with the District's Deputy Title IX Coordinator, that she received the report regarding the

-4-
Complaint – DFEH No. 201811-04256716
Date Filed: November 16, 2018

Exhibit B
P. 7

offensive postings. The next day, a group of administrators reviewed the materials and removed them after determining that the postings violated federal, state and District nondiscrimination regulations, including Title IX.

The postings included:

- A recitation of a nmeumonic device stating: "Black Boys Rape Our Young Girls But Violet Gives Willingly Get Some Now."

- A posting entitled "Vogue May Edition" which portrayed a student lying across the hood of a pickup truck holding a piece of paper with a drawing of a penis in an enlarged and gratuitous characterization.

- A posting portraying a latino student named Juan which stated "2017 you know you juant me?/Hello Ladies" as a racist play on the student's name.

- A sexually harassing and racist posting which stated "Dick got her like" which was accompanied by a hashtag remark of "#black cock slut."

- A derogatory posting about a female student, who is short in stature, which stated "Jen's Height in Influence".

Plaintiff is informed and believes that students, student assistants employed by the District and faculty, including females, latinos and other members of minority groups, were or could be subjected to the postings.

Because of the seriousness of the allegations, and the facially harassing content of the postings personally observed by Plaintiff and the other administrators, Plaintiff recommended that Nakajima and Gerwig be removed from the classroom. This request was denied.

On June 28, 2017, nearly a month after Plaintiff reported the harassing postings to Ms. Cohen, Adrian Gonzalez, the Assistant Superintendent/Vice President, Student Services and the District's Title IX Coordinator, notified Ms. Cohen that an investigation was required.
The investigation was conducted by an outside attorney, Jeffrey Love. In conducting his investigation of the postings, Mr. Love interviewed Dr. Finkenthal, Plaintiff, Nakajima, Gerwig, Hector Garcia Villa, another Physics and Engineering Professor,

-5-
Complaint – DFEH No. 201811-04256716
Date Filed: November 16, 2018

1  and Susan Snow, a professor in the Mathematics Department who was also
2  Nakajima's and Gerwig's union representative.

3  On November 1, 2017, four months after Plaintiff reported the postings, Mr.
Love issued a summary of his investigation. In the report, Mr. Love concluded that
4  Nakajima and Gerwig were not credible and that their claimed unawareness of the
postings was not plausible. In fact, Mr. Love concluded "clearly [Nakajima and
5  Gerwig] were aware of these materials [and] had either displayed the items
themselves or allowed and even encouraged others to do so." Mr. Love further
6  concluded that Nakajima and Gerwig demonstrated a general attitude of indifference
to following the rules of the District concerning the avoidance of sexual harassment,
7  discrimination and maintaining a wholesome student academic environment."

8  Mr. Love found Dr. Finkenthal and Plaintiff to be credible witnesses.

9

10  Notably, this was not the first time Nakajima and Gerwig were found to engage
in discriminatory conduct. In 2009 (seven years before Plaintiff worked at the
11  College), the United States Department of Education's OCR Office found that
Nakajima and Gerwig failed to accommodate a student with a disability. Plaintiff is
12  informed and believes that instead of imposing any actual discipline for
discriminating against a disabled student, the District required Nakajima and Gerwig
13  to undergo sensitivity training. Plaintiff is also informed and believes that the District
and prior administrators received other complaints about Nakajima and Gerwig but
14  that no action was ever taken against them. Further, during the investigation of the
illegal postings, Dr. Finkenthal informed the investigator that shortly after the
15  sensitivity training, also in 2009, Nakajima refused to accommodate a student who
used a wheelchair and even told the student that he should just take vitamins and
16  "take care" of himself.

17

18  On November 27, 2017, Dr. Norman e-mailed Plaintiff and specifically instructed
Plaintiff to involve Dr. Finkenthal in the oversight of Nakajima and Gerwig and to
19  have Dr. Finkenthal observe Nakajima and Gerwig so that he could substantiate any
complaints. Dr. Norman further made it clear that the District would not place
20  Nakajima and Gerwig on any type of leave, even paid leave, so as to avoid doing
anything that may "create liability and deviate from our goals and mission."
21

22  Dr. Norman's e-mail appeared to request that she wanted Plaintiff and Dr.
Finkenthal to handle overseeing to Nakajima and Gerwig and made it clear that the
23  Title IX office was afraid to take any action to protect students from Nakajima and
Gerwig.
24

25  On December 4, 2017, Plaintiff met with Dr. Jack Khan, the Assistant
Superintendent and Vice-President Instruction to discuss her job duties. In the
26

27  -6-
Complaint – DFEH No. 201811-04256716
28  Date Filed: November 16, 2018

Exhibit B
P. 9

meeting, Plaintiff discussed her overwhelming work load and advised Dr. Khan that she was suffering from anxiety. Dr. Kahn assured Plaintiff that she was an "incredibly valuable member of the team" and that he was dedicated to providing her with his "complete support." Dr. Kahn also promised that they would meet again to review Plaintiffs schedule "and discuss strategies to help structure [her] workload better." Dr. Kahn further stated he "look[ed] forward to continuing" to work together. At no point did Dr. Kahn indicate that he believed Plaintiff had done anything that would place her job in danger. To the contrary, Dr. Kahn expressed his overall satisfaction with Plaintiffs work, confirmed that she was "incredibly valuable," and pledged to accommodate her medical condition.

