Regina A. Petty (SBN 106163)
    E-Mail: rpetty@fisherphillips.com
Adam F. Sloustcher (SBN 291657)
    E-Mail: asloustcher@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile:  (858) 597-9601

Attorneys for Defendant
Palomar Community College District

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN KAILIKOLE, an individual,<br><br>                    Plaintiff,<br><br>        v.<br><br>PALOMAR COMMUNITY COLLEGE DISTRICT, a governmental entity; and DOES 1 through 25, inclusive,<br><br>                    Defendants. | Case No: 3:18-cv-02877-AJB-MSB<br><br>*[Previously San Diego Superior Court Case No. 37-2018-00058754-CU-WT-NC before the Honorable Ronald F. Frazier]*<br><br>**DEFENDANT PALOMAR COMMUNITY COLLEGE DISTRICT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. RULES 12(B) AND 12(B)(6)**<br><br>Date: April 4, 2019<br>Time:  2:00 p.m.<br>Courtroom: 4A<br><br>State Complaint: November 20, 2018<br>Removed:  December 26, 2018 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................ 1

II.   FACTUAL BACKGROUND ............................................... 2

    **A.**   The Board's personnel decisions are governed by the Education Code and the District's Administrative Association Handbook ........................................................................... 2

    **B.**   Plaintiff was terminated due to longstanding issues of poor work performance, neglect of responsibility, and misconduct . 4

    **C.**   Plaintiff was terminated in accordance with the Education Code and the District's Disciplinary and Grievance Procedures ....... 7

III.  ARGUMENT ...................................................................... 9

    **A.**   Legal Standard ........................................................... 9

        1.   Motion to Dismiss for Failure to State a Claim .............. 9

        2.   Nonenumerated Grounds for Motion to Dismiss ......... 10

    **B.**   Plaintiff's First and Second Causes of Action Should be Dismissed Because Plaintiff Did Not Engage in Protected Activity ................................................................... 10

    **C.**   Plaintiff's Third, Fourth, Fifth, and Sixth Causes of Action Should be Dismissed Because The District is Immune From Liability in Connection With the Alleged Claims ................. 14

    **D.**   Plaintiff's Fourth, Fifth, and Sixth Causes of Action Fail as a Matter of Law Because Plaintiff Did Not Suffer a FEHA-Recognized Disability ............................................... 17

    **E.**   Plaintiff's Seventh Cause of Action is Barred Because Plaintiff Fails to State a Claim for Which She Is Entitled to Relief ..... 18

        1.   Plaintiff Failed to Exhaust the District's Internal Grievance Procedures .................................................. 18

        2.   No Evidence Supports Plaintiff's Whistleblower Retaliation Cause of Action .......................................... 21

IV.  CONCLUSION .............................................................. 24

FPDOCS 34974086.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Albino v. Baca*
(9th Cir. 2014) 747 F3d 1162 ................................................................. 10

*Ashcroft v. Iqbal*
(2009) 556 U.S. 662 ...................................................................... 9, 10

*Balistreri v. Pacifica Police Dep't*
(9th Cir.1990) 901 F.2d 696 ................................................................. 9

*Bell Atlantic Corp. v. Twombly*
(2007) 550 U.S. 544; Fed. R. Civ ................................................... 9, 10

*Bilyeu v. Morgan Stanley Long Term Disability Plan*
(9th Cir. 2012) 683 F.3d 1083 ....................................................... 3, 10

*Burch v. California Dep't of Motor Vehicles*
(E.D. Cal. Aug. 17, 2017) No. 2:13-CV-01283-TLN-DB, 2017
WL 3537242 ................................................................................... 18

*Burch v. Regents of University of California*
(E.D. Cal. 2006) 433 F.Supp.2d 1110 ............................................ 11

*Daniels–Hall v. National Educ. Ass'n*
(9th Cir. 2010) 629 F.3d 992 .............................................................. 9

*Diaz v. Federal Express Corp.*
(C.D. Cal. 2005) 373 F.Supp.2d 1034 ............................................ 17

*EEOC v. HBE Corp.*
135 F.3d 543 (8th Cir. 1998) ..................................................... 11, 13

*Epstein v. Wash. Energy Co.*
(9th Cir. 1996) 83 F.3d 1136 ..................................................... 10, 17

*Estrada v. Gate Gourmet, Inc.*
(C.D. Cal. Dec. 6, 2017) No. CV171100MWFFFMX, 2017 WL
7803787 ......................................................................................... 18

TABLE OF AUTHORITIES

*Garcetti v. Ceballos*
  (2006) 547 U.S. 410 ........................................................................... 11

*Guerrero v. Gates*
  (9th Cir. 2004) 357 F.3d 911 ............................................................. 9

*Irvin v. Zamora*
  (S.D. Cal. 2001) 161 F.Supp.2d 1125 ............................................. 10

*Jackson v. Birmingham*
  544 U.S. 167 (2005) ........................................................................ 10

*Knievel v. ESPN*
  (9th Cir. 2005) 393 F.3d 1068 ........................................................... 9

*Lund v. Leprino Foods Co.*
  (E.D. Cal., June 20, 2007, No. CIVS060431WBSKJM) 2007 WL
  1775474 ............................................................................................. 12

*McKenzie v. Renberg's, Inc.*
  94 F.3d 1478 (10th Cir. 1996) .................................................... 12, 13

*Merced Irr. Dist. v. County of Mariposa*
  (E.D. Cal. 2013) 941 F.Supp.2d 1237 .............................................. 3

*Muniz v. United Parcel Service, Inc.*
  (N.D. Cal. 2010) 731 F.Supp.2d 961 .......................................... 12, 13

*Rosenfield v. GlobalTranz Enterprises, Inc.*
  (9th Cir. 2015) 811 F.3d 282 ....................................................... 12, 13

*Skare v. Extendicare Health Servs., Inc.*
  515 F.3d 836 (8th Cir. 2008) ...................................................... 11, 13

*Striplin v. Shamrock Foods Co., Inc.*
  (9th Cir. 2018) 731 F. App'x 618 ................................................... 18

**State Cases**

*Braun v. City of Taft*
  (1984) 154 Cal.App.3d 332 ................................................................ 3

*Caldwell v. Montoya*
  (1995) 10 Cal.4th 972 ................................................................. 15, 16

TABLE OF AUTHORITIES

*Campbell v. Regents of University of California*
    (2005) 35 Cal.4th 311 ................................................................18, 19, 20, 21

*City of Huntington Beach v. Board of Administration*
    (1992) 4 Cal.4th 462 ................................................................................ 16

