**DWIN LEGAL, APC**
Evan Dwin (SBN 241027)
2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011
Tel: (760) 536-6471
Fax:(760) 585-4649
e-mail: edwin@dwinlegal.com

Attorneys for Plaintiff
KATHRYN KAILIKOLE

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN KAILIKOLE, an individual;<br><br>                              Plaintiff,<br><br>     vs.<br><br>PALOMAR COMMUNITY COLLEGE DISTRICT, a governmental entity; and DOES 1 through 25, inclusive;<br><br>                              Defendants. | Case No. 3:18-cv-02877-AJB-MSB<br><br>[Previously San Diego Superior Court Case No. 37-2018-00058754-CU-WT-NC]<br><br>**PLAINTIFF KATHRYN KAILIKOLE'S OPPOSITION TO DEFENDANT PALOMAR COMMUNITY COLLEGE DISTRICT'S MOTION TO DISMISS**<br><br>**DATE: April 4, 2019**<br>**TIME: 2:00 p.m.**<br>**COURTROOM: 4A** |

- 1 -

**OPPOSITION TO MOTION TO DISMISS**

Table of Contents

I.      INTRODUCTION ................................................................................1

II.     RELEVANT ALLEGATIONS ..........................................................2

    A.   Plaintiff Is Appointed As Dean Of The MNHS Department. ...............2

    B.   Plaintiff Is Diagnosed With Anxiety. ...................................................3

    C.   Plaintiff Complains About Discrimination By Physics Professors. ......3

    D.   Plaintiff Discusses Her Disability With Dr. Kahn. ...............................4

    E.   Plaintiff Is Suddenly Placed On Leave Without Explanation. ..............5

    F.   The District Conducts A Sham Investigation Of Plaintiff. ...................5

    G.   The District Terminates Plaintiff For Plainly Pretextual Reasons. .......6

    H.   Plaintiff Brings This Action Against The District. ...............................7

III.    ARGUMENT .....................................................................................8

    A.   Standard For Ruling On A Motion To Dismiss. ...................................8

    B.   The District's Improperly Submitted Evidence Should Be
        Excluded. .............................................................................................8

    C.   There Is No "Manager" Exception To Title IX And Title VI
        Claims. .................................................................................................9

        1.   The District's Proposed "Manager Rule" Is Contrary To
            Law. ..........................................................................................9

        2.   Plaintiff Engaged In "Protected Activity" Under Any Test. ....14

    D.   FEHA Expressly Applies to Public Employers. .................................16

    E.   Plaintiff Alleged A Disability Under FEHA. ......................................18

    F.   The Exhaustion of Internal Remedies Doctrine Does Not Apply. .......20

    G.   Section 1102.5 Applies "Regardless" Of Job Duties. .........................24

IV.    CONCLUSION ................................................................................25

OPPOSITION TO MOTION TO DISMISS

TABLE OF AUTHORITIES

**CASES**

*Burch* v. *Cal. DMV*, 2017 U.S. Dist. LEXIS 131780 (E.D. Cal., decided December 20, 2013),.......................................................................................... 20

*Burlington N. & S. F. R. Co. v. White, 548 U.S. 53, 68 (2006)*.................................. 10

*Caldwell v. Montoya*, 10 Cal. 4th 972, 976-77 (1995) .......................................... 17

*Campbell v. Regents of California*, 35 Cal. 4th 311, 317 (2005) .............................. 23

*Cannon v. University of Chicago*, 441 U.S. 677, 704 (1979)................................... 10

*Crawford v. Metro. Gov't of Nashville & Davidson Conty, 555 U.S. 271 (2009)*.............................................................................................. 10, 12, 15

*Demasters v. Carillion Clinic, 796 F.3d 409, 423 (2d Cir. 2015)* ....................... 11, 12

*DeJung v. Superior Court,* 169 Cal. App. 4th 533, 546 (2008) ..................... 16, 17, 18

*Diaz v. Fed. Express Corp.*, 373 F.Supp.2d 1034, 1041, 1053 (C.D. Cal. 2005).......................................................................................................... 19

*Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1196, 200-01, 1203-04, as modified (Dec. 13, 2012) .......................................................... 14, 25

*EEOC v. HBE*, 135 F.3d 543 (8th Cir. 1997) ...................................................... 15, 16

*Estrada v. Gate Gourmet, Inc.*, 2017 U.S. Dist. LEXIS 86848 (C.D. Cal., decided June 6, 2017) ................................................................................. 20

*Farmers Ins. Group v. County of Santa Clara*, 11 Cal. App. 4th 992, 1014-15 (1995)....................................................................................................... 18

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ........................................................... 13

*Higgins-Williams v. Sutter Medical Foundation*, 237 Cal. App. 4th 78, 84-86 (2015)................................................................................................... 20

*In re Lance W., 37 Cal. 3d 873, 886 (1985).* ........................................................ 24

*Jackson v. Birmingham Bd. of Education*, 544 U.S. 167, 173 (2005)................. 10, 12

*Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 249 (2000) ......................... 18, 19

*Johnson v. City of Loma Linda,* 24 Cal.4th 61, 76 (2000)......................................... 22

*Johnson v. University of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) .......................... 12

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 536 U.S. 1 (2011) ................ 14

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)......................... 8

OPPOSITION TO MOTION TO DISMISS

*Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 43 (D.D.C. 2009)..................... 10, 13

*Lee v. City of Los Angeles*, 250 F. 3d 668, 688 (2000)................................................. 8

*Lund v. Leprino Foods Co.*, 2007 U.S. Dist. LEXIS 46705 (E.D. Cal. 2007), .......... 25

*McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996) ............... 15, 16

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)..................................................................................................................... 8

*Muniz v. United Parcel Sercvice, Inc.*, 731 F. Supp. 2d 931, 970 (N.D. Cal. 2010)................................................................................................................. 14, 25

*Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).............. 8

*Ortega v. Contra Costa Cmty. College Dist.,* 156 Cal. App. 4th 1073, 1083 (2007)................................................................................................................. passim

*Palmer v. Regents of the University of California*, 107 Cal. App. 4th 899, 902 (2003)............................................................................................................... 24

*Patten v. Grant Joint Union School Dist.* 134 Cal. App. 4th 1378, 1384-85 (2005)............................................................................................................... 13, 25

*Robinson v. Wichita State University*, 2018 U.S. Dist. LEXIS 22983 (D. Kansas 2018, decided February 13, 2018) ......................................................... 16

*Rosenfield v. GlobaTranz Enterprises, Inc.*, 811 F. 3d 282, 285 (9th Cir. 2015) ................................................................................................................ 14, 15

*Schifando v. City of Los Angeles, 31 Cal. 4th 1074 (2003)*................................. passim

*Skare v. Extendicare Health Servs. Inc.*, 515 F.3d 836, 838 (8th Cir. 2008) ............. 13

*State Personnel Bd. v. Fair Employment & Housing Com.*, 39 Cal. 3d 422, 431 (1985)............................................................................................................... 21

*Striplin v. Shamrock Foods Co. 2016 U.S. Dist. LEXIS 39680 (C.D. Cal., decided March 24, 2016)*.................................................................................... 20

*Terris v. County of Santa Barbara*, 20 Cal. App. 5th 551 (2018 ........................ 23, 24

*Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 173 (2010)* .................................. 10

*Tworivers v. Lewis,* 174 F.3d 987, 991 (9th Cir. 1999)............................................... 8

*Westlake Community Hosp. v. Superior Court*, 17 Cal. 3d 465, 470. (1976)............ 23

*Williams v. Housing Authority of Los Angeles,* 121 Cal. App. 4th 708, 713 (2004)............................................................................................ 21, 22, 23, 24

**STATUTES AND REGULATIONS**

2 EEOC Compliance Manual §§ 8-II-B(1), (2) p. 614:0003 (Mar. 2003) ................ 10

**OPPOSITION TO MOTION TO DISMISS**

29 U.S.C. § 215(a)(3)...................................................................... 14

42 U.S.C. section 2000d .......................................................... passim

42 U.S.C. section 2000e........................................................... passim

California Government Code 815.2.......................................... 16, 17

California Government Code 820.2.......................................... 16, 17

California Government Code 12926 ............................. 16, 17, 18, 20

California Government Code section 12940(a) ............................... 8

California Government Code section 12940(h) ............................... 8

California Government Code section 12940(m) .............................. 8

California Government Code section 12940(n) ............................... 8

California Labor Code Section 1102.5 .................................... passim

EEOC Compliance Manual (CCH) P. 8806 ................................ 11

Rule of Civil Procedure 12(b)(6) .................................................. 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OPPOSITION TO MOTION TO DISMISS**

## I.  INTRODUCTION

Plaintiff Kathryn Kailikole ("Plaintiff") was terminated by Defendant Palomar Community College District (the "District") from her job as an academic dean because she reported racist and sexually harassing conduct.