On December 12, 2017, the District determined that Nakajima and Gerwig would only be placed on unpaid leave for one month even though they had a history of discriminatory conduct, were just found not only to have engaged in overtly racist and sexually harassing conduct but also were found to have lied about their sexist and racist conduct to the investigator. Dr. Kailikole is informed and believes that this grossly inadequate punishment was part of a pattern and practice by the District to cover up misconduct by Gerwig and Nakajima, even though it knew their continued presence in the classroom subjected students and faculty to discriminatory and harassing conduct.

E.  Plaintiff Is Wrongfully Placed On Leave, Non-Renewed And Terminated.

On December 14, 2017, two days after Nakajima and Gerwig were essentially excused from punishment and barely a week after she disclosed her disability, Plaintiff was suddenly placed on paid leave. Plaintiff was given no warning and was not given any specific reason for being placed on leave. In fact, she was escorted out of her office like a criminal, locked out of her e-mail account and, importantly, instructed not to return to campus or speak with anyone from the College. The only information Plaintiff was given was that she was purportedly under investigation for some unspecified "breach of confidential information." From that point forward, Plaintiff was completely cut-off from the College.

The District left Plaintiff on paid leave for 5 months without ever informing her of the specific nature of the charges against her. During the time Plaintiff was on paid leave, faculty members were falsely told that Plaintiff was on medical leave. Plaintiff could not do anything about the false information the District was disseminating about her because the District prohibited her from contacting anyone.

In January 2018, Dr. Kailikole hired an attorney and throughout January and February of 2018 made repeated attempts to obtain further information about why she was placed on leave. However, the District refused to provide any substantive

-7-
Complaint – DFEH No. 201811-04256716

Date Filed: November 16, 2018

information. The only thing the District would disclose to Dr. Kailikole was that the investigation originated in the Physics and Engineering Department. When provided with this information, Dr. Kailikole informed the District that she believed the decision to suddenly place her on leave and investigate her was in retaliation for reporting Nakajima and Gerwig's misconduct.

On February 27, 2018, the District decided to non-renew Plaintiff's contract. The District did not provide Plaintiff with any reason whatsoever for the decision not to renew her contract.

On February 28, 2018, the day after her contract was non-renewed without explanation, Plaintiff was interviewed by the District's investigator about, among other things, the incident where Nakajima and Gerwig used an airsoft gun in the classroom.

Plaintiff informed the investigator that Dr. Lisa Norman had asked about the airsoft gun incident during the investigation of the racially and sexually harassing conduct by Nakajima and Gerwig. Plaintiff also informed the investigator that she contacted Dr. Finkenthal with information about that incident to make sure it was not being used any more. Dr. Finkenthal said he did not think a gun was being used and requested further information so he could check on it. Accordingly, on or about December 8, 2017, Plaintiff forwarded Dr. Finkenthal an e-mail about the airsoft gun incident. Plaintiff is informed and believes that Dr. Norman reviewed this e-mail as part of a search of Dr. Kailikole's e-mails that was done without Dr. Kailikole's consent and as part of an effort by the District to look for information to discredit Dr. Kailikole after she reported Nakajima's and Gerwig's racist and harassing behavior.

Plaintiff's obvious, and only purpose, in forwarding the e-mail about the gun incident to Dr. Finkenthal was so that Dr. Finkenthal could confirm Nakajima and Gerwig were following Plaintiff's prior directive not to use the gun in the interest of student safety. Advising Dr. Finkenthal of the prior incident with the airsoft gun was also consistent with the recommendation by Dr. Norman, the Assistant Superintendent/Vice President, Human Resources, that she involve Dr. Finkenthal in her oversight of Nakajima and Gerwig.

When the District's investigator interviewed Plaintiff, he asked her if she ever agreed with Dr. Finkenthal that he would provide information about the airsoft gun incident to any person. Plaintiff informed the investigator that she never had any agreement with Dr. Finkenthal to provide the information to anyone else. The investigator asked Plaintiff if Dr. Finkenthal ever indicated to her that he intended to provide the information about the airsoft gun incident to his wife or members of the District's governing Board or "anything like that." Plaintiff informed the investigator

-8-
Complaint – DFEH No. 201811-04256716
Date Filed: November 16, 2018

that Dr. Finkenthal never indicated to her that he planned to provide the information to anyone else.

On or about March 4, 2018, a faculty member sent Plaintiff an unsolicited text message informing Plaintiff that Dr. Kahn was telling faculty members that Plaintiff was not returning. Given that the investigator told her it would be several weeks before he completed his investigation and would issue his report, it was clear to Plaintiff that the District had already decided to terminate her and that it was simply using the investigator to manufacture a purported reason.

On May 2, 2018, nearly two months after it began telling faculty members that Plaintiff was not returning, Plaintiff received a letter informing that Dr. Kahn was recommending her termination.