*Edgerly v. City of Oakland*
    (2012) 211 Cal.App.4th 1191 ........................................... 11, 21, 22, 23

*Higgins-Williams v. Sutter Medical Foundation*
    (2015) 237 Cal.App.4th 78 ..................................................................... 17

*Johnson v. City of Loma Linda*
    (2000) 24 Cal.4th 61 ............................................................................... 18

*Kayfetz v. State*
    (1984) 156 Cal.App.3d 491 ................................................................... 15

*Kemmerer v. County of Fresno*
    (1988) 200 Cal.App.3d 1426 ........................................................... 15, 16

*Palmer v. Regents of University of California*
    (2003) 107 Cal.App.4th 899 .................................................................. 19

*Patten v. Grant Joint Union High School Dist.*
    (2005) 134 Cal. App.4th 1378 ......................................................11, 21, 22

*Terris v. County of Santa Barbara*
    (2018) 20 Cal.App.5th 551, 558, review denied (May 23, 2018) ............. 19, 20

*Terris v. County of Santa Barbara*
    *supra,* 20 Cal.App.5th ...................................................... 19, 20, 21

*Westlake Community Hosp. v. Superior Court*
    (1976) 17 Cal.3d 465 ...............................................18, 19, 20, 21

**Federal Statutes**

20 U.S.C. § 1681 .......................................................................................... 10

42 U.S.C. § 2000(d) ................................................................................. 10, 14

29 U.S.C. § 203 (FLSA) ............................................................................... 12

---

TABLE OF AUTHORITIES

**State Statutes**

California Government Code § 815.2 ........................................................... 14, 16

California Government Code § 820.2 ..................................................... 14, 15, 16

California Government Code § 821.6 ..................................................... 14, 15, 16

California Government Code § 6252, subd. (d) ........................................................ 3

California Government Code § 12653(c) ............................................................. 19

California Government Code § 12926(k) ............................................................. 17

California Government Code § 12940 *et seq*. .................................... 14, 15, 17, 18

California Code of Civil Procedure § 425.16 ........................................................ 2

California Education Code § 70902 ................................................................. 2, 3

California Education Code §§ 87732 ....................................................................... 3

California Labor Code § 1102.5 ................................................................. *passim*

California Public Records Act ............................................................................... 3

**Rules**

Federal Rule of Civil Procedure 12(b) ........................................................... 3, 10

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 9

FPDOCS 34974086.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This is an employment lawsuit filed by Plaintiff Kathryn Kailikole, a former public employee, against Defendant Palomar Community College District (the "District"), a public entity.  The District has a five-member governing board elected by the public.  Plaintiff was employed by the District as Dean, Instructional, of Mathematics and the Natural and Health Sciences from January 2015 to June 2018. The basis for a recommendation to discharge Plaintiff was summarized by the District's Assistant Superintendent/Vice President, Instruction as follows:

> Your complete inability to meet work deadlines, difficulty collaborating with your colleagues, inadequate supervision of staff, failure to properly oversee grants awarded to your division and improper disclosure of confidential personnel information has had a negative impact on your division, your colleagues and the District. Your actions have compromised the integrity of this institution, placed the District at risk of losing grant funding, and has increased my workload and the workloads of your colleagues who are required to perform duties that you are responsible for performing. Despite numerous times you have been counseled, your **continued failure** to meet deadlines, abide by my directives, properly manage your staff and workload, and work in a positive and collaborative manner with your colleagues warrants termination.

Prior to her termination, Plaintiff was given multiple opportunities to contest the proposed disciplinary action against her. Plaintiff received a "Notice of Proposed Discharge," which explained in detail the reasons that her supervisor, the Assistant Superintendent/Vice President, Instruction was recommending that she be discharged from her position as Dean. The "Notice of Proposed Discharge" informed Plaintiff of her right to attend an informal pre-disciplinary *Skelly*

1

FPDOCS 34974086.1

conference, prior to the imposition of the disciplinary action. Plaintiff did not confirm or attend the meeting and waived her right to a pre-disciplinary *Skelly* conference.[1]

The "Notice of Proposed Discharge" also informed Plaintiff of her right, upon written request, to an evidentiary hearing.  Plaintiff did not request and, therefore, waived her right to the evidentiary hearing. Over a month after the delivery of the "Notice of Proposed Discharge" to Plaintiff, the Governing Board took final action on the discharge recommendation by a unanimous vote to terminate Plaintiff's employment.  Plaintiff was provided a separate notice of her right to challenge the discharge at the Board meeting on June 11, 2018, but did not attend the meeting.

Now, having refused to avail herself of the appeal processes available to a California public employee, Plaintiff seeks to force the District into court to litigate the instant claims without having exhausted her administrative remedies. However, Plaintiff's various discrimination and retaliation claims are barred because Plaintiff fails to allege facts sufficient to show that she is entitled to relief under any of her legal theories. Accordingly, Defendant's motion to dismiss should be granted.[2]

## II.    FACTUAL BACKGROUND

### A.    The Board's Personnel Decisions Are Governed by The Education Code and The District's Administrative Association Handbook

Education Code Section 70902 mandates that "every community college district shall be under the control of a board of trustees, which is referred to as the

---

[1] Plaintiff was informed that she needed to confirm her attendance at the Skelly hearing within ten days of receiving the "Notice of Proposed Discharge," otherwise her right to the hearing would be waived.  Plaintiff did not timely confirm her attendance. On May 21, 2018, Plaintiff received notice that she had waived her right to both a Skelly hearing and evidentiary hearing by failing to timely respond to the District's "Notice of Proposed Discharge."

[2] Further, the District contends that the gravamen of Plaintiff's claims arise from protected activity pursuant to California Code of Civil Procedure section 425.16 and reserves its rights to timely file a Special Motion to Strike Plaintiff's First Amended Complaint.

FPDOCS 34974086.1

'governing board.'" "The Governing Board shall establish, maintain, operate, and govern the community colleges within the district. *Id.*" In carrying out its powers and duties, the governing board of each community college district retains full authority to adopt rules and regulations that are necessary and proper to executing these prescribed functions." *Id.* The Palomar Community College District is governed by a five-member Governing Board, elected by the public, which serves 2,500 square miles of northern San Diego County. (Declaration of Lisa Norman ("Norman Decl."), par. 2).