Specifically, Plaintiff complained to the Title IX Office, which is responsible for compliance with anti-discrimination laws, that Professors Takashi Nakajima's and Arthur Gerwig's physics lab was covered with harassing postings such as a reference to "black boys" raping girls, a sexually explicit drawing of a student and racist jokes. The District determined Nakajima and Gerwig were responsible for the postings, but responded only by placing them on leave for one month.  Immediately after Plaintiff complained about this weak action, and after she requested a disability accommodation, she was placed on involuntary leave, then terminated.

Rather than allow the District to judge its own illegal conduct through internal procedures which could have a preclusive effect in subsequent litigation, Plaintiff exhausted her administrative remedies with the DFEH, then brought her FEHA and California Labor Code Section 1102.5 retaliation claims in court, as is her right under *Schifando v. City of Los Angeles*, 31 Cal. 4th 1074 (2003), which holds that an employee not need exhaust any internal remedies to assert a FEHA claim, and *Ortega v. Contra Costa Cmty. College Dist.,* 156 Cal. App. 4th 1073 (2007) which recognizes that *Schifando* extends to non-FEHA claims based on the same issues as a concurrently asserted FEHA claim.  Plaintiff also asserts claims under federal anti-discrimination statutes, Title IX and Title VI, which have no exhaustion requirement.

In its motion to dismiss, the District claims that Plaintiff's supervisory role somehow excluded her from engaging in "protected activity" under Title IX and Title VI.  This assertion is contradicted by federal law which broadly protects any person who reports discrimination.  Indeed, under federal law, a communication about discrimination will "virtually always" constitute "protected activity" because encouraging reporting is essential to the purpose of preventing discrimination.  There

is no "manager" exception because it would discourage key employees from reporting discrimination. Further, even if there was a "manager" exception, which there is not, it would not apply because: 1) Plaintiff was not a compliance officer; and 2) she opposed discrimination by complaining about it.

The District also takes the terrifying position that state employers are immune from FEHA and free to discriminate against their employees. There is no merit to this claim because FEHA's definition of a covered employer expressly includes "state" employers which necessarily supersedes any general immunity statute. The District then incorrectly claims Plaintiff was required to exhaust the District's internal procedures, which ignores the holdings of *Schifando* and *Ortega* that FEHA claims, as well as related claims brought together with a FEHA claim, are exempt from internal exhaustion requirements. Plaintiff's claim for retaliation under California Labor Code section 1102.5 is precisely such a claim because it is based on her being terminated for complaining about discrimination. Section 1102.5 also expressly protects employees from retaliation "regardless" of whether reporting "is part of the employee's job duties." Thus, the statute expressly rejects the District's contention that Plaintiff's job duties could somehow except her from protection.[1]

Finally, Plaintiff's anxiety, which causes panic attacks, vertigo and other issues that limit her major life activities, is a disability under FEHA and is sufficiently pled.

For the above reasons, the motion should be denied or leave to amend granted.

## II.   RELEVANT ALLEGATIONS

### A.   Plaintiff Is Appointed As Dean Of The MNHS Department.

On or about January 13, 2016, Plaintiff was hired as the Interim Dean of the Mathematics and the Natural Health Sciences Division ("MNHS") at Palomar College. (First Amended Complaint ("FAC"), Dkt. 7 ¶ 35.) On April 28, 2017,

---

[1] The District tries to distract the Court from the infirmities in its legal arguments and prejudice Plaintiff's opposition by improperly submitting nearly 600 pages of extrinsic evidence of the pretextual reasons it asserted for Plaintiff's termination, even though they are irrelevant to the District's arguments.

OPPOSITION TO MOTION TO DISMISS

Plaintiff's supervisor, Daniel Sourbeer, the Vice-President of Instruction, gave Plaintiff a superlative performance review. (FAC ¶¶ 48-50.) Due to Plaintiff's excellent performance, the District promoted her to the position of Dean of the MNHS division. (FAC ¶¶ 51-52.) As an academic dean, Plaintiff was responsible for organizing, administering, developing and evaluating the instructional programs and activities of her division. (FAC ¶ 51.)

### B.   Plaintiff Is Diagnosed With Anxiety.

On May 5, 2017, Plaintiff suffered a panic attack and was diagnosed with anxiety which "limits her major life activities" by causing her to suffer "feelings of being overwhelmed, helpless and nervous" and "vertigo and cysts." (FAC ¶ 53.)

### C.   Plaintiff Complains About Discrimination By Physics Professors.

In May 2017, the Chair of the Physics Department, Dr. Daniel Finkenthal, reported to Plaintiff that a student complained about materials posted in classrooms used by Nakajima and Gerwig. (FAC ¶ 54.) The postings included:

- A recitation of mneumonic device stating: "Black Boys Rape Our Young Girls But Violet Gives Willingly Get Some Now."
- A posting entitled "Vogue May Edition" which portrayed a student lying across the hood of a pickup truck holding a piece of paper with a drawing of a penis in an enlarged and gratuitous characterization.
- A posting portraying a latino student named Juan which stated "2017 you know you juant me?/Hello Ladies" as a racist play on Juan's name.
- A sexually harassing and racist posting which stated "Dick got her like" which was accompanied by a hashtag remark of "#black cock slut."

(FAC ¶ 55.)

Plaintiff reported the postings to Shawna Cohen, the Manager of Equal Employment Opportunity ("EEO") and Deputy Title IX Coordinator. (FAC ¶ 55.) The EEO Office, Human Resources and Student Affairs Office are responsible for ensuring compliance with anti-discrimination laws. (FAC ¶ 57.) Plaintiff, on the

3

**OPPOSITION TO MOTION TO DISMISS**

1  other hand, is an academic dean and is not responsible for compliance.  (FAC ¶ 57.)

2  Plaintiff made the complaint to advocate for students, faculty and staff.  (FAC ¶ 58.)

3          On June 28, 2017, the Title IX Office began an investigation.  (FAC ¶ 59.)

4  Plaintiff requested that Nakajima and Gerwig be placed on leave, but the District

5  refused.  (FAC ¶ 60.)  Plaintiff was perplexed by this decision because the Title IX

6  office already determined the postings violated anti-discrimination laws.  (FAC ¶ 60.)

7          Plaintiff was a witness in the investigation, which was conducted by an outside

8  attorney.  (FAC ¶ 61.)  On November 1, 2017, the District concluded its

9  investigation.  (FAC ¶ 62.)  In its report, the District concluded Nakajima and Gerwig

10  either "displayed the items themselves or allowed and even encouraged others to do

11  so" and lied about their involvement (FAC ¶ 62, Ex. A.)[2]  The investigator found

12  Plaintiff to be credible.  (FAC ¶ 63, Ex. A.)

13          Even after Nakajima and Gerwig were found to have engaged in harassing

14  conduct, Dr. Lisa Norman, the Assistant Superintendent/Vice-President of the Human

15  Resources Department, refused to place them on leave.  (FAC ¶ 66.)  In response to

16  Plaintiff's complaint on this issue, Dr. Norman informed Plaintiff that the District did

17  not want to do anything that may "create liability and deviate from [the District's]

18  goals and missions," which apparently do not include preventing discrimination and

19  harassment.  (FAC ¶ 66.)  Dr. Norman also indicated that she wanted Plaintiff and Dr.