One of the reasons stated for Plaintiffs termination was the absurd and implausible conclusion by the District's investigator that Plaintiff did not forward Dr. Finkenthal the information about the gun incident for the logical, obvious and entirely proper purpose of advising the Chair of the Department of relevant information in connection with his oversight of two Professors who had just been found guilty of grossly improper racist and harassing conduct in the classroom. Instead, the investigator claims, Plaintiff was actually part of a conspiracy to leak confidential information outside the College. According to the investigator's report, the full extent of the alleged conspiracy was that Plaintiff would forward the e-mail to Dr. Finkenthal, who would then forward the e-mail to his wife. The only "evidence" cited in support of this ridiculous conclusion is that, three days after Plaintiff forwarded the e-mail about the gun incident to Dr. Finkenthal, Dr. Finkenthal forward the e-mail to his wife. Of course, Plaintiff had no idea that Dr. Finkenthal forwarded the e-mail to his wife or anyone else, and she certainly did not ask him to do it. Indeed, there is there a complete lack of evidence that Plaintiff was involved in any such "conspiracy." The very idea that Plaintiff conspired with Dr. Finkenthal to expose Nakajima's and Gerwig's misdeeds to Dr. Finkenthal's wife is nonsensical. Accordingly, Plaintiff is informed and believes that alleged leak "conspiracy" was manufactured to try to cover up the true, discriminatory and retaliatory reasons for Plaintiffs termination.

Notably, the investigator's report does not list a specific person who made a complaint about Dr. Kailikole. Instead the report simply states that it was "internally generated at the request of Human Resources." Further, the investigator interviewed only two witnesses, Plaintiff and Dr. Finkenthal. He did not interview anyone from the Human Resources department even though someone in the department purportedly originated the complaint. The investigator also did not collect or review any documents related to the origins of the investigation.

-9-
Complaint – DFEH No. 201811-04256716

Date Filed: November 16, 2018

In addition to the absurd allegation that she conspired to leak confidential information to Dr. Finkenthal's wife, the May 2, 2018 letter recommending Plaintiffs termination contains a list of alleged performance issues, none of which were ever presented to Plaintiff as potential reasons for any type of discipline, let alone termination.

To add insult to injury, as an additional purported reason for the termination, the District stated Plaintiff purportedly failed to appropriately monitor Nakaiima and Gerwig. This reason is false and pretextual on its face, given that Plaintiff was the first Dean to actually risk exercising any supervision over Nakajima and Gerwig. including reporting their overtly racist and sexually harassing conduct to the District only to see the District willfully fail to take any real action. Plaintiff is informed and believes that the District was angered and embarrassed by Plaintiffs reporting of the harassing conduct by Nakajima and Gerwig because it required the District to take action against tenured professors which risked raising suspicions and questions by students and faculty if they were punished appropriately, such as by termination or placement on an extensive leave. Plaintiff is further informed and believed that the District wanted to punish Plaintiff for asserting her rights by suggesting that the investigation was illegitimate and retaliatory.

On June 13, 2018, the District terminated Plaintiffs employment.

The District's decisions to place Plaintiff on paid leave, non-renew her contract and terminate her were all clearly made to retaliate against her for complaining about Nakajima's and Gerwig's illegal conduct, which it quickly swept under the rug by issuing a disproportionately light penalty they served over winter break, for reporting that the purported investigation of the "confidentiality" issue was pretextual and retaliatory, and to discriminate against Plaintiff based upon, and to avoid accommodating, Plaintiff's mental health condition. Indeed, until the District was forced to deal with Plaintiffs disability and her complaint about Nakajima and Gerwig's conduct and the investigation, she was never given any indication that her job - to which she had recently been promoted - was in any danger whatsoever. Prior to being suddenly placed on leave, Plaintiff had a reputation at the College as a strong leader, an advocate for students, a talented fundraiser, and, above all, an educator dedicated to the College's mission. Plaintiff was completely humiliated by her sudden removal from campus, the non-renewal of her contract and being subjected to a sham investigation and termination over allegations manufactured by the District to punish her for raising the embarrassing issue of racism and sexual harassment in the classroom and to discriminate against Plaintiff for, and to avoid accommodating, Plaintiff's mental health condition. As a result of this illegal conduct by the District, Plaintiff has suffered lost back wages and benefits, lost future earnings and benefits, lost promotions, extreme amounts of emotional distress and other damages.

-10-
Complaint – DFEH No. 201811-04256716

Date Filed: November 16, 2018

1  Plaintiff alleges causes of action under Government Code section 12940 et seq., including under Government Code section 12940(a), Government Code section 12940(j), Government Code section 12940(m) and Government Code section 12940(n), as well as claims for retaliation in violation of Labor Code section 1102.5 and violations of federal law, including 20 U.S.C. section 1681 and 42 U.S.C. section 2000d.

-11-
Complaint – DFEH No. 201811-04256716

Date Filed: November 16, 2018

# VERIFICATION

I, **Kathryn Kailikole**, am the **Complainant** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On November 16, 2018, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Marcos, CA**

-12-
Complaint – DFEH No. 201811-04256716

Date Filed: November 16, 2018