Further, the California Education Code governs the District's ability to terminate an employee. *See* Cal. Educ. Code. section 87732. Section 87732 provides, "no regular employee or academic employee shall be dismissed except for… immoral or unprofessional conduct; dishonesty; unsatisfactory performance; or evident unfitness for service." *Id.*

The District's discipline of employees is also governed by the District's Administrative Association Handbook ("the Handbook"). (Request for Judicial Notice ("RJN"), Exh. A, p. 10.[3]; Norman Decl., par. 4, Exh. A, p.10[4]). Pursuant to the Handbook, an administrator may be disciplined for cause. (RJN, Exh. A, pp. 13; Norman Decl., par. 4, Exh. A, pp. 13). The term "cause" is defined as "those actions, omissions or behaviors which are detrimental to the operations of the District and/or its major instructional student and administrative divisions or which

---

[3] The Court may properly take judicial notice of Exhibits A through E to the RJN because they are public records. Judicially noticed facts often consist of matters of public record. See, *Merced Irr. Dist. v. County of Mariposa* (E.D. Cal. 2013) 941 F.Supp.2d 1237, 1262. Further, California Government Code Section 6252, subdivision (d) defines public records within the meaning of the California Public Records Act as "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." *Id* (holding that agreement between county and irrigation district was a public record); *Braun v. City of Taft* (1984) 154 Cal.App.3d 332, 340 (letter appointing public employee to position and letter subsequently demoting employee from the position were both public records).

[4] Courts considering "nonenumerated" Rule 12(b) motions may look beyond the pleadings and decide disputed issues of fact. *Bilyeu v. Morgan Stanley Long Term Disability Plan*, (9th Cir. 2012) 683 F.3d 1083, 1088.

DEF'S MEMO OF P'S & A'S RE MOTION TO DISMISS
CASE NO. 3:18-CV-02877-AJB-MSB

impair the District's mission, purpose and objectives." (*Id.*) The Handbook also has a provision specifically addressing the District's disciplinary and grievance procedures:

> [W]ritten notice of the proposed disciplinary action [will be given] to the employee . . . The notice will be served at least ten (10) working days prior to the date when discipline may be imposed. . . The notice must contain the following information:
>
>> ii. The specific disciplinary action proposed
>>
>> . . .
>>
>> iv. A statement that the employee has the right to respond to the matters raised in the notice both orally and in writing including the submission of affidavits, within ten (10) workdays following the date written notice was served.
>>
>> . . .
>>
>> vi. A statement that the employee, upon written request, is entitled to an evidentiary hearing before the Board or a hearing officer designated by the Board.
>>
>> …
>>
>> x. In the absence of a timely demand for a hearing, the Board may act upon the proposed disciplinary action after the time period for hearing demand has expired.

(RJN, Exh. A, p. 13-15; Norman Decl., par. 4, Exh. A, p. 13-15).

**B.**   **Plaintiff was Terminated Due to Longstanding Issues of Poor Work Performance, Neglect of Responsibility, and Misconduct**

Plaintiff had a history of poor work performance and had been repeatedly counseled about her failure to meet deadlines, work collaboratively with her colleagues, and follow directives. (RJN, Exh. A, p. 1-5; Norman Decl., par. 4, Exh. A, p. 1-5). Prior to recommending her termination, Plaintiff's supervisor, Mr. Jack

4

Kahn, met with Plaintiff numerous times regarding her poor work performance. However, Plaintiff continued to display unsatisfactory performance of the duties of a dean. (*Id.*) The deficiencies in Plaintiff's job performance included:

- In October 2017, Plaintiff missed a deadline for submitting the paperwork necessary to schedule interviews for the Assistant Professor, Computer Science Position, which jeopardized the hiring process and nearly resulted in the loss of qualified candidates;

- Despite being reminded multiple times, Plaintiff failed to timely review programming and planning reports for the disciplines in her division, resulting in extra work for her colleagues;

- In December 2017, despite receiving several email reminders and reports from other divisions as examples, Plaintiff missed the deadline for submitting her Annual Division Update Report;

- Plaintiff was several weeks late in providing Spring 2018 class schedules to Mr. Kahn, resulting in Mr. Kahn having to take over Plaintiff's normal duties so that she could finish the scheduling;

- In overseeing the CCC Grant, Plaintiff repeatedly failed to respond to Professor Mark Bealo's Requests for information regarding remaining funds, which he wanted to use to purchase equipment and technology. Mr. Bealo complained that despite several emails to Plaintiff's administrative assistant, he had received only one response which stated that she was "not sure what is going to be done with the remaining funds." Mr. Bealo was rightfully frustrated, as the funds would need to be returned if they were not used within the then upcoming deadline of four days;

- Plaintiff failed to adequately oversee a Title V/HIS/STEM grant, which placed the District at risk of losing the funding. This affected the STEM center and the Math Center, which rely heavily on the funding. This also affected the District's relationship with the California State University at San

5

Marcos ("CSUSM"), which shares the Title V grant with the District;

- o Specifically, *despite being more than one year into the grant*, Plaintiff had not assigned *any* of the release time funded by the grant and several full time grant-funded positions remained unfilled;

- STEM Center Supervisor Mireya Gutierrez-Aguero complained that Plaintiff's conduct during the STEM conference in 2017 was so demeaning and disrespectful that she could not work with Plaintiff again to plan the Conference in 2018, even threatening to quit her position;

- In April 2016, Plaintiff received student complaints that Professor Takashi Nakajima allowed students to shoot an Airsoft pistol in his classroom as an experiment, without taking property safety precautions. However, Plaintiff never took any action to initiate an administrative investigation into the incident and failed to notify HR until November 2017, *more than eighteen months later;*

- Despite reports that a faculty member under her supervision was violating the Education Code and various directives, - and requests from Human Resources Services that Plaintiff follow up on the complaints – Plaintiff failed to follow up regarding the complaints or take any action to try to confirm the conduct in the complaints;

- Plaintiff forwarded confidential information relating to Professor Nakajima and Professor George Gerwig to the Chair of the Engineering Department, Dr. Finkenthal. In turn, Dr. Finkenthal forwarded that information to his wife, a member of the Governing Board at CSUSM and members of the Palomar City College Governing Board, in order to try to facilitate Professors Nakajima and Gerwig's termination.