20  Finkenthal to observe Nakajima and Gerwig and made it clear that the Title IX office

21  was afraid to take action, even though it is its responsibility to do so.  (FAC ¶ 66-67.)

22          On December 12, 2017, despite the egregiousness of their conduct, the District

23  placed Nakajima and Gerwig on unpaid leave for just one month.  (FAC ¶ 69.)

24  **D.      Plaintiff Discusses Her Disability With Dr. Kahn.**

25          On December 4, 2017, Plaintiff met with her supervisor, Dr. Jack Kahn.  (FAC

26  _____

27  [2] In 2009, long before Plaintiff worked there, the District found that Nakajima and
   Gerwig discriminated against a disabled student and Nakajima told a student in a
28  wheelchair that he should just take vitamins and "take care" of himself.  (FAC ¶ 64.)

**OPPOSITION TO MOTION TO DISMISS**

1   ¶ 68.) Plaintiff "discussed her anxiety with Dr. Khan and expressed concern about

2   her overwhelming workload, which included duties that are not typically part of the

3   Dean's job." (FAC ¶ 68.) Dr. Kahn assured Plaintiff that she was an "incredibly

4   valuable member of the team" and that she would be accommodated. (FAC ¶ 68.)

5        **E.**   **Plaintiff Is Suddenly Placed On Leave Without Explanation.**

6        Two days after the District excused the harassing conduct by Nakajima and

7   Gerwig over Plaintiff's objections, and barely a week after Plaintiff requested an

8   accommodation for her disability, the District placed Plaintiff on paid leave without

9   explanation. (FAC ¶ 70.) Plaintiff was escorted off campus, locked out of her e-mail

10  and instructed not to speak with anyone from the college. (FAC ¶ 70.) Despite

11  repeated requests for information by Plaintiff, the District refused to provide Plaintiff

12  with any information except that there was some purported "breach of confidential

13  information." (FAC ¶¶ 70, 72.) Plaintiff complained that she believed she was being

14  retaliated against for reporting Nakajima's and Gerwig's misconduct. (FAC ¶ 72.)

15  On February 27, 2018, the District non-renewed Plaintiff's contract. (FAC ¶ 73.)

16       **F.**   **The District Conducts A Sham Investigation Of Plaintiff.**

17       The day after she was non-renewed, Plaintiff was interviewed by the District's

18  investigator about, among other things, an incident involving Nakajima from two

19  years earlier. (FAC ¶ 74.) Specifically, in April 2016, Plaintiff learned that

20  Nakajima was using an airsoft gun as part of a lab session in an unsafe manner.

21  (FAC ¶¶ 38-39.) When she learned about the incident, Plaintiff requested that the

22  Campus Police investigate Nakajima's unsafe conduct. (FAC ¶ 42.) Plaintiff also

23  reported it to her supervisor, Daniel Sourbeer. (FAC ¶¶ 34, 44.)

24       Based on Plaintiff's report, the Campus Police conducted an investigation of

25  Nakajima's use of the airsoft gun. (FAC ¶¶ 42-43.) The investigation uncovered that

26  Nakajima used the gun in class for two years, which means he used it before Plaintiff

27  worked at the College. (FAC ¶¶ 45, 47.) The investigating Officer determined that

28  the use of the gun should have been approved by the Chief of Police. (FAC ¶¶ 43,

46.)  Plaintiff instructed Nakajima to stop using the gun unless he received approval from the police and received no further complaints about it.  (FAC ¶¶ 46-47.)

When the investigator raised the issue of the airsoft gun during the purported "confidentiality" investigation in 2018, Plaintiff informed him that Dr. Norman asked her about it during the investigation of the physics lab postings.  (FAC ¶ 75.) Plaintiff also confirmed that she forwarded an e-mail about the incident to Finkenthal, which was entirely proper and consistent with Dr. Norman's request that Finkenthal observe Nakajima and Gerwig.  (FAC ¶¶ 75-76.)  Plaintiff's obvious, and only purpose, in forwarding the e-mail was so Finkenthal could confirm that Nakajima followed the prior directive not to use the airsoft gun.  (FAC ¶ 76.)  The investigator asked Plaintiff whether she ever agreed with Finkenthal to forward the information about the airsoft gun incident to his wife or the District Board.  (FAC ¶ 77.)  Plaintiff informed the investigator that she never made any such agreement with Dr. Finkenthal and that Finkenthal never indicated to her that he planned to share the information with anyone.  (FAC ¶ 77.)

On March 4, 2018, before any notice from the District, a faculty member sent a text to Plaintiff informing her that Dr. Kahn told faculty members that Plaintiff was not returning.  (FAC ¶ 78.)  This made it clear that the District already decided to terminate her and the "investigation" was a pretext to create a reason.  (FAC ¶ 78.)

**G.    The District Terminates Plaintiff For Plainly Pretextual Reasons.**

On May 2, 2018, Plaintiff was informed that Dr. Kahn recommended her termination.  (FAC ¶ 79.)  The notice of termination contained an assortment of pretextual reasons.  (FAC ¶¶ 80, 82-83.)  One of the purported reasons cited by the District was an absurd conclusion by the District's investigator Plaintiff was part of a conspiracy to "leak" information about the two-year old gun incident.  (FAC ¶ 80.) The "evidence" of this purported conspiracy is that Plaintiff forwarded the e-mail about the gun incident to Dr. Finkenthal, who unbeknownst to Plaintiff, forwarded it to his wife.  (FAC ¶ 80.)  Plaintiff had no idea Dr. Finkenthal forwarded any e-mails

1  to his wife and she certainly did not ask him to do so. (FAC ¶ 80.) The very idea of

2  an alleged "conspiracy" is pretextual. (FAC ¶ 80.) In fact, nobody complained about

3  Plaintiff and the investigation was "internally generated at the request of Human

4  Resources." (FAC ¶ 81.) The investigator interviewed only Plaintiff and Dr.

5  Finkenthal, both of whom denied the alleged "conspiracy." (FAC ¶ 81, Ex. A.)

6       The District also suddenly raised alleged performance issues, which were not

7  previously presented to Plaintiff as potential grounds for discipline, let alone

8  termination. (FAC ¶ 82.) The District then made the bizarre allegation that Plaintiff

9  failed to report the gun incident to Human Resources, ignoring the fact that she

10 immediately reported it to her supervisor and the campus police. (FAC ¶¶ 44, 83.)

11      On June 13, 2018, the District terminated Plaintiff. (FAC ¶ 84.) The District's

12 adverse employment decisions against Plaintiff were made to retaliate against her for

13 complaining about the postings, for complaining about the retaliatory decision to

14 place her on leave, and to avoid accommodating her disability. (FAC ¶ 85.)

15     **H.    Plaintiff Brings This Action Against The District.**

16      Rather than allow the District to judge its own discriminatory conduct through

17 internal procedures, Plaintiff, as is her right, filed a complaint with the DFEH,

18 obtained a right to sue letter, and filed this Action. (FAC ¶ 29, FAC 30: 3-5, Ex. B.)