(*Id.*)

/ / /

/ / /

DEF'S MEMO OF P'S & A'S RE MOTION TO DISMISS
CASE NO. 3:18-CV-02877-AJB-MSB

FPDOCS 34974086.1

1    Plaintiff's unsatisfactory performance compromised the integrity of the
2    District as an institution. Despite being counseled numerous times, Plaintiff
3    continued to fail to meet deadlines, manage her staff and workload, and work in a
4    collaborate manner which warranted her termination. (*Id.*)

5    ## C.   Plaintiff Was Terminated in Accordance With The Education
6    Code and The District's Disciplinary and Grievance Procedures

7    As a result of Plaintiff's prolonged unsatisfactory work performance,
8    Plaintiff's supervisor Mr. Jack Kahn recommended that she be discharged from the
9    position of a dean. (RJN, Exh. A, p. 1; Norman Decl., par. 4, Exh. A, p. 1).  Plaintiff
10   received a "Notice of Proposed Discharge" which explained the reasons for the
11   discharge recommendation. (RJN, Exh. A; Norman Decl., par. 4, Exh. A). Prior to
12   her termination, Plaintiff had multiple opportunities to contest the proposed
13   disciplinary action. (RJN, Exh. A, p. 6; RJN, Exh. B; RJN, Exh. C; RJN Exh. D;
14   RJN, Exh. E; Norman Decl., par. 4, Exh. A, p. 6; Norman Decl., par. 6-9, Exh. B-
15   E).

16   The "Notice of Proposed Discharge" informed Plaintiff of her right to have
17   a formal pre-disciplinary *Skelly* hearing prior to the imposition of the disciplinary
18   action. (RJN, Exh. A, p. 6; Norman Decl., par. 4, Exh. A, p. 6). The *Skelly* hearing
19   was scheduled for May 16, 2018 at 10:30 a.m. (*Id.*) Plaintiff was informed that she
20   needed to confirm her attendance at the *Skelly* hearing within ten days of receiving
21   the "Notice of Proposed Discharge." (*Id.*) Plaintiff did not confirm her attendance
22   or attend the *Skelly* hearing. (RJN, Exh. E; Norman Decl., par. 9, Exh. E).

23   In addition to her right to a *Skelly* hearing, Plaintiff was notified of her right
24   to an evidentiary hearing before the Governing Board or a hearing officer
25   designated by the Board. (RJN, Exh. A, p. 6; Norman Decl., par. 4, Exh. A, p. 6).
26   Plaintiff was provided a form attached to the "Notice of Proposed Discharge" and
27   instructed to fill it out to request such a hearing. (*Id.*) She was notified in bold and
28   all capital letters that:

7

FPDOCS 34974086.1

**"FAILURE TO FILE A TIMELY REQUEST FOR AN EVIDENTIARY HEARING SHALL MEAN THAT YOU HAVE WAIVED YOUR RIGHT TO AN EVIDENTIARY HEARING …"**

(*Id.*)

Plaintiff did not request an evidentiary hearing or otherwise respond to the "Notice of Proposed Discharge." (RJN, Exh. E; Norman Decl., par. 9, Exh. E). After giving Plaintiff notice of the board meeting date, the Governing Board took final action and unanimously voted to terminate Plaintiff's employment. (RJN, Exh. B; RJN, Exh. C; RJN Exh. D; Exh. E; Norman Decl., par. 6-9, Exh. B-E).

**D.** **Plaintiff Was Never Subject To Discrimination or Retaliation For Reporting Violations of the Faculty Under Her Supervision**

Plaintiff's job required her to oversee faculty conduct and she was both permitted and encouraged to do so. (First Amended Complaint ("FAC"), ¶ 50). For instance, in September 2016, Plaintiff reprimanded Professor Nakajima for his unsafe use of a storage room as a lab room, and directed him to discontinue said use. (See RJN, Exh. A, p.219 [page 2 of Ex. 10-D, Sub-exhibit to Interview Transcript]; Norman Decl., par. 4, Exh. A, p.219 [pages 2 of Ex. 10-D, Sub-exhibit to Interview Transcript]). Further, on November 2017, Plaintiff reported Professors Nakajima and Gerwig to Shawna Cohen, the District's Equal Employment Opportunity Compliance manager and Deputy Title IX coordinator, for using a "warning letter" in their Syllabi, which was discriminatory and violated District policy. The "warning letter" discouraged "lazy" students from enrolling in their classes. (See RJN, Exh. A, pp.218-221 [pages 1-4 of Ex. 10-D, Sub-exhibit to Interview Transcript]; Norman Decl., par. 4, Exh. A, pp.218-221 [pages 1-4 of Ex. 10-D, Sub-exhibit to Interview Transcript]). Finally, in May 2017, as required by her job duties, Plaintiff forwarded a student complaint to Ms. Cohen, which provided that Professors Nakajima and Gerwig had been permitting discriminatory posters to be posted in their classrooms. (FAC ¶55). In response, the District

8

initiated an investigation and placed Professors Nakajima and Gerwig on unpaid leave for one month due to the poster violations. (FAC ¶69). As is apparent, at all times Plaintiff was expected to oversee and report violations committed by faculty members under her supervision, and was permitted to do so without reprisal.

## III.   ARGUMENT

### A.   <u>Legal Standard</u>

#### 1.   *Motion to Dismiss for Failure to State a Claim*

A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't* (9th Cir.1990) 901 F.2d 696, 699. Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly* ("*Twombly*") (2007) 550 U.S. 544, 570; Fed. R. Civ. P. 12(b)(6). Such a dismissal will be granted when the plaintiff cannot plausibly allege a set of facts supporting relief. *Guerrero v. Gates* (9th Cir. 2004) 357 F.3d 911, 916. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal* ("*Iqbal*") (2009) 556 U.S. 662, 678 (quoting *Twombly*, *supra,* 550 U.S. at 557) (internal citations omitted).

While the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff in considering a motion to dismiss, *Knievel v. ESPN* (9th Cir. 2005) 393 F.3d 1068, 1072, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint, unwarranted deductions of fact, or unreasonable inferences. *Daniels–Hall v. National Educ. Ass'n* (9th Cir. 2010) 629 F.3d 992, 998; *see also*,

9

*Iqbal*, *supra*, 556 U.S. at 678 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not accepted as true.); *Epstein v. Wash. Energy Co.* (9th Cir. 1996) 83 F.3d 1136, 1140 ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss"). Moreover, the factual allegations in the complaint must be "enough to raise a right to relief above the speculative level . . . ." *Twombly*, *supra*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, *supra*, 556 U.S. at 679.

### 2. Nonenumerated Grounds for Motion to Dismiss

A cause of action may also be dismissed pursuant to Rule 12(b) on nonenumerated grounds, based on a Defendant's defenses. *Bilyeu v. Morgan Stanley Long Term Disability Plan ("Bilyeu")* (9th Cir. 2012) 683 F.3d 1083, 1088; *Irvin v. Zamora ("Irivin")* (S.D. Cal. 2001) 161 F.Supp.2d 1125, 1128. For example, a nonenumereated motion to dismiss is the appropriate procedural method for raising the defense of failure to exhaust administrative remedies. *Bilyeu, supra,* 683 F.3d at 1088. Likewise, a nonenumerated motion to dismiss lies where defendant has an absolute defense of immunity. *Albino v. Baca* (9th Cir. 2014) 747 F3d 1162, 1170. Courts considering "nonenumerated" Rule 12(b) motions may look beyond the pleadings and decide disputed issues of fact. *Bilyeu, supra,* 683 F.3d at 1088; *Irvin, supra,* F.Supp.2d at 1128.