19      Plaintiff alleges 7 causes of action against the District: 1) retaliatory adverse

20 employment actions for reporting sexual harassment in violation of 20 U.S.C. section

21 1681 ("Title IX") (FAC ¶¶ 87-95); 2) retaliatory adverse employment actions for

22 reporting race and national origin discrimination in violation of 42 U.S.C. section

23 2000d ("Title VI") (FAC ¶¶ 96-104); 3) retaliatory adverse employment actions for

24 reporting sexual harassment in violation of California Government Code section

25 12940(h) (FAC ¶¶ 105-110); 4) disability discrimination in violation of California

26 Government Code section 12940(a); 5) (FAC ¶¶ 111-118); 5) failure to accommodate

27 disability in violation of California Government Code section 12940(m) (FAC ¶¶

28 119-124); 6) failure to engage in the interactive process in violation of California

1 | Government Code section 12940(n) (FAC ¶¶ 125-130); and 7) retaliation in violation
2 | of Labor Code section 1102.5 (FAC ¶¶ 131-139.)  Plaintiff's claim under Section
3 | 1102.5 is based on the District's employment actions against Plaintiff for "reporting
4 | sexually harassing and racially discriminating conduct . . . ."  (FAC ¶¶ 131-139.)

5 | **III.   ARGUMENT**

6 | **A.   <u>Standard For Ruling On A Motion To Dismiss.</u>**

7 | Dismissal under Rule of Civil Procedure 12(b)(6) "is appropriate only where
8 | the complaint lacks a cognizable legal theory or sufficient facts to support a
9 | cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,
10 | 1104 (9th Cir. 2008).  In deciding a 12(b)(6) motion, the court must accept as true all
11 | of the plaintiff's allegations of material fact and draw all reasonable inferences in her
12 | favor. *Tworivers v. Lewis,* 174 F.3d 987, 991 (9th Cir. 1999). If a complaint is
13 | deficient, the "court must" permit leave to amend unless it is clear amendment would
14 | be futile. *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

15 | **B.   <u>The District's Improperly Submitted Evidence Should Be Excluded.</u>**

16 | A court generally may not consider material outside the pleadings when
17 | deciding a motion to dismiss.  *Lee v. City of Los Angeles*, 250 F. 3d 668, 688 (2000).
18 | A judicially noticeable fact is an exception to this rule.  *Khoja v. Orexigen*
19 | *Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018).  A judicially noticeable fact is one
20 | that is "not subject to reasonable dispute" because it is "generally known" or "can be
21 | accurately and readily determined from sources whose accuracy cannot reasonably be
22 | questioned."  Fed R. Evid. 201(b)(1)(2).  While a public record may be noticeable,
23 | the court "cannot take judicial notice of disputed facts contained in such public
24 | records." *Lee, supra*, 250 F.3d at 688

25 | This court should deny the District's Request for Judicial Notice and exclude
26 | the entire Declaration of Dr. Norman because the documents submitted, and
27 | especially their contents, are not judicially noticeable.  For example, Exhibit A to the
28 | Request and Declaration is a letter from Dr. Kahn to Plaintiff outlining his purported

1  reasons for recommending her termination and attaching hundreds of pages of

2  exhibits, including e-mails from Dr. Kahn and others, interview transcripts, reports

3  and other unofficial documents.  (RJN, Ex. A, Norman Decl. ¶ 4, Ex. A.)

4       The District cites these documents extensively for the truth of the matters

5  asserted therein and as purported evidence of its claim that Plaintiff had performance

6  issues.  (Motion to Dismiss 4:25-6:26, 7:1-8:25, 11:6-9.)  All of these assertions are

7  subject to dispute, and are disputed by Plaintiff's numerous allegations demonstrating

8  that the proffered reasons for her termination are pretextual.  Thus, even if this Court

9  accepts the District's dubious assertion that a termination letter from a supervisor is a

10 "public record," its contents are not judicially noticeable and should be excluded.[3]

11      The District also has no basis for judicial notice of Exhibits B-E to the Request

12 and Declaration which consist of two correspondence from Dr. Norman, board

13 minutes, and a board agenda.  (RJN, Ex. B-E, Norman Decl. ¶ 5-9.)  While the fact

14 that a board meeting happened may be noticeable, the District uses these documents

15 as evidentiary support for its disputable legal and factual conclusion that it "advised"

16 or "notified" Plaintiff of "her rights" and that she was "given multiple opportunities

17 to contest her discharge."  (Motion to Dismiss, 7:1-8:25.)  Thus, the Request for

18 Judicial Notice should be denied and the attached evidence excluded.

19      **C.   There Is No "Manager" Exception To Title IX And Title VI Claims.**

20           **1.   The District's Proposed "Manager Rule" Is Contrary To Law.**

21      20 U.S.C. section 1681 ("Title IX") provides that "n[o] person . . . shall, on the

22 basis of sex . . . be subjected to discrimination under any education program . . .

23 receiving Federal financial assistance." 42 U.S.C. section 2000e ("Title VI") prohibits

24 discrimination "on the ground of race, color, or national origin."

25      The Supreme Court recognizes that Title IX "broadly prohibits a funding

26 _____

27 [3] Exhibit A is also inadmissible because Dr. Norman lacks personal knowledge of the
   matters therein, it consists of hearsay, is irrelevant to the District's arguments and is
28 unfairly prejudicial.  *See* Fed. Rule Evid. 401, 402, 403, 602, 801, 901.

1  recipient from subjecting any person to 'discrimination' 'on the basis of sex'"

2  *Jackson v. Birmingham Bd. of Education*, 544 U.S. 167, 173 (2005). To achieve its

3  broad goal of preventing discrimination, Title IX provides a private right of action for

4  any "intentional sex discrimination," which includes "retaliation against a person

5  because that person has complained of sex discrimination . . . ." *Id.*

6      Congress enacted Title IX . . . to "provide individual citizens effective

7  protection against [discriminatory] practices . . . . This objective would be difficult,

8  if not impossible, to achieve if persons who complain about sex discrimination did

9  not have effective protection against retaliation." *Jackson, supra,* 544 U.S. 167 at

10 180; *quoting Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979)

11     "Without protection from retaliation, individuals who witness discrimination

12 would likely not report it . . . and the underlying discrimination would go

13 unremedied." *Jackson, supra,* 544 U.S. 167 at 180-181. Thus, "[i]f retaliation were

14 not prohibited, Title IX's enforcement scheme would unravel." *Id.* at 180.

15     Title VI also provides for a cause of action for retaliation for reporting race

16 discrimination. *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 43 (D.D.C. 2009).

17     In *Kimmel*, the plaintiff was a university dean. *Kimmel, supra,* 639 F. Supp. 2d

18 at 38. The plaintiff alleged that one reason for her termination was that she voiced

19 concerns about unfair treatment of minority students. *Id.* at 39. The court denied the

20 university's motion to dismiss, holding that plaintiff's advocacy on behalf of the

21 students was "protected activity sufficient to support a retaliation claim." *Id.* at 43.

22     As with Title IX, courts broadly interpret a similar statute, Title VII, which

23 makes it unlawful to discriminate against any individual "because he has opposed any

24 practice made an unlawful" by Title VII. 42 U.S.C.S. 2000e-3. In *Thompson v. N.*

25 *Am. Stainless, LP*, 562 U.S. 170, 173 (2010), the Court held that "Title VII's

26 antiretaliation provision must be construed to cover any employer conduct that

27 "might dissuade a reasonable worker from making or supporting a charge of

28 retaliation." *Id.* at 173 (*quoting Burlington N. & S. F. R. Co. v. White*, 548 U.S. 53,

68 (2006).

In *Crawford v. Metro. Gov't of Nashville & Davidson Cnty*, 555 U.S. 271 (2009), the plaintiff was terminated after she was interview as a witness in a harassment investigation. *Id.* at 273-74. The Court reversed summary judgment for the employer on the plaintiff's Title VII retaliation claim, holding that "opposing" discrimination includes even simply "responding to someone else's question" about discrimination. *Id.* at 277. The Court reasoned "'[w]hen an employee communicates . . . a belief that the employer is engaged in . . . discrimination, that communication' <u>virtually always</u> 'constitutes the employee's opposition to that activity.'" *Id.* at 276 (*quoting* 2 EEOC Compliance Manual §§ 8-II-B(1), (2) p. 614:0003 (Mar. 2003) (emphasis added). Notably, *Crawford* did not recognize any exception to what constitutes "protected activity" based on an employee's job duties.