### B. Plaintiff's First and Second Causes of Action Should be Dismissed Because Plaintiff Did Not Engage in Protected Activity

Title IX of the Education Amendments of 1972 prohibits retaliatory employment actions based on an employee's complaints about sex discrimination. 20 U.S.C. §1681; *Jackson v. Birmingham,* 544 U.S. 167 (2005). Similarly, Title VI of the Civil Rights Act of 1964, prohibits discrimination and retaliation on the bases of race, color, or national origin in programs or activities receiving federal financial assistance. 42 U.S.C. § 2000(d). "To plead a prima facie case of retaliation, the

10

plaintiff must allege that (1) [she] engaged in a protected activity; (2) the federally-funded recipient took an adverse action against [her]; and (3) the adverse action was causally linked to the protected activity." *Burch v. Regents of University of California* (E.D. Cal. 2006) 433 F.Supp.2d 1110, 1125-1126.

Plaintiff's retaliation claims require that she show that she engaged in some protected activity. Plaintiff cannot make such a showing. As Dean, Plaintiff was charged with addressing issues concerning her staff, including issues of student safety and welfare. (See RJN, Exh. A, pp.1-5 and 124-128 [pages 41-45 of Ex. 10, Interview Transcript]; Norman Decl., par. 4, Exh. A, pp.1-5 and 124-128 [pages 41-45 of Ex. 10, Interview Transcript]). Plaintiff was well aware of her duties and she exercised them several times – as evidenced by her recognition for doing so in her performance review. (FAC¶ 50). Evidence showing that an employee was merely doing their job is insufficient to support a retaliation cause of action. See *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal. App.4th 1378, 1384-1385; *Garcetti v. Ceballos*, (2006) 547 U.S. 410; *Edgerly v. City of Oakland* (2012) 211 Cal.App.4th 1191, 1203, as modified (Dec. 13, 2012).

The United States Supreme Court, in *Garcetti v. Ceballos*, (2006) 547 U.S. 410, held that complaints made within the scope of an employee's job cannot constitute protected conduct to support a retaliation claim. *Id* at 421–24. While neither California District Courts nor the Ninth Circuit has had occasion to expand on the Supreme Court's ruling in *Garcetti* in the federal civil rights context, our sister circuits have expressed discernment. Some courts in our sister circuits refer to the rule in *Garcetii* as the "manager rule." Under the manager rule, "in order to state a retaliation claim, complaints made within the scope of an employee's job cannot constitute protected conduct." See *Skare v. Extendicare Health Servs., Inc.,* 515 F.3d 836, 841 (8th Cir. 2008) (applying manager rule in suit brought under state whistleblower statute by a nurse whose duties included ensuring legal compliance and reporting unlawful behavior); *EEOC v. HBE Corp.*, 135 F.3d 543,

11

FPDOCS 34974086.1

554 (8th Cir. 1998) (applying manager rule in Title VII retaliation suit brought by an employment manager and personnel director whose duties included implementing company policy). *McKenzie v. Renberg's*, *Inc.*, 94 F.3d 1478, 1486–87 (10th Cir. 1996) ("a requirement of 'stepping outside' a normal role is satisfied by a showing that the employee took some action against a discriminatory policy.")

Moreover, California District Courts have found *Mckenzie* persuasive as to defining protected activity under California Labor Code section 1102.5. See *Muniz v. United Parcel Service, Inc.* (N.D. Cal. 2010) 731 F.Supp.2d 961, 970; *Lund v. Leprino Foods Co.* (E.D. Cal., June 20, 2007, No. CIVS060431WBSKJM) 2007 WL 1775474, at *8 (holding that employee did not engage in protected activity when he reported an illegal spill because such reports were a part of his basic job responsibilities).

In the FLSA context, the Ninth Circuit held that "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Rosenfield v. GlobalTranz Enterprises, Inc.* (9th Cir. 2015) 811 F.3d 282, 286. "The employee's job title and responsibilities—in particular, whether he or she is a manager—form an important part of that "context." *Id.* The court continued,

> Managers are in a different position vis-a-vis the employer than are other employees because their employer expects them to voice work-related concerns and to suggest changes in policy to their superiors. [Thus], a reasonable employer almost certainly would not understand that report as a 'complaint'. . . Rather, the employer naturally would understand the manager's report as carrying out his or her duties. In short, when determining whether an employee has 'filed any complaint,' the employee's role as a manager often is an important contextual element.

12

FPDOCS 34974086.1

*Id.*

In sum, these cases demonstrate that when a supervisory employee makes a complaint pursuant to a protected right, the employee must make it sufficiently clear that the complaint is being made in their capacity as an employee, and not as a supervisor merely performing his or her job duties. *McKenzie*, *supra,* 94 F.3d at 1486. The cases do not dictate that only compliance or human resources employees are subject to the "manager rule." Indeed, in *Skare,* the plaintiff was a nursing director; in *HBE Corp.,* the plaintiff was an employment manager; in *Mckenzie,* the plaintiff was a personnel director; in *Rosenfield,* the plaintiff was an employment manager; and in *Muniz,* the plaintiff was a manager. Thus, all that the cases require for the "manager rule" to apply is that the plaintiff who alleges retaliation have some supervisory role which would require them to report a legal violation, should they see one. Any other result would deprive employers of the benefit of having managers and supervisors act as their "eyes and ears," to assist in ensuring the integrity and success of their operations.

Accordingly, when Plaintiff reported alleged sex discrimination on behalf of students by Professors Nakajima and Gerwig, she was not engaged in a protected activity. Rather, she was acting in accordance with her job duties. See *McKenzie v. Renberg's*, *Inc.*, *supra,* 94 F.3d at 1486 ("in order to engage in protected activity … an employee must step outside of his or her role of representing the [employer] and file or threaten to file an action adverse the employer…") Certainly, as Dean, Plaintiff's job duties included reporting violations committed by faculty members under her supervision. (See RJN, Exh. A, pp.1-5 and 124-128 [pages 41-45 of Ex. 10, Interview Transcript]; Norman Decl., par. 4, Exh. A, pp.1-5 and 124-128 [pages 41-45 of Ex. 10, Interview Transcript]). Accordingly, Plaintiff does not - because she cannot - allege how her reports regarding professors Nakajima and Gerwig's Title VI and Title IX violations were any different than the other reports she made as part of her job duties, in the past. This is especially true of the reports she made

13

regarding the airsoft gun, use of the "warning letter," and use of storage rooms as lab rooms. Plaintiff alleges no other facts to suggest that she "stepped out of her role" as Dean, and reported these alleged violations in a manner that sufficiently put the District on notice that she was engaging in protected activity. As such, Plaintiff fails to establish that she engaged in protected activity under Title VI or Title IX and these claims should be dismissed.