In *Demasters v. Carillion Clinic*, 796 F.3d 409, 423 (2d Cir. 2015), the Second Circuit rejected any kind of job duty-based exception to Title VII retaliation claims. In *Demasters*, the plaintiff was an employee whose job was to counsel employees. 796 F.3d at 413. The plaintiff helped another employee file an internal harassment complaint and was terminated. *Id.* at 414-415. The district court granted the defendant's motion to dismiss on the basis that the plaintiff was merely performing his job duties. *Id.* at 415. The Second Circuit reversed, holding that a so-called "manager rule" cannot apply to a Title VII claim. *Id.* at 422. The court held that "[n]othing in the language of Title VII indicates that the statutory protection accorded an employee's oppositional conduct turns on the employee's job description or that Congress intended to excise a large category of workers" from protection. *Id.* The court further reasoned that under a "manager rule":

> employees best able to assist employees with discrimination claims—
> the personnel that make up EAP, HR, and legal departments—would
> receive no protection from Title VII if they oppose discrimination
> targeted at the employees they are duty-bound to protect.

1   *Id.* at 423.

2   Thus, applying a "manger rule" would discourage reporting, which would put

3   in motion "a downward spiral of Title VII enforcement." *Id.*

4   The Sixth Circuit also rejected the so-called "manager rule." In *Johnson v.*

5   *Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000), the plaintiff was the Vice-President

6   of Human Resources for the defendant, which is a public university. *Id.* at 567. The

7   plaintiff was responsible for managing the affirmative action program. *Id.* at 568-569.

8   The plaintiff protested the university's waiver of required affirmative action

9   procedures when hiring. *Id.* at 569. The plaintiff was later terminated. *Id.* The court

10  reversed summary judgment on the plaintiff's retaliation claims, rejecting the

11  defendant's contention that the plaintiff's contractual duty to voice concerns about

12  discrimination precluded him from pursuing a retaliation claim. *Id.* at 579. The court

13  held that a "contractual duty" is of "no consequence" to a claim for retaliation. *Id.* at

14  580 (*citing* EEOC Compliance Manual (CCH) P. 8806). The court reasoned that

15  excepting "high-level affirmative action official[s]" from protection under Title VII's

16  opposition clause "runs counter to the broad approach used when considering a claim

17  for retaliation . . . as well the spirit and purpose behind Title VII as a broad remedial

18  measure" because it would allow retaliation against "the person best able to oppose

19  the employer's discriminatory practices." *Johnson, supra*, 215 F.3d at 580.

20  *Demasters* and *Johnson* are consistent with *Jackson's* holding that Title IX

21  should be interpreted broadly to protect persons who report discrimination, as well as

22  *Crawford's* holding that a communication about discrimination "virtually always"

23  constitutes protected activity. *DeMasters, Johnson, Jackson* and *Crawford* also all

24  recognize – without exception - that encouraging reporting is essential to the goal of

25  preventing discrimination. In an academic environment, victims of discrimination,

26  such as staff, junior professors, and especially students, may fear retaliation if they

27  pursue complaints against powerful professors. It is therefore essential to Title IX

28  and Title VI's purpose of preventing discrimination to ensure that any employee of a

1 college, especially a dean, can pursue a complaint with the Title IX Office on behalf

2 of others without fear of reprisal.  To hold otherwise would gut the essential purpose

3 of Title XI and Title VI by "reasonably dissuading" employees" in a position to

4 oppose discrimination to choose between reporting the conduct or protecting their

5 jobs.  Accordingly, the District's motion to dismiss should be denied because any

6 type of job duties exception is anathema to the purpose of Title IX and Title VII.

7        Further, Plaintiff pursued a formal complaint about discriminatory conduct by

8 professors which was investigated and confirmed by the Title IX Office.  In *Kimmel*,

9 merely voicing concerns about possible discrimination without filing a complaint was

10 sufficient to constitute "protected activity" under Title VI.  *Kimmel, supra*, 639 F.

11 Supp. 2d at 43. Thus, there is no doubt Plaintiff engaged in "protected activity" and

12 this court should reject the District's unsupported argument that that Plaintiff's role as

13 dean immunized the District from a retaliation claim.

14        The cases cited by the District do not apply.  For example, in *Garcetti v.*

15 *Ceballos*, 547 U.S. 410, 414-415 (2006) the Court held that a government attorney's

16 work product was not protected by the First Amendment.  In *Skare v. Extendicare*

17 *Health Servs. Inc.*, 515 F.3d 836, 838-840 (8th Cir. 2008), summary judgment was

18 granted against a nurse responsible for compliance with clinical regulations who was

19 terminated after reporting violations of the regulations.  The court held that

20 Minnesota's whistleblower statute [unlike California's] does not protect employees

21 whose job duties are legal compliance.  *Id*. at 840.  *Garcetti* and *Skare* are

22 inapplicable here because they are not discrimination cases.

23        The District cites several cases involving California Labor Code section

24 1102.5, none of which involved claims related to discrimination.[4]  Significantly, each

25

26 ────────────────

[4]The cases are *Patten v. Grant Joint Union Sch. Dist.* 134 Cal. App. 4th 1378 (2005),
27 *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191 (2012), *Muniz v. United Parcel
Service, Inc.*, 731 F. Supp. 2d 970 (N.D. Cal. 2010) and *Lund v. Leprino Foods Co.*,
28 2007 U.S. Dist. LEXIS 46705 (E.D. Cal. 2007).

**OPPOSITION TO MOTION TO DISMISS**

of those cases was decided before 2014 when Section 1102.5 was amended to expressly protect employees who report illegal activity "regardless of whether disclosing the information is part of the employee's job duties." Cal. Labor Code § 1102.5(a) as amended by Ch 781 § 4.1 (SB 496), effective January 1, 2014. Thus, if anything, the District's repeated citations to pre-amendment Section 1102.5 cases highlight the fact the California Legislature has already considered, and rejected, any kind of limitation on a whistle-blower protection based on an employee's job duties.

### 2.    Plaintiff Engaged In "Protected Activity" Under Any Test.

Even if federal anti-discrimination laws permitted limiting the protection against retaliation based on "manager's" job duties, which they do not, Plaintiff engaged in "protected activity" because: 1) compliance with anti-discrimination was not part of Plaintiff's job duties; and 2) she stepped outside any arguable "job duties" by complaining about harassment and serving as witness in the investigation.

The FLSA case cited by the District are not only inapplicable, but also militate against applying any type of "manager rule" to Plaintiff. In *Rosenfield v. GlobaTranz Enterprises, Inc.*, 811 F. 3d 282, 285 (9th Cir. 2015), the plaintiff was the defendant's human resources director, who was terminated after complaining about FLSA non-compliance. *Id*. She filed a complaint under the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3) which makes it unlawful for an employer to discriminate against an employee who "filed any complaint . . ." under the FLSA. *Id*. The district court granted summary judgment on the ground that the plaintiff was not entitled to protection under the FLSA because she never "filed any complaint." *Id*. The Ninth Circuit reversed, applying the FLSA's "fair notice" test under *Kasten v. Saint-Gobain Performance Plastics Corp.*, 536 U.S. 1 (2011). In doing so, the court expressly declined to apply a "manager rule," holding that even under the FLSA, whether an employee is a "manager" is "only one consideration" in determining whether the plaintiff made a "complaint." *Rosenfield, supra*, 811 F. 3d at 287. The court distinguished between "a first-level manager" responsible for overseeing day-to-day

1  operations and a "high-level manager" responsible for ensuring compliance with the

2  FLSA.  *Id.* at 287.  Ultimately, the court held the plaintiff "complained" because the

3  president considered himself responsible for compliance.  *Id.* at 287-288.