C. **Plaintiff's Third, Fourth, Fifth, and Sixth Causes of Action Should be Dismissed Because The District is Immune From Liability in Connection With the Alleged Claims**

Plaintiff alleges several causes of action under the California Fair Employment and Housing Act. Government Code §12940 *et seq*. Plaintiff's FEHA claims for discrimination and retaliation stem from members of the Governing Board for the District exercising their power to make discretionary personnel decisions. California Government Code § 820.2 provides as follows:

"Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Section 821.6 provides as follows:

"A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

Finally, section 815.2 provides as follows:

"A public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

/ / /

14

FPDOCS 34974086.1

The California Supreme Court specifically held that section 820.2 affords immunity to public employees for FEHA claims. *Caldwell v. Montoya* (1995) 10 Cal.4th 972; see also *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426 (holding that a supervisor in a public entity is immune under section 820.2 for disciplinary decisions made concerning a subordinate); *Kayfetz v. State* (1984) 156 Cal.App.3d 491, 496-99 (affirming judgment on the pleadings and holding public entity and administrator were immune from liability for publishing disciplinary report regarding the plaintiff's discipline).

In *Caldwell*, the plaintiff sued individual members of an elected school board alleging age and race discrimination in violation of FEHA, as well as for retaliatory discharge in violation of public policy. *Caldwell v. Montoya, supra,* 10 Cal.4th at 975-976. The California Supreme Court affirmed the sustaining of a demurrer and held that §820.2 affords "discretionary act immunity to the individual board members against both the common law and FEHA causes of action stated in plaintiff's complaint." *Id* at 976. The court found that decisions by school board members to not renew a superintendent's employment contract were discretionary acts under §820.2 because "the collective determination whether to hire or fire a person as the district's superintendent must be considered a basic policy decision." *Id.* at 983.

Similarly, in *Kemmerer*, the court found that Government Code §§ 821.6 and 820.2 immunize supervisors from tort liability for personnel decisions and affirmed a judgment of dismissal following an order sustaining a demurrer without leave to amend. *Kemmerer v. County of Fresno, supra,* 200 Cal.App.3d at 1437. In that case, the plaintiff also had a cause of action for intentional infliction of emotional distress against the county and his two supervisors, the director and assistant director of social services. *Id* at 1436-39. Specifically, the plaintiff complained that his supervisors acted unlawfully when they instigated an investigation of plaintiff's misconduct, made the decision to take disciplinary action and then decided to

15

terminate plaintiff. *Id.* The Court of Appeal aptly explained its reasoning for finding that supervisors are immune under these circumstances:

> If every public entity employee who was found to have committed an act of misconduct and later disciplined were allowed to bring a tort action against his coworkers and superiors, this would certainly bode ill for the continuing efficiency and morale of the civil service system. Supervisors within the civil service system would not be able to fulfill their function without the overhanging threat of legal action from employees who become subject to discipline.

*Id.* at 1439. Moreover, the court explained, "though sections 821.6 and 820.2 expressly immunize only a decision making employee, if the employee is immune, so too is the County." *Id* at 1435.

Here, *Caldwell and Kemmerer* are instructive and immunity extends to the District, even though no individual defendants are named in the instant lawsuit. As in *Caldwell* and *Kemmerer*, the District's alleged misconduct was connected to the initiation of internal grievance administrative proceedings relating to disciplining Plaintiff, for her poor work performance. The Governing Board's unanimous vote to terminate Plaintiff's employment resulted from each individual member's use of discretion in furtherance of their official duties. Thus, the individual members of the Board are immune from liability pursuant to Government Code sections 820.2 and 821.6. Pursuant to Government Code §815.2, the District must also therefore, be immune. *City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 468 (the provisions of the California Government Code are *in pari materia* and must be read together and construed in a manner that gives effect to each).

/ / /

/ / /

/ / /

/ / /

1

**D.     Plaintiff's Fourth, Fifth, and Sixth Causes of Action Fail as a**

2

**Matter of Law Because Plaintiff Did Not Suffer a FEHA-**

3

**Recognized Disability**

4      Plaintiff brings three disability-related causes of action under the FEHA:

5   disability discrimination; failure to accommodate; and, failure to engage in the

6   interactive process. (FAC ¶¶ 111-130.) In order to state her disability-related claims

7   under FEHA, Plaintiff must show that she suffered from a FEHA-recognized

8   disability. *Diaz v. Federal Express Corp.* (C.D. Cal. 2005) 373 F.Supp.2d 1034,

9   1047. Disability under the FEHA is defined as an impairment that limits an

10  individual's ability to participate in a major life activity. Cal. Gov. Code §12926(k).

11     Workplace stress related to an employee's job performance is not alone a

12  cognizable disability under FEHA. *Higgins-Williams v. Sutter Medical Foundation*

13  (2015) 237 Cal.App.4th 78, 84-86. In *Higgins,* the plaintiff employee's alleged

14  disability was an inability to work under a particular supervisor because of anxiety

15  and stress, related to the supervisor's standard oversight of job performance. *Id.*

16  The court held that stress and anxiety stemming from plaintiff's work-related

17  interactions with human resources and her manager was not a FEHA-recognized

18  disability. *Id* at 84.

19     Similar to *Higgins*, Plaintiff merely alleges that she suffered from "anxiety…

20  [due to her] overwhelming workload." (FAC ¶ 68.) This assertion alone defeats

21  Plaintiff's FEHA disability causes of action because, as the court articulated in

22  *Higgins*, work-related anxiety is not a disability under FEHA. *Higgins-Williams,*

23  *supra,* 237 Cal.App.4th at 84-86.

24     Moreover, Plaintiff's allegation that she "was diagnosed with anxiety which

25  limits her in her major life activities" is nothing more than a conclusory allegation.