4         The import of *Rosenfield* is that, even under the limited anti-retaliation

5  provisions of the FLSA, an employee is protected so long as they "complain."  It does

6  not hold that the Ninth Circuit applies a "manager's rule" to FLSA claims, let alone

7  to claims for retaliation under the broader protections under anti-discrimination

8  statutes.  Further, Title IX and EEO officers are responsible for compliance - not

9  academic deans like Plaintiff.  Thus, even under the rule applicable to FLSA cases

10  (which is inapplicable to Title IX and Title VI), Plaintiff engaged in "protected

11  activity" because she clearly complained about discrimination.

12         In *McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996), the

13  plaintiff was the personnel director for the defendant and was responsible for

14  compliance with wage laws.  *Id.* at 1481.  The plaintiff was fired after she reported

15  potential FLSA violations.  *Id.* at 1486.  The court held that the plaintiff was not

16  engaged in protected activity under the FLSA because she did not "step outside her

17  role of representing the company" by filing an action "or assist[ing] other employees

18  in asserting FLSA rights."  *Id.* at 1486.  Notably, in *Rosenfield*, the Ninth Circuit

19  declined to adopt *McKenzie* even in FLSA cases.  *Rosenfield, supra* 811 F.3d at 287.

20  Further, unlike the plaintiff in *McKenzie*, plaintiff assisted a complainant, pursued the

21  complaint and was a witness.  Thus, even under *McKenzie*, which does not apply

22  even to FLSA cases in the Ninth Circuit, Plaintiff engaged in "protected activity."

23         The lone discrimination case cited by the District is *EEOC v. HBE*, 135 F.3d

24  543 (8th Cir. 1997), which was decided long before *Crawford* held a communication

25  about discrimination will "virtually always" constitute protected activity.  Further, in

26  *HBE*, the Eighth Circuit held that a personnel director <u>did engage in protected activity</u>

27  when he refused to carry out an illegal termination.  *Id.* at 554.  Further, in a recent

28  case, *Robinson v. Wichita State University*, 2018 U.S. Dist. LEXIS 22983 (D. Kansas

OPPOSITION TO MOTION TO DISMISS

2018, decided February 13, 2018) **9, 11, the court held that even in the Eighth Circuit <u>even a Title IX compliance officer</u> engages in protected activity where she "fil[es] a complaint with the employer" as opposed to simply "warning [the employer] that it could face liability for failing to investigate . . . ." *Id.* **9, 11 (denying motion to dismiss retaliation claim where plaintiff reported sexual assault).

Unlike in *McKenzie*, and all of the other cases cited by the District, where the plaintiff was responsible for compliance, Plaintiff was an academic dean responsible for instructional programs and not compliance with anti-discrimination laws. To the contrary, the College had entire separate departments responsible for those issues. Further, under every single case cited by the District, Plaintiff engaged in "protected activity" because she assisted in formally complaining about discrimination. Thus, this Court should deny the District's motion to dismiss.

### D.   **FEHA Expressly Applies to Public Employers.**

It is indisputable that FEHA applies to state employers, including the District.

California Government Code 12926, which defines the terms used in the FEHA statutes, provides that the term "[e]mployer" includes "the state or any political or civil subdivision of the state, and cities . . . ." Cal. Gov. Code § 12926. This definition of "'employer' is express declaration of the Legislature's intent to subject public entities to liability for violations of FEHA, and a 'clear indication of legislative intent that immunity [under [Gov. Code] sections 820.2 and 815.2] be withdrawn in the particular case" of a FEHA claim. *DeJung v. Superior Court,* 169 Cal. App. 4th 533, 546 (2008) Thus, "FEHA expressly makes public employers . . . directly liable for violations of that law . . . ." *DeJung, supra,* 169 Cal. App. 4th at 545.

In *Dejung*, the plaintiff brought an age discrimination case under FEHA against his employer, the Superior Court. *Id.* at 538. The trial court granted summary judgment on the basis of discretionary immunity under Government Code sections 815.2 and 820.2. *Id.* at 538. The Court of Appeal reversed, holding that there was no immunity because FEHA expressly applies to "employers" which includes "the state

or civil subdivisions of the state . . ." *Id.* at 545-546. The court reasoned that even assuming the statutes conflicted, "where a general statute conflicts with a specific statute, the specific statute controls . . . " *Id.* at 546. Thus, the immunity statutes are superseded by FEHA which "states unequivocally that no employer, including public entities may discriminate . . . when making employment decisions." *Id.* 547.

*Dejung* is dispositive on this issue. State employers like the District are subject to FEHA claims and any suggestion to the contrary is "inimical to the core governmental responsibility entrusted to the courts: to provide for a public justice system that is unfailingly unbiased and impartial." *Id.* at 548. In fact, in *Dejung*, the court rejected the exact argument made by the District here under *Caldwell v. Montoya. Id.* at 544-45. In, *Caldwell v. Montoya*, 10 Cal. 4th 972, 976-77 (1995), the plaintiff brought a FEHA action against individual officials. *Id.* The California Supreme Court concluded that the discretionary acts immunity granted by Government Code section 820.2 "prohibited such suits against public officials as *individuals* when the suit challenges a personnel action that amounts to a 'basic policy decision." *Dejung*, s*upra*, 169 Cal. App. 4th at 544; *Caldwell*, *supra*, 10 Cal 4th at 988-989. The court further held that because the individuals were immune, the public entity was not *vicariously liable* for the employee's actions. *Dejung, supra*, 169 Cal. App. 4th at 544, *Caldwell, supra*, 10 Cal. 4th at 989 (emphasis in *Dejung*). It "expressly declined" to decide "whether a government employer *as an entity*" can be sued and noted that "nothing" it decided was "intended to imply that because the individual board members are immune, plaintiff's FEHA claim against [the district] *itself* is also barred." *Dejuung, supra,* 169 Cal. App. 4th at 544-45 (emphasis added), *Caldwell, supra,* 10 Cal. 4th at 989 n. 9.

In *Farmers Ins. Group v. County of Santa Clara*, 11 Cal. App. 4th 992, 1014-15 (1995), the California Supreme Court confirmed, "albeit in *dicta*" that "FEHA provides a basis of direct entity liability *independent of the derivative liabilities addressed in section 815.2*." *DeJung, supra* 169 Cal. App. 4th at 545, (*quoting*

**OPPOSITION TO MOTION TO DISMISS**

*Farmers, supra*, 11 Cal. App. 4th at 1014-15; italics in original.)  Thus, immunity under Section 815.2 means only that *respondeat superior* does not apply against the entity. *Dejung, supra*, 169 Cal. App. 4th at 545.  FEHA, however "creates *direct*" rights by an employee against "private or public" employers.  *Id.* at 545.

Here, Plaintiff sued the District directly under FEHA for the adverse employment actions it took against her and did not name any individuals.  Further, because the District is an "employer" as expressly defined by FEHA, it has no immunity.  Thus, the District's Motion to Dismiss should be denied.

### E.  Plaintiff Alleged A Disability Under FEHA.

FEHA defines a "mental disability" as "any mental or psychological disorder or condition, such as . . . .[an] emotional or mental illness . . . that limits a major life activity.  Cal. Gov. Code § 12926(j)(i)  For purposes of FEHA "[a] mental or psychological disorder or condition limits a major life activity if it makes the achievement of the major life activity difficult.  "Major life activities" are "broadly construed" and include "physical, mental, and social activities and working."  Cal. Gov. Code § 12926(j)(i).  Government Code section 12926.1(a) provides that FEHA "contains broad definitions of . . . mental disability . . ." and that it is the "intent of the Legislature" that such definitions "be construed so that applicants are protected from discrimination . . . ."  Section 12926.1(c) further confirms that "the definitions of . . . 'mental disability' . . . require a 'limitation' upon a major life activity but do not require, as does [the ADA] a 'substantial limitation.'"