26  (FAC ¶4.)  Here, as with the majority of her complaint, Plaintiff makes "threadbare

27  recitals of the elements of [her FEHA disability] causes of action, supported by

28  mere conclusory statements." *Epstein v. Wash. Energy Co., supra,* 83 F.3d at 1140

17

(granting defendant's motion to dismiss where plaintiff merely made conclusory allegations unsupported by evidence.) Plaintiff does not allege one fact establishing a major life activity in which she has been limited. While Plaintiff also alleges that she suffers from "vertigo, cysts, and feelings of being overwhelmed, helpless and nervous" she still has not alleged how any of these things limits her in any major life activity. At best, these may be symptoms of some other condition that Plaintiff has neither pled to the Court, nor ever put Defendant on notice of during her employment. Because "anxiety" does not constitute a "disability" under the FEHA, and because Plaintiff fails to allege any other "disability" from which she suffered, Plaintiff's Fourth, Fifth, and Sixth Causes of Action should be dismissed. *See Striplin v. Shamrock Foods Co., Inc.*, (9th Cir. 2018) 731 F. App'x 618, 620 (citing *Higgins*, "The district court also properly granted summary judgment on [the plaintiff's] discrimination claims under the Fair Employment and Housing Act ("FEHA") because workplace stress related to the employee's job performance is not a cognizable disability under FEHA"); *Estrada v. Gate Gourmet, Inc.*, (C.D. Cal. Dec. 6, 2017) No. CV171100MWFFFMX, 2017 WL 7803787, at *6 (same); *Burch v. California Dep't of Motor Vehicles*, (E.D. Cal. Aug. 17, 2017) No. 2:13-CV-01283-TLN-DB, 2017 WL 3537242, at *5 (same).

**E.    Plaintiff's Seventh Cause of Action is Barred Because Plaintiff Fails to State a Claim for Which She Is Entitled to Relief**

> *1.    Plaintiff Failed to Exhaust the District's Internal Grievance Procedures*

The rule of exhaustion of administrative remedies is well established in California jurisprudence. *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70; *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465. In brief, the rule is that exhaustion of administrative remedies is a jurisdictional prerequisite to resort to the Court. *Johnson v. City of Loma Linda*, *supra*, 24 Cal.4th at 70. Indeed,

18

the history of decisions of the California Supreme Court represent "a respect for internal grievance procedures and the exhaustion requirement where the Legislature has not specifically mandated its own administrative review process." *Terris v. County of Santa Barbara* (2018) 20 Cal.App.5th 551, 558, review denied (May 23, 2018).

The exhaustion of administrative remedies requirement applies to statutory administrative remedies, as well as **internal** grievance procedures of public and private organizations. *Westlake Community Hosp. v. Superior Court, supra,* 17 Cal.3d at 474-77. When a public entity establishes an internal grievance mechanism for employees, failure to exhaust those internal remedies precludes any subsequent private civil action. *Palmer v. Regents of University of California* (2003) 107 Cal.App.4th 899; *Campbell v. Regents of University of California, supra,* 35 Cal. 4th at 311; *Terris v. County of Santa Barbara, supra,* 20 Cal.App.5th at 551.

For example, in *Campbell,* a university employee filed suit against the university for retaliatory termination under Cal. Gov. Code section 12653(c) and Cal. Lab. Code section 1102.5. *Campbell v. Regents of University of California, supra,* 35 Cal. 4th at 311. The California Supreme Court affirmed the sustaining of a demurrer and held that a university employee must exhaust university internal administrative remedies before filing suit in Superior Court for retaliatory termination. *Id* at 317. In so holding, the Court reasoned that "the [e]xhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts" and "the rule is not a matter of judicial discretion, but is a fundamental rule of procedure… binding upon all courts." *Id* at 327. In addition, the court noted that the exhaustion requirement exists for good reason. "The purpose of requiring exhaustion of internal administrative remedies is twofold: (1) to provide notice to the employer that a claim is going to be made against it; and (2) to eliminate or mitigate damages by allowing the employer to determine whether or not an error

/ / /

DEF'S MEMO OF P'S & A'S RE MOTION TO DISMISS
CASE NO. 3:18-CV-02877-AJB-MSB

1    had been made and reversing any such decision as appropriate." *Id* at 328, quoting

2    *Westlake Community Hosp. v. Superior Court, supra,* 17 Cal.3d at 465.

3         Similarly, in *Terris v. County of Santa Barbara,* the Court held that a former

4    county employee was barred from bringing suit against the public entity under

5    Labor Code section 1102.5 because she was required to exhaust the county's

6    internal grievance procedures prior to doing so. *Terris, supra,* 20 Cal.App.5th at

7    559.

8         Here, the District has established procedures for employees to follow should

9    they dispute disciplinary actions taken against them, such as the discharge of their

10   employment. (RJN, Exh. A., p. 13-15; Norman Decl., par. 4, Exh. A, p. 13-15).

11   Plaintiff, a public employee, received a notice of proposed discharge from the

12   District and she chose not to respond. (RJN, Exh. A., p. 13-15; RJN, Exh. E;

13   Norman Decl., par. 4, Exh. A, p. 13-15; Norman Decl., par. 9, Exh. E). The notice

14   provided that there was evidence Plaintiff had engaged in misconduct. (RJN, Exh.

15   A., p. 1-5; Norman Decl., par. 4, Exh. A, p. 1-5). The notice also informed Plaintiff

16   that if she did not timely respond to Notice, a termination decision would be made

17   without her input. (RJN, Exh. A., p. 6; Norman Decl., par. 4, Exh. A, p. 6).   Despite

18   being confronted with the mounting evidence of her misconduct, notice of potential

19   termination, and being given the opportunity to meaningfully respond at a hearing,

20   Plaintiff did nothing. (RJN, Exh. E; Norman Decl., par. 9, Exh. E).

21        It is anticipated that Plaintiff will argue that she is not required to exhaust

22   the District's internal administrative remedies. Plaintiff may argue that after the

23   *Campbell* decision the California Labor Code was amended to include Section 244,

24   subdivision (a) which provides that "An individual is not required to exhaust

25   administrative remedies or procedures in order to bring a civil action under any

26   provision of this code...." However, in *Terris,* the Court clarified that the phrase

27   "administrative remedies" in section 244(a) refers to Labor Commissioner claims.

28   *Terris v. County of Santa Barbara*, *supra,* 20 Cal.App.5th at 556. Thus, by enacting

20

section 244 (a), the Legislature did not overturn *Campbell*. *Id* at 558. Rather, it eliminated the requirement that a claim must first be *bought before* the Labor Commissioner before filing a civil action. *Id* (emphasis added.)