In *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 249 (2000), the plaintiff, an employee of the defendant bank, suffered from post-traumatic stress disorder after she was a victim in a robbery.  *Id.* at 253.  The plaintiff alleged that her condition rendered her unable work in a bank branch and that the bank failed to accommodate her by transferring her.  *Id.* at 250, 253.  In reversing an order granting summary judgment, the Court of Appeal held, among other things, that the plaintiff's condition could constitute a "disability" under FEHA.  *Id.* at 257.  The court reasoned that

under Government Code section 12926.1, a plaintiff establishes a "mental disability" so long as the condition "limit[s]" a major life activity, including "working." *Id.* at 258.  Thus, the plaintiff's evidence that she suffered from "anxiety, nervousness, depression, lack of confidence, a helpless feeling, a feeling of humiliation, headaches, teeth grinding, nightmares, sleeplessness and panic attacks" was enough to preclude summary judgment as to whether she had a disability. *Id.* at 259.

Like the plaintiff *Jensen*, Plaintiff alleges that she suffered from a diagnosed mental disorder, anxiety, which cause her to suffer a host of symptoms, such as panic attacks, feelings of being overwhelmed, helpless and nervous, as well as vertigo and cysts.  Obviously, this limits Plaintiff's "major life activities" which, under FEHA, includes any "physical, mental and social activit[y] and working."  Thus, like the PTSD in *Jensen*, Plaintiff's anxiety constitutes a disability under FEHA.

The District misrepresents plaintiff's disability allegations.  Plaintiff did not, as the District states, allege that she suffered from "anxiety . . . [due to her] overwhelming workload." (Motion to Dismiss 17:19-20.)  In fact, Plaintiff alleges that she advised her supervisor that she "was suffering from anxiety and expressed concern about her overwhelming workload." (FAC ¶ 68.)  Further, Plaintiff alleged that several months earlier she was "diagnosed with anxiety." (FAC ¶ 53).  Thus, Plaintiff alleged a mental health disorder that affects major life activities, which is sufficient to plead a disability under FEHA.

The District's argument that "workplace stress related to an employee's job performance" cannot be a disability is erroneous.  In fact, in *Diaz v. Fed. Express Corp.*, 373 F.Supp.2d 1034, 1041, 1053 (C.D. Cal. 2005), the court held that the plaintiff's temporary anxiety and depression arising from harassment he suffered at work was a disability under FEHA.

The District's reliance on *Higgins-Williams v. Sutter Medical Foundation*, 237 Cal. App. 4th 78, 84-86 (2015) is also misplaced. *Higgins-Williams*, does not hold that "workplace stress related to an employee's job performance is not a cognizable

1  disability." Rather, *Higgins-Williams*, which was decided on summary judgment,
2  held that "inability to work under a <u>particular supervisor</u> because of anxiety and stress
3  related to the supervisor's standard oversight of the employee's job performance." *Id.*
4  at 84 (emphasis added). The holding is limited to claims specific to working <u>for a</u>
5  <u>particular supervisor</u>. *Id.* Any broader interpretation is contrary to the language of
6  Section 12926 which defines "mental disability" as an any "disorder" or "condition"
7  that limits a major life activity, including "working." Cal. Gov. Code 12926(j)(1)(C).
8      Similarly, in *Striplin* v. *Shamrock Foods Co.*, 731 F. App'x 618 (9th Cir.
9  2018), cited by the District, summary judgment was affirmed where the plaintiff's
10  claimed disability was "stress" caused <u>by his supervisor's job expectations</u>. *See* Trial
11  Court opinion, *Striplin v. Shamrock Foods Co.* 2016 U.S. Dist. LEXIS 39680 (C.D.
12  Cal., decided March 24, 2016) ** 14-15, 15-16. In *Estrada v. Gate Gourmet, Inc.*,
13  2017 U.S. Dist. LEXIS 86848 (C.D. Cal., decided June 6, 2017) a motion to dismiss
14  was granted <u>with leave to amend</u> where the plaintiff alleged he "suffered from
15  anxiety and stress" as a result of unfair treatment by his supervisor. In *Burch* v. *Cal.*
16  *DMV*, 2017 U.S. Dist. LEXIS 131780 (E.D. Cal., decided December 20, 2013), the
17  plaintiff also claimed that he could not work under particular supervisors. The court
18  held that his claim, known as a "boss-ectomy" is not a disability. *Id.* at **14.
19      Each of these cases concern employees who claimed that they could not work
20  for a particular supervisor. That is not the case here under any reading of Plaintiff's
21  allegations. Thus, this Court should deny the District's motion to dismiss Plaintiff's
22  claims for disability discrimination, or at a minimum, permit leave to amend.
23  **F.    The Exhaustion of Internal Remedies Doctrine Does Not Apply.**
24      Under California law the rule of exhausting internal remedies <u>does not apply</u> to
25  discrimination claims. Employees who claim "that they have suffered employment-
26  related discrimination" do not need to exhaust internal remedies. *Schifando, supra,*
27  31 Cal. 4th at 1074. Thus, in a discrimination case, the employee "may choose to
28  ignore" internal procedures and proceed directly to the courts to obtain relief under

1  FEHA. *Ortega, supra,* 156 Cal. App. 4th at 1083; *citing Schifando*, *supra*, 31 Cal.

2  4th at 1090. As a necessary corollary to this right, employees need not exhaust

3  internal remedies for other claims if the "resolution of those claims would have a

4  preclusive impact on the FEHA claim." *Williams v. Hous. Auth. of Los Angeles,* 121

5  Cal. App. 4th 708, 713 (2004), *Ortega*, *supra*, 156 Cal. App. 4th at 1086.

6       In *Schifando*, the plaintiff sued the City of Los Angeles for employment

7  discrimination under the FEHA. *Schifando, supra*, 31 Cal. 4th at 1080. The Court of

8  Appeal held that the plaintiff needed to exhaust both the FEHA and the internal

9  remedies provided to City before filing his lawsuit. *Id*. at 1081. The Supreme Court

10  reversed, explaining that "'FEHA was meant to supplement, not supplant or be

11  supplanted by existing antidiscrimination remedies," so employees have the

12  "maximum opportunity to vindicate their civil rights against discrimination.'" *Id*. at

13  1085-1086, 1092 (*quoting State Personnel Bd. v. Fair Employment & Housing Com.*,

14  39 Cal. 3d 422, 431 (1985)). Given that the purpose of FEHA is "to provide effective

15  remedies for the vindication of constitutionally recognized civil rights and to

16  eliminate discriminatory practices . . . ." the court recognized that while some

17  plaintiffs may prefer summary internal procedures, others "would prefer to bypass the

18  administrative procedures and seek a vindication of their civil rights, even if the

19  ensuing litigation is expenses and protracted." *Id*. at 1087. Thus, the court reasoned

20  because the "opportunity for all public and private employees to vindicate civil rights

21  is the primary intent of FEHA . . . plaintiffs have a choice" between their internal

22  remedies and those provided by FEHA. *Id*. at 1087.

23       In addition, when an employee pursues an internal administrative remedy to its

24  conclusion, the employee must timely seek judicial review from an adverse

25  administrative decision by filing an administrative mandate action before filing a civil

26  action. *Williams, supra,* 121 Cal. App. 4th at 724-725. This is known as exhaustion

27  of judicial remedies. *Id*. at 725. If the employee fails to challenge the findings in an

28  administrative mandate action, the findings are binding in a subsequent civil action

**OPPOSITION TO MOTION TO DISMISS**

1   asserting a FEHA claim. *Johnson v. City of Loma Linda,* 24 Cal.4th 61, 76 (2000).

2      *Johnson's* requirement that an employee pursue internal administrative

3   procedures through judicial mandate, and *Schifando's* rule that employees can bypass

4   the entire process are easily reconciled where only a FEHA claim is alleged.