As such, having essentially waived her rights to contest her discharge for cause, Plaintiff cannot now attempt to circumvent the District's internal grievance procedures by filing the instant lawsuit. Moreover, as the court noted in *Westlake Community Hospital, supra,* 17 Cal.3d at 476, Plaintiff must not be permitted to try to increase damages by circumventing Defendant's internal grievance procedures. Plaintiff has not alleged facts showing that she exhausted the District's internal grievance procedures. Thus, Plaintiff's whistleblower retaliation claim is barred for failure to exhaust internal grievance procedures. Further, because Plaintiff cannot amend the Complaint to allege exhaustion, this cause of action should be dismissed without leave to amend.

### 2. *No Evidence Supports Plaintiff's Whistleblower Retaliation Cause of Action*

Like Plaintiff's federal retaliation claims, the whistleblower retaliation claim requires Plaintiff to demonstrate that she engaged in protected activity. *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal. App.4th 1378, 1384-1385; *Edgerly v. City of Oakland* (2012) 211 Cal.App.4th at 1204. While Labor Code section 1102.5 protects employees "regardless of whether disclosing information is part of their job duties," this language merely serves to *clarify* that employees whose job duties require such disclosure are not *automatically excluded* from the statute's protections. This language does not eliminate the requirement that a Plaintiff must clearly demonstrate that any such disclosure is being done in his or her capacity as an employee making a complaint, rather than as a supervisor merely performing his or her job duties. Consequently, Plaintiff does not allege that she engaged in protected activity under Labor Code section 1102.5.

/ / /

In *Patten*, a principal sued a school district for whistleblower retaliation for disclosing improprieties at her school. *Id* at 1385. In particular, she alleged she made four separate whistleblower disclosures, for which indisputably encompassed only the context of internal personnel matters: (1) disclosing to a state senator that her school had engaged in budgetary improprieties by reassigning funds that were earmarked by the state for a certain purpose to another educational program; (2) disclosing accusations to her district superiors that a male physical education teacher was peering into the girls' locker room; (3) disclosing to her superiors certain off-color remarks made by a male science teacher; and (4) requesting additional staff to keep the campus safe. *Id*. at 1382.

The court held that except for the budgetary disclosure, the disclosures concerning teachers' conduct and lack of staff "do not rise to the level of blowing a whistle" but were made in "the context of an internal personnel matter based on a student complaint, rather than in the context of a legal violation." *Id* at 1385. The court explained that the disclosures involving the two teachers did not amount to whistleblowing because "although the disclosures were made by a government employee ... to a government agency ... the disclosures indisputably encompassed only the context of internal personnel matters involving a supervisor and her employee, rather than the disclosure of a legal violation." *Id* at 1384–1385.

Similarly, in *Edgerly*, a former city administrator sued the City for wrongful termination, claiming retaliation under Labor Code section 1102.5 for her refusal to violate the City's charter, municipal code, and civil service rules and resolutions. As city administrator, Edgerly had authority over various City departments and personnel, including the police department. She was also responsible for the City's budget and expenditures. If Edgerly had any concerns about the allocation of City funds, she would confer with the city attorney's office. *Id* at 1196. In the course of carrying out her duties as city administrator, Edgerly questioned several expense

/ / /

22

1  reimbursement requests. *Id*. Edgerly claimed the reason for her termination was the
2  questioning of said expenses. *Id.*

3      The court held that Edgerly failed to state a claim for whistleblower
4  retaliation under Labor Code section 1102.5. *Id* at 1205. The court explained, "it
5  was part of Edgerly's general job description to take the actions that she alleged
6  she took to enforce Oakland's municipal laws" [and] "[t]aken to its logical
7  conclusion, Edgerly's argument [would mean] that as she routinely acted on each
8  city official's expense reimbursement requests, each rejection constituted a per se
9  violation of section 1102.5, no matter how trivial or routine each rejection was." *Id*
10  at 1203. The court continued, "[t]his interpretation strains logic and, if adopted,
11  could have a serious impact on the workings of the City and other charter cities. *Id.*

12      As discussed above, regardless of whether Plaintiff was employed in a
13  compliance or human resources position, as dean it was a part of Plaintiff's job
14  duties to report violations of the staff under her supervision. (See RJN, Exh. A,
15  pp.1-5 and 124-128 [pages 41-45 of Ex. 10, Interview Transcript]; Norman Decl.,
16  par. 4, Exh. A, pp.1-5 and 124-128 [pages 41-45 of Ex. 10, Interview Transcript]).
17  Plaintiff cannot show that the complaints she made regarding Professors Nakajima
18  and Gerwig constituted anything other than merely doing her job. *Edgerly, supra,*
19  211 Cal.App.4th at 1204 (to allow employees merely doing their job to claim
20  whistleblower retaliation would "thrust the judiciary into micromanaging
21  employment practices and create a legion of undeserving protected
22  'whistleblowers' arising from the routine workings and communications of the job
23  site.) Accordingly, for the same reasons discussed above with respect to Plaintiff's
24  First and Second Causes of Action, Plaintiff's Seventh Cause of Action fails for
25  failing to engage in any protected activity.

26  / / /
27  / / /
28  / / /

23

FPDOCS 34974086.1

1

## IV.    CONCLUSION

2        Based on the foregoing, Defendant respectfully requests that the Court grant

3   its motion to dismiss as to all causes of action without leave to amend.

4   Dated: February 1, 2019                    Respectfully submitted,

5                                              **FISHER & PHILLIPS LLP**

6                                         By: */s/ Adam F. Sloustcher*
                                              Regina A. Petty
7                                             Adam F. Sloustcher
                                              Attorneys for Defendant
8                                             Palomar Community College District

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FPDOCS 34974086.1

1

## CERTIFICATE OF SERVICE

2

3

I, the undersigned, am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 4747 Executive Drive, Suite 1000, San Diego, California, 92121.

4

5

On February 1, 2019, I served the foregoing document entitled **DEFENDANT PALOMAR COMMUNITY COLLEGE DISTRICT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. RULES 12(B) AND 12(B)(6)** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

6

7

8

9

10

Evan Dwin
DWIN LEGAL, APC
2121 Palomar Airport Road, Suite 170
Carlsbad, CA  92011

Telephone: (760) 536-6471
Facsimile:  (760) 585-4649
E-Mail: EDwin@DwinLegal.com
Attorneys for Plaintiff
Kathryn Kailikole

11

12

☒     **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

13

14

15

16

17

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

18

Executed February 1, 2019, at San Diego, California.

19

By:

20

Angela D. Mastin

21

22

23

24

25

26

27

28

1
CERTIFICATE OF SERVICE

FPDOCS 34974086.1