5   However, "significant tension" arises where an employee asserts a FEHA claim and

6   FEHA-related claims. *Williams, supra,* 121 Cal. App. 4th at 727.  In such a

7   circumstance "the same procedural labyrinth addressed in *Schifando* would arise if

8   the public employee were required to proceed in an administrative forum" on "claims

9   that might have a preclusive effect on his or her FEHA claims." *Id.*  In these

10   circumstances, to require exhaustion of those claims would nullify *Schifando,* which

11   gives the public employee the option to "bypass the internal administrative remedy

12   and affords the public all the rights and remedies under FEHA." *Id.*

13      In *Ortega,* the plaintiff abandoned a grievance procedure and sued for race

14   discrimination and retaliation under FEHA, intentional infliction of emotional

15   distress, and wrongful termination in violation of public policy.  156 Cal. App. 4th at

16   1078.  The trial court granted the district's demurrer, ordering that the plaintiff was

17   required to exhaust his internal remedies. *Id.* at 1079.  The Court of Appeal reversed

18   as to all of the plaintiff's claims. *Id.* at 1087. The court held that the plaintiff was not

19   required to exhaust internal remedies, even on his nonstatutory claims. *Id* at 1086.

20   The court reasoned that because the claims for intentional infliction of emotional

21   distress, negligent supervision and wrongful termination were each based on the

22   racial discrimination that formed the basis of the plaintiff's FEHA claim, the

23   resolution of those claims would have a preclusive impact on the FEHA claim. *Id.*

24   Thus, as addressed in *Williams, Shifando's* exception applied and the plaintiff

25   properly bypassed internal remedies on all of his claim. *Id.*

26      *Ortega* is instructive.  Plaintiff was not required to pursue internal remedies on

27   her claim for retaliation under FEHA and she properly exhausted administrative

28   remedies by obtaining a right to sue from the DFEH.  Further, like her FEHA

OPPOSITION TO MOTION TO DISMISS

1  retaliation claim, Plaintiff's claim under Section 1102.5 is based on the adverse

2  employment actions taken by the District in retaliation for her reporting

3  discrimination by Nakajima and Gerwig.  Thus, like the common law wrongful

4  termination and other claims by the plaintiff in *Ortega*, Plaintiff was entitled to

5  bypass the District's internal procedures so as not to risk adverse findings that could

6  have a preclusive effect on her FEHA claim in court.

7       The District cites a litany of inapplicable cases in support of its argument that

8  Plaintiff was required to exhaust her administrative remedies.  In *Westlake*

9  *Community Hosp. v. Superior Court*, 17 Cal. 3d 465, 470. (1976) a doctor alleged that

10  the defendant hospital improperly revoked her privileges through fraud and

11  conspiracy to restrain competition.  The Court held that the exhaustion of

12  administrative doctrine applies to wrongful terminations, but that it did not apply to

13  the plaintiff because no internal remedy was available.  *Id.* at 485.  In *Campbell v.*

14  *Regents of California*, 35 Cal. 4th 311, 317 (2005), the plaintiff was terminated after

15  she reported violations of competitive bidding laws to the FBI.  The plaintiff alleged

16  retaliation claims under Section 1102.5 and Government Code section 12653. *Id.*

17  The court held that the plaintiff's claims were correctly dismissed for failure to

18  exhaust administrative remedies.  *Id.*  at 328, 331.

19       In *Terris v. County of Santa Barbara*, 20 Cal. App. 5th 551 (2018), the plaintiff

20  claimed under Labor Code section 1101, 1102 and 1102.5 that she was terminated in

21  violation of her seniority rights and in retaliation for asserting them.  *Id.* at 554.  The

22  court held that her claims were barred for failure to exhaust internal administrative

23  remedies.  *Id.* at 559.  In *Palmer v. Regents of the University of California*, 107 Cal.

24  App. 4th 899, 902 (2003), the plaintiff alleged she was wrongfully discharged in

25  violation Labor Code section 1102.5 because she reported the university's failure to

26  comply with lab data regulations.  The court granted summary judgment because the

27  plaintiff failed to exhaust her administrative remedies.  *Id.* at 905-906.

28       Unlike the plaintiffs in *Terris*, *Palmer* and *Campbell*, Plaintiff's Section 1102.5

**OPPOSITION TO MOTION TO DISMISS**

claim is based on the retaliation for reporting discrimination and is asserted together with a FEHA claim.  Further, like the plaintiff's tort claims in *Ortega*, if Plaintiff were required to pursue her 1102.5 claim internally, it would risk findings that could collaterally estop her on issues related to her FEHA claim.[5]  To prevent that result, *Schifando*, *Williams* and *Ortega* create an exception to the exhaustion of internal remedies doctrine for FEHA claims and any other claim which could create findings adverse to the FEHA claim.  That is precisely the case with Plaintiff's Section 1102.5 claim which is based on the same retaliation for reporting discrimination as her FEHA claim.  Thus, Plaintiff was entitled to bypass internal District procedures on all of her claims and the motion to dismiss should be denied.

### G.   Section 1102.5 Applies "Regardless" Of Job Duties.

California Labor Code section 1102.5(b) provides that an employer shall not retaliate against an employee for disclosing information:

> if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute . . . regardless of whether disclosing the information is part of the employee's job duties.

(Emphasis added).

"It is a settled principle in California law that '[w]hen statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.'"  *In re Lance W.*, 37 Cal. 3d 873, 886 (1985).  Section 1102.5 could not be clearer that it protects whistleblowers "regardless of whether disclosing the information is part of the employee's job duties."  The District provides no authority for its bizarre argument that "regardless of job duties" does not mean "regardless of job duties" but actually means job duties must be considered.  Thus, Plaintiff was

---

[5] The District may argue that *Terris* applies because it involved Section 1102.5. However, the issue is not the label of a claim, but whether it may have a preclusive effect on a FEHA claim.  Plaintiff's Section 1102.5 claim is more like the wrongful termination claim in *Ortega*, which was based on the same acts as the plaintiff's FEHA claim, while in *Terris*, the Section 1102.5 claim was unrelated to any FEHA issues.

**OPPOSITION TO MOTION TO DISMISS**

1    protected <u>regardless</u> of whether it was her job duty to report discrimination.

2        Even ignoring the superseding amendment, the cases cited by the District are

3    inapplicable.  In *Patten* some disclosures by a principal to a school district about

4    budget misappropriation constituted whistle-blowing under Section 1102.5 while

5    others did not. *Patten, supra*, 134 Cal. App. 4th at 1384-86.  In, *Edgerly*, an

6    administrator responsible for expenditures could not state a claim under California

7    Labor Code section 1102.5 when she was terminated after questioning certain

8    expenses.  *Edgerly, supra*, 211 Cal. App. 4th at 1199. The court held that she could

9    not state a claim because expenditure issues were part of her "general" job duties.

10   *Edgerly, supra*, 211 Cal. App. 4th 1191 at 1207.  In *Muniz v. United Parcel Sercvice,*

11   *Inc.*, 731 F. Supp. 2d 931, 970 (N.D. Cal. 2010), summary judgment was granted

12   against a plaintiff who failed to show under Section 1102.5 her demotion was

13   casually connected to her ordering a timecard audit. *Id.*  963-964, 970.  In *Lund v.*

14   *Leprino Foods Co.*, 2007 U.S. Dist. LEXIS 46705 (E.D. Cal. 2007), summary

15   judgment was granted on the plaintiff's retaliation claim because his employer

16   ordered the report he prepared on an oil spill.  **3, 7-8.

17       In the cases cited by the District, the plaintiff was responsible for reporting.

18   Plaintiff disputes that Title IX reporting is a job duty of an academic dean.  Further, if

19   the standard is that no person in a position of authority is protected, then few

20   employees would be protected which cannot be the law.  Thus, Defendant's motion to

21   dismiss should be denied.

22   **IV.    CONCLUSION**

23       For the above reasons, the motion to dismiss should be denied.

24   Dated: February 15, 2019               **DWIN LEGAL, APC**

25                                          By:   /s/ Evan Dwin
26                                               Evan Dwin
                                            Attorneys for Plaintiff KATHRYN
27                                          KAILIKOLE

28

**OPPOSITION TO MOTION TO DISMISS**