Regina A. Petty (SBN 106163)
  E-Mail: rpetty@fisherphillips.com
Adam F. Sloustcher (SBN 291657)
  E-Mail: asloustcher@fisherphillips.com
Kevonna J. Ahmad (SBN 324312)
  E-Mail: kahmad@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858)597-9600
Facsimile:  (858)597-9601

Attorneys for Defendant
Palomar Community College District

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN KAILIKOLE, an individual;<br><br>                    Plaintiff,<br><br>        v.<br><br>PALOMAR COMMUNITY COLLEGE DISTRICT, a governmental entity; and DOES 1 through 25, inclusive;<br><br>                    Defendants. | CASE NO.: 3:18-cv-02877-AJB-MSB<br><br>*[Previously San Diego Superior Court Case No. 37-2018-00058754-CU-WT-NC before the Honorable Ronald F. Frazier]*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PALOMAR COMMUNITY COLLEGE DISTRICT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16**<br><br>DATE: June 20, 2019<br>TIME:  2:00 p.m.<br><br>Complaint Filed: November 20, 2018<br>Removed: December 26, 2018<br>First Amended Complaint Filed: January 18, 2019<br>Trial Date: Not Set |

MEMO OF P'S AND A'S ISO DEF'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16
CASE NO.: 3:18-CV-02877-AJB-MSB

FPDOCS 35091493.2

# **TABLE OF CONTENTS**

I.  INTRODUCTION ......................................................................................1

II.  FACTUAL BACKGROUND .....................................................................1

    A.  Plaintiff was Terminated Due to Longstanding Issues of Poor Work Performance, Neglect of Responsibility, and Misconduct....................1

    B.  The Board's Personnel Decisions Are Governed by The Education Code and The District's Administrative Association Handbook ..................4

    C.  The Board Owes Special Duties To The Public When Making Personnel Decisions And Is Regulated By The Ralph M. Brown Act ....................5

    D.  Plaintiff Was Terminated in Accordance With The Brown Act, The Education Code, And The District's Disciplinary and Grievance Procedures ...................................................................................6

III.  THE DISTRICT'S ACTIONS PERTAINING TO THE TERMINATION ARE PROTECTED ACTIVITY UNDER § 425.16....................................................7

    A.  Section 425.16 Applies to Acts Taken Pursuant to A Public Entity's Legally Mandated Pre-Termination Procedures ....................................8

    B.  Plaintiff's Entire Lawsuit Arises From Defendant's Protected Activity in Complying with the Ralph M. Brown Act........................................10

    C.  *Nam* and *Park* Do Not Compel a Different Result ...........................11

        1.  Unlike the Decision-Making Committees in Nam and Park, The District is Subject to the Brown Act ........................................11

        2.  The District's Acts Were Taken In Connection With The Public Interest..................................................................................12

        3.  A Finding that the District's Acts Were Protected Activity Will Not Immunize Public Entity Employment Decisions...........................13

IV.  PLAINTIFF CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON ANY CAUSE OF ACTION....................................................................14

    A.  All Of Plaintiff's Retaliation Causes of Action Will Fail Because The Governing Board Had Legitimate, Non-Retaliatory Reasons For Voting To End Plaintiff's Employment ..........................................................14

    B.  Plaintiff's First and Second Causes of Action Will Fail Because Plaintiff Did Not Engage in Protected Activity ................................................15

    C.  Plaintiff's Third, Fourth, Fifth, and Sixth Causes of Action Will Fail Because They Are Barred By California' Public Entity Immunity Statutes ...................................................................................18

    D.  Plaintiff's Fourth, Fifth, and Sixth Causes of Action Fail as a Matter of Law Because Plaintiff Did Not Suffer a FEHA-Recognized Disability............21

    E.  Plaintiff's Seventh Cause of Action Will Fail Because Plaintiff Fails to State a Claim for Which She Is Entitled to Relief ...............................22

        1.  Plaintiff is Not Entitled to Relief Because She Failed to Exhaust the District's Internal Grievance Procedures ........................................22

        2.  Plaintiff is Not Entitled to Relief Because She Did Not Engage in

FPDOCS 35091493.2

Protected Activity Under Her Whistleblower Retaliation Cause of Action ...................................................................................23

V.    DEFENDANT IS ENTITLED TO ALL COSTS AND ATTORNEY'S FEES INCURRED RELATED TO ITSANTI-SLAPP MOTION ...........................................24

VI.   REQUESTED RELIEF ...........................................................................25

FPDOCS 35091493.2

1

## **TABLE OF AUTHORITIES**

2

3   **Federal Cases**

4   *Burch v. Regents of University of California*
5     (E.D. Cal. 2006) 433 F.Supp.2d 1110 ..................................................................... 14, 15, 21

6   *EEOC v. HBE Corp.*,
7     (8th Cir. 1998) 135 F.3d 543 .............................................................................................. 16

8   *Estrada v. Gate Gourmet, Inc.*
      (C.D. Cal. Dec. 6, 2017) No. CV171100MWFFFMX, 2017 WL 7803787 ........................ 21

9   *Garcetti v. Ceballos*
10     (2006) 547 U.S. 410 ........................................................................................................... 16

11  *Lund v. Leprino Foods Co.*
      (E.D. Cal., June 20, 2007, No. CIVS060431WBSKJM) 2007 WL 1775474 ...................... 16
12
    *McKenzie v. Renberg's, Inc.*,
13     (10th Cir. 1996) 94 F.3d 1478 ..................................................................................... 16, 17

14  *Muniz v. United Parcel Service, Inc.*
15     (N.D. Cal. 2010) 731 F.Supp.2d 961 .................................................................................. 16

16  *Rosenfield v. GlobalTranz Enterprises, Inc.*
      (9th Cir. 2015) 811 F.3d 282 .............................................................................................. 17
17
    *Skare v. Extendicare Health Servs., Inc.*,
18     (8th Cir. 2008) 515 F.3d 836 .............................................................................................. 16

19  Stegall v. Citadel Broadcasting Co.
20     (9th Cir. 2003) 350 F.3d ..................................................................................................... 14

21  *Striplin v. Shamrock Foods Co., Inc.*
      (9th Cir. 2018) 731 F. App'x 618 ....................................................................................... 21
22
    **State Cases**
23
    *Baral v. Schnitt*
24     (2016) 1 Cal.5th 376, 384 ..................................................................................................... 7

25  *Braun v. Chronicle Publishing Co.*
26     (1997) 52 Cal.App.4th 1036 ................................................................................................. 7

27  *Briggs v. Eden Council for Hope & Opportunity*
      (1999) 19 Cal.4th 1106 ......................................................................................................... 8
28

*Caldwell v. Montoya*
(1995) 10 Cal.4th 972 ........................................................................................ 19, 20

*Campbell v. Regents of University of California*
(2005) 35 Cal.4th 311 ............................................................................................... 22

*City of Huntington Beach v. Board of Administration*
(1992) 4 Cal.4th 462 ................................................................................................. 20

*Edgerly v. City of Oakland*
(2012) 211 Cal.App.4th 1191 ........................................................... 14, 16, 17, 23

*Hansen v. Department of Corrections & Rehabilitation*
(2008) 171 Cal.App.4th 1537 ........................................................................ 8, 9, 10

*Higgins-Williams v. Sutter Medical Foundation*
(2015) 237 Cal.App.4th 78 ...................................................................................... 21

*Hunter v. CBS Broadcasting, Inc.*
(2012) 221 Cal.App.4th 1510 ................................................................................. 10

*Johnson v. City of Loma Linda*
(2000) 24 Cal.4th 61 ................................................................................................. 22

*Kayfetz v. State*
(1984) 156 Cal.App.3d 491 ..................................................................................... 19

*Kemmerer v. County of Fresno*
(1988) 200 Cal.App.3d 1426 ............................................................................. 19, 20

*Mamou v. Trendwest Resorts, Inc.*
(2008) 165 Cal.App.4th 686 .................................................................................... 14

*Mann v. Quality Old Time Serv., Inc.*
(2006) 139 Cal.App.4th 328 .................................................................................... 24

*Miller v. City of Los Angeles*
(2009) 169 Cal.App.4th 1373 ............................................................................... 8, 9

*Nam v. Regents of University of California*
(2016) 1 Cal.App.5th 1176 ........................................................................... 11, 12, 13

*Park v. Board of Trustees of California State University*
(2017) 2 Cal.5th 1057 ........................................................................................ 11, 12

*Patten v. Grant Joint Union High School Dist.*
(2005) 134 Cal. App.4th 1378 ........................................................................... 16, 23

*Ramona Unified School Dist. v. Tsiknas*
(2005) 135 Cal.App.4th 510 ...................................................................................... 8

*Santa Barbara County Coalition Against Auto. Subsidies v. Santa Barbara*
    *County Assn. of Governments*
    (2008) 167 Cal.App.4th 1229 ............................................................................... 7

*Scott v. Metabolife Intern., Inc.*
    (2004) 115 Cal.App.4th 404 ................................................................................. 8

*Terris v. County of Santa Barbara*
    (2018) 20 Cal.App.5th 551, 558, review denied (May 23, 2018)........................ 22

*Vergos v. McNeal*
    (2007) 146 Cal.App.4th 1387 ........................................................................... 8, 9

*Westlake Community Hosp. v. Superior Court*
    (1976) 17 Cal.3d 465 .......................................................................................... 22

**Federal Statutes**

20 U.S.C. § 1681 ...................................................................................................... 18

29 U.S.C. § 201 ........................................................................................................ 17

42 U.S.C. 2000e ....................................................................................................... 16

42 U.S.C. § 2000d..................................................................................................... 18

**State Statutes**

California Code of Civil Procedure § 425.16 ............................................... 1, 7, 8, 9

California Code of Civil Procedure § 425.16(c)(1) ........................................... 24, 25

California Code of Civil Procedure § 425.16, subd. (b)(1) ........................................ 7

California Code of Civil Procedure § 425.16, subd. (e) ............................................. 8

California Education Code §§ 70902 and 87732 ........................................... 1, 3, 4, 6

California Government Code § 815.2 ............................................................. 18, 19, 20

California Government Code § 820.2 ............................................................. 18, 19, 20

California Government Code §§ 820.2 and 815.2 ............................................... 20, 21

California Government Code §§ 820.2 and 821.6 ...................................................... 19

California Government Code § 54950 .................................................................*passim*

California Government Code § 54953 ......................................................................... 6

California Government Code § 54957.1 ...................................................................... 6

California Labor Code § 1102.5 .........................................................................................*passim*

**Constitutional Provisions**

First Amendment ................................................................................................. 7

FPDOCS 35091493.2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff was formerly the Dean, Instructional, of Mathematics and the Natural and Health Sciences at Palomar Community College District. Throughout her employment with the District, Plaintiff had difficulty meeting deadlines, working collaboratively with her colleagues, and following directives. Despite numerous meetings with her supervisor to address her shortcomings, Plaintiff continuously failed to improve her performance. Following an investigation by an outside attorney, which confirmed that Plaintiff engaged in misconduct, the District initiated proceedings to discharge Plaintiff because of her violations of District policy and the Education Code and for her ongoing unsatisfactory performance. Prior to the imposition of the proposed discharge, Plaintiff was given the opportunity to contest the action and offer evidence to contradict the District's findings. Plaintiff willfully failed to avail herself of these opportunities.

The District brings this special motion to strike pursuant to California Code of Civil Procedure section 425.16. Plaintiff's First Amended Complaint ("FAC") qualifies as a SLAPP suit because the lawsuit attacks actions taken in anticipation of an official proceeding authorized by law under the Ralph M. Brown Act. The alleged wrongful conduct Plaintiff complains of includes: the District's investigation into her misconduct; placing her on leave pending the investigation; the Governing Board's unanimous vote not to renew her employment contract; and the Governing Board's unanimous vote to terminate her employment. All of Plaintiff's claims should be stricken and the action dismissed because all of the alleged wrongful conduct constitutes protected activity and Plaintiff cannot meet her burden to show a probability of success on the merits of any of her claims.

## II.    FACTUAL BACKGROUND

### A.    **Plaintiff was Terminated Due to Longstanding Issues of Poor Work Performance, Neglect of Responsibility, and Misconduct**

---

FPDOCS 35091493.2

Plaintiff had a history of poor work performance and had been repeatedly counseled about her failure to meet deadlines, work collaboratively with her colleagues, and follow directives. (Declaration of Lisa Norman ("Norman Decl."), par. 4, Ex. A, pp. 1-5, 26-49; Declaration of Jack Kahn ("Kahn Decl."), par. 4, Ex. A, pp.105, 26-49). Prior to recommending her termination, Plaintiff's supervisor, Mr. Jack Kahn, met with Plaintiff numerous times regarding her poor work performance. (*Id.*) The deficiencies in Plaintiff's job performance included:

- In October 2017, Plaintiff missed a deadline for submitting the paperwork necessary to schedule interviews for the Assistant Professor, Computer Science Position, which jeopardized the hiring process and nearly resulted in the loss of qualified candidates;

- Despite being reminded multiple times, Plaintiff failed to timely review programming and planning reports for the disciplines in her division, resulting in extra work for her colleagues;

- In December 2017, despite receiving several email reminders and reports from other divisions as examples, Plaintiff missed the deadline for submitting her Annual Division Update Report;

- Plaintiff was several weeks late in providing Spring 2018 class schedules to Mr. Kahn, resulting in Mr. Kahn having to take over Plaintiff's normal duties so that she could finish the scheduling;

- In overseeing the CCC Grant, Plaintiff repeatedly failed to respond to Professor Mark Bealo's Requests for information regarding remaining funds, which he wanted to use to purchase equipment and technology. Mr. Bealo complained that despite several emails to Plaintiff's administrative assistant, he had received only one response which stated that she was "not sure what is going to be done with the remaining funds." Mr. Bealo was rightfully frustrated, as the funds would need to be returned if they were not used within the then upcoming deadline of four days;

FPDOCS 35091493.2

- Plaintiff failed to adequately oversee a Title V/HIS/STEM grant, which placed the District at risk of losing the funding. This affected the STEM center and the Math Center, which rely heavily on the funding. This also affected the District's relationship with the California State University at San Marcos ("CSUSM"), which shares the Title V grant with the District;

  o Specifically, *despite being more than one year into the grant*, Plaintiff had not assigned *any* of the release time funded by the grant and several full time grant-funded positions remained unfilled;

- STEM Center Supervisor Mireya Gutierrez-Aguero complained that Plaintiff's conduct during the STEM conference in 2017 was so demeaning and disrespectful that she could not work with Plaintiff again to plan the Conference in 2018, even threatening to quit her position;

- In April 2016, Plaintiff received student complaints that Professor Takashi Nakajima allowed students to shoot an Airsoft pistol in his classroom as an experiment, without taking property safety precautions. However, Plaintiff never took any action to initiate an administrative investigation into the incident and failed to notify HR until November 2017, *more than eighteen months later;*

- Despite reports that a faculty member under her supervision was violating the Education Code and various directives - and requests from Human Resources Services that Plaintiff follow up on the complaints – Plaintiff failed to follow up or take any action to try to confirm the conduct in the complaints;

- Plaintiff forwarded confidential information relating to Professor Nakajima and Professor George Gerwig to the Chair of the Engineering Department, Dr. Finkenthal. In turn, Dr. Finkenthal forwarded that information to his wife, a member of the Governing Board at CSUSM and members of the Palomar City College Governing Board, in order to try to facilitate Professors Nakajima and Gerwig's termination.

(*Id.*)

FPDOCS 35091493.2

1   Plaintiff's unsatisfactory performance compromised the integrity of the
2   District as an institution. (Norman Decl., par. 4, Ex. A, p. 5) Despite being
3   counseled numerous times, Plaintiff continued to fail to meet deadlines, manage
4   her staff and workload, and work in a collaborate manner which warranted her
5   termination. (*Id.*)

6   **B.    The Board's Personnel Decisions Are Governed by The Education**
7   **Code and The District's Administrative Association Handbook**

8   As a governmental entity, every action the District takes, through its
9   Governing Board, is regulated by California law and subject to the will of the
10  public. The Palomar Community College District is governed by a five-member
11  Governing Board, elected by the public, which serves 2,500 square miles of
12  northern San Diego County. (Norman Decl., par. 2; Kahn Decl., par. 2). Education
13  Code Section 70902 mandates that "every community college district shall be
14  under the control of a board of trustees, which is referred to as the 'governing
15  board.'" In carrying out its powers and duties, the governing board of each
16  community college district retains full authority to adopt rules and regulations that
17  are necessary and proper to executing these prescribed functions." (*Id.*)

18  Further, the California Education Code governs the District's ability to
19  terminate an employee. (*See* Cal. Educ. Code. section 87732.) Section 87732
20  provides, "no regular employee or academic employee shall be dismissed except
21  for… immoral or unprofessional conduct; dishonesty; unsatisfactory performance;
22  or evident unfitness for service." (*Id.*)

23  The District's discipline of employees is also governed by the District's
24  Administrative Association Handbook ("the Handbook"). (Norman Decl., par. 4,
25  Ex. A, p.10; Kahn Decl., par. 4, Ex. A, p.10). Pursuant to section 15 of the
26  Handbook, administrative employees facing discipline have the right to an
27  evidentiary hearing, upon written request. (Norman Decl., par. 4, Ex. A, p. 13;
28  Norman Decl., par.5; Kahn Decl., par. 4-5, Ex. A, p.13;). The Handbook further

4

provides that administrative employees may only be terminated for "cause." (*Id*.) Cause is defined as: "those actions, omissions or behaviors which are detrimental to the operations of the District and/or its major instructional student and administrative divisions or which impair the District's mission, purpose and objectives." (*Id*.) Finally, the Handbook lays out the specific steps the District must take before disciplinary action is imposed on any employee. (Norman Decl., par. 4, Ex. A, pp. 13-15; Kahn Decl., par.4, Ex. A, pp.13-15). These steps include providing written notice to the employee before any proposed discipline is imposed, providing the opportunity to respond both orally and in writing to the proposed action, and providing the opportunity to have an evidentiary hearing to dispute the proposed action. (*Id*.) If an employee fails to timely avail themselves of these rights, the District may move forward with its proposed disciplinary action. (*Id*.)

## C.   The Board Owes Special Duties To The Public When Making Personnel Decisions And Is Regulated By The Ralph M. Brown Act

The Ralph M. Brown Act (the "Brown Act") mandates that all official business conducted by public entities in California be openly accessible to the public. (Gov. Code, § 54950.) In enacting the Brown Act, the California legislature declared "the …public agencies in this State exist to aid in the conduct of the people's business [and] [i]t is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. (*Id*.) The language of the Brown Act demonstrates a manifest intent that business conducted by public entities be subject to the public's approval: "[t]he people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know… [t]he people insist on remaining informed so that they may retain control over the instruments they have created." (*Id*.) Specifically, the Brown Act mandates that "[a]ll meetings of the legislative body

of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency…" (Gov. Code, § 54953.) Further, "[any] [a]ction taken to appoint, employ, dismiss, accept the resignation of, or otherwise affect the employment status of a public employee in closed session … shall be reported at the public meeting during which the closed session is held. (Gov. Code, § 54957.1.)

**D.** **Plaintiff Was Terminated in Accordance With The Brown Act, The Education Code, And The District's Disciplinary and Grievance Procedures**

As a result of Plaintiff's prolonged unsatisfactory work performance, Plaintiff's supervisor Mr. Jack Kahn recommended that she be discharged from the position of a dean. (Norman Decl., par. 4, Ex. A, p. 1; Kahn Decl., par.4, Ex. A, p.1). Plaintiff received a "Notice of Proposed Discharge" which explained the reasons for the discharge recommendation. (*Id.*) Prior to her termination, Plaintiff had multiple opportunities to contest the proposed disciplinary action. (Norman Decl., par. 4, Ex. A, pp. 6-7, 264, par. 5-9, Ex. B-E; Kahn Decl., par. 4, Ex. A, pp. 6-7, 264, par. 5-9, Ex. B-E).

The "Notice of Proposed Discharge" informed Plaintiff of her right, which is unique to California employees, to have a formal pre-disciplinary *Skelly* hearing prior to the imposition of the disciplinary action. (Norman Decl., par. 4, Ex. A, pp. 6-7; Kahn Decl., par. 4, Ex. A, pp. 6-7). The *Skelly* hearing was scheduled for May 16, 2018 at 10:30 a.m. (*Id.*) Plaintiff was informed that she needed to confirm her attendance at the *Skelly* hearing within ten days of receiving the "Notice of Proposed Discharge." (*Id.*) Plaintiff did not confirm her attendance or attend the *Skelly* hearing. (Norman Decl., par. 9, Ex. E; Kahn Decl., par. 9, Ex. E).

In addition to her right to a *Skelly* hearing, Plaintiff was notified of her right, as a public employee, to an evidentiary hearing before the Governing Board or a hearing officer designated by the Board. (Norman Decl., par. 4, Ex. A, pp. 6-7, par.

6

5; Kahn Decl., par. 4, Ex. A, pp. 6-7, par. 5). Plaintiff was provided a form attached to the "Notice of Proposed Discharge" and instructed to fill it out to request such a hearing. (*Id.*) She was notified in bold and all capital letters that:

**"FAILURE TO FILE A TIMELY REQUEST FOR AN EVIDENTIARY HEARING SHALL MEAN THAT YOU HAVE WAIVED YOUR RIGHT TO AN EVIDENTIARY HEARING …"**

(*Id.*)

Plaintiff did not request an evidentiary hearing or otherwise respond to the "Notice of Proposed Discharge." (Norman Decl., par. 9, Ex. E; Kahn Decl., par. 9, Ex. E). After giving Plaintiff notice of the board meeting date, the Governing Board took final action and unanimously voted to terminate Plaintiff's employment. (Norman Decl., par. 5-9, Ex. B-E; Kahn Decl., par 5-9, Ex. B-E).

## III. THE DISTRICT'S ACTIONS PERTAINING TO THE TERMINATION ARE PROTECTED ACTIVITY UNDER § 425.16

California's anti-SLAPP statute "provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) Government agencies and their representatives have First Amendment rights and are "persons" entitled to protection under the statute. (*Santa Barbara County Coalition Against Auto. Subsidies v. Santa Barbara County Assn. of Governments* (2008) 167 Cal.App.4th 1229, 1237.) There is a two-step process for determining whether an action is a SLAPP: (1) the defendant must make a prima facie showing that the challenged cause of action is one arising from protected activity under the statute and (2) If the defendant makes such a showing, the plaintiff must demonstrate a probability of prevailing on the claims. (See § 425.16, subd. (b)(1); *Braun v. Chronicle Publishing Co.,* (1997) 52 Cal.App.4th 1036, 1042-43.)

In determining whether a cause of action is one arising from protected activity, courts "examine the principal thrust or gravamen" of a plaintiff's cause of

7

MEMO OF P'S AND A'S ISO DEF'S MOTION TO DISMISS PLTF'S COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16
CASE NO.: 3:18-CV-02877-AJB-MSB

FPDOCS 35091493.2

action to determine whether the anti-SLAPP statute applies. (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519–520.) "[T]he critical point is whether the plaintiff's cause of action itself was *based* on an act in furtherance of the defendant's right of petition or free speech." (*Scott v. Metabolife Intern., Inc.* (2004) 115 Cal.App.4th 404, 414) (emphasis added.) However, "if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion." (*Id.*) A claim based on protected activity is incidental or collateral if it "merely provide[s] context, without supporting a claim for recovery." (*Id.*)

## A. Section 425.16 Applies to Acts Taken Pursuant to A Public Entity's Legally Mandated Pre-Termination Procedures

As used in the statutory scheme of §425.16, an "act in furtherance of a person's right of petition or free speech" includes: any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or ***any other official proceeding authorized by law*** §425.16, subd. (e). While §425.16 protects speech or conduct made in connection with a public issue or concern, it does not require the defendant to show a public issue or issue of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116-1117.)

As required, courts have interpreted §425.16 broadly and have found that in following mandatory pre-termination policies, public entities and their employees engage in protected activity. (See *Vergos v. McNeal* ("*Vergos*") (2007) 146 Cal.App.4th 1387; *Miller v. City of Los Angeles* ("*Miller*") (2009) 169 Cal.App.4th 1373; *Hansen v. Department of Corrections & Rehabilitation* ("*Hansen*") (2008) 171 Cal.App.4th 1537.)

In *Vergos*, the court of appeal observed that the University of California Regents' protocol for handling employee grievances was the equivalent of a state

8

statute. (*Vergos, supra,* Cal.App.4th at 1396, fn. 8.) As such, §425.16 applied to a state university employee who filed a civil rights claim against a manager, who denied the employee's administrative grievance alleging sexual harassment. (*Id*.) The court disagreed with the trial court's finding that the manager's denial of grievance was not protected because it was not speech which occurred during a proceeding or in the exercise of the right to petition. (*Vergos, supra*, 146 Cal.App.4th at 1397.) In reversing, the court explained that the manager's decision to deny the employee's grievance was protected communicative conduct because "the hearing, processing, and deciding of the grievances are meaningless without a communication of the adverse results." (*Id.*)

In *Miller, supra,* 169 Cal.App.4th at 1376, the city investigated Miller, a Water and Power employee, and terminated him for misconduct. The court determined that a civil service commissions' finding that a city properly terminated Miller for a conflict of interest and theft was protected activity. (*Id* at 1383.) In so finding, the court explained that the thrust of Miller's claims was "the City's investigation into his conduct in connection with his public employment and its determination and report that he engaged in misconduct on the job," which was protected activity under § 425.16. (*Id*.)

Similarly, in *Hansen, supra,* 171 Cal.App.4th at 1541, a retired vocational instructor brought a whistleblower retaliation claim after the Department of Corrections and Rehabilitation launched an investigation into his alleged misconduct. The investigation was an official proceeding authorized by law because it was launched in anticipation of an official proceeding, and statements made in connection with the investigation were therefore protected under the anti-SLAPP statute. (*Id* at 1544.)

In sum, applicable case law makes clear that in following mandatory pre-termination procedures, a public entity and its employees engage in protected activity under §425.16.

**B.**   **Plaintiff's Entire Lawsuit Arises From Defendant's Protected Activity in Complying with the Ralph M. Brown Act**

Each of the alleged wrongful acts Plaintiff complains of occurred as a part of the District's pre-termination policies. The acts include: the District's investigation into her misconduct; placing her on leave pending the investigation; the Governing Board's unanimous vote not to renew her employment contract; and the Governing Board's unanimous vote to terminate her employment. Taken together, these acts constitute an official proceeding authorized by law because they were launched in anticipation of an official proceeding. (See *Hansen, supra,* 171 Cal.App.4th at 1544.) Therefore, all of the actions the District took in connection with the investigation were protected under the anti-SLAPP statute. (*Id.*)

Further, these acts were "connected to the public interest" under the Brown Act. Pursuant to the Brown Act, the Governing Board "exists to aid in the conduct of the people's business." It is well settled that conduct undertaken in connection with a public interest is protected. (*Hunter v. CBS Broadcasting, Inc.* (2012) 221 Cal.App.4th 1510, 1520.) Whether College Deans are competent and should be responsible for managing taxpayer funded grants, while receiving a taxpayer-funded salary, is directly connected with the public interest. There was a legitimate public interest in placing Plaintiff on administrative leave and under investigation to determine the extent of her performance issues. Among other deficiencies, these performance issues included placing the District in jeopardy of losing grants which funded college programs and professor salaries. Moreover, there was a legitimate public interest in investigating Plaintiff's suspicious communications with Dr. Finkenthal, wherein confidential information was inappropriately leaked to persons outside of the District. Therefore, the Governing Board had a duty, pursuant to the Brown Act, to perform the acts which form the basis of Plaintiff's complaint.

Accordingly, the primary "adverse actions" described in Plaintiff's complaint are, according to case law, all protected activity.

FPDOCS 35091493.2

### C.   *Nam* and *Park* Do Not Compel a Different Result

In opposing this motion, Plaintiff is expected to rely heavily on the recent decisions in *Park v. Board of Trustees of California State University* ("*Park*") (2017) 2 Cal.5th 1057 and *Nam v. Regents of University of California* ("*Nam*") (2016) 1 Cal.App.5th 1176.

In *Park*, a professor who was denied tenure pursuant to the university's retention, tenure, and promotion ("RTP") proceedings sued the university alleging national origin discrimination. (*Park, supra,* 2 Cal.5th at p. 217.) The court held that a discrimination claim "may be struck only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id*.)

In *Nam*, a former anesthesiology resident filed a complaint against a university for retaliation, discrimination, sexual harassment, and wrongful termination following dismissal from the residency program by the university's competency committee. (*Nam, supra,* 2 Cal.5th at 1184.) The court decided that the competency committee's decision to dismiss Nam was not protected activity because Plaintiff's allegations made clear that true retaliation, not the committee' decision, was the basis of her claim. (*Id.*) The court noted that although **personnel investigations are protected activities**, "[t]he mere fact that the discrimination or retaliation triggered protected activity does not mean that it arose from the protected activity." (*Id* at pp. 1190-1192.)

For the reasons set forth below, neither of these decisions compel a different result than the District advocates.

> 1.   *Unlike the Decision-Making Committees in Nam and Park, The District is Subject to the Brown Act*

In the instant case, the Governing Board's personnel decisions were subject to the Brown Act, whereas the competency committee which dismissed *Nam* and the tenure committee which denied *Park's* tenure were not subject to any statutory

1    requirements.

2         Unlike the committees in *Nam* and *Park*, the District's publicly elected

3    members of the Governing Board performed their respective duties on behalf of the

4    public and pursuant to the Brown Act when making their disciplinary decisions

5    relating to Plaintiff. Every disciplinary decision the Governing Board made was

6    open to public scrutiny and subject to the public's opportunity to express

7    disapproval. Indeed, the Governing board members serve at the pleasure of the

8    public. The disciplinary actions taken against Plaintiff were not just human

9    resources decisions. Rather, they began as recommendations made by Plaintiff's

10   supervisor. Mr. Kahn's recommendations had to go all the way up to the

11   disinterested Governing Board and be taken under a publicly disclosed vote in order

12   to comply with the Brown Act – making *Nam* and *Park* distinguishable. Thus, the

13   Governing Board's unanimous vote to terminate Plaintiff's employment was

14   protected activity.

15        2.    *The District's Acts Were Taken In Connection With The Public*

16              *Interest*

17        In both *Nam* and *Park*, the courts noted that the defendants' alleged protected

18   activity was merely incidental to the plaintiffs' complaints and did not form the

19   gravamen of the complaint. (See *Park, supra,* 2 Cal.5th at 217; *Nam, supra,* 2

20   Cal.5th at 1190.) Specifically, in *Nam,* the plaintiff's complaint and declaration

21   included allegations that several independent investigations had been conducted

22   related to her performance and that her name was cleared in every instance. (*Nam,*

23   *supra,* 2 Cal.5th at 1193.) In fact, an independent investigator for the university

24   noted in one of his reports that the university appeared to be singling Nam out. (*Id*.)

25   Thus, the court determined that the university's protected activity was merely

26   incidental to Nam's retaliation claims. (*Id.*)

27        No such evidence exists here. Unlike *Nam*, Ms. Kailikole does not allege

28   that any retaliatory or discriminatory acts occurred before she was placed under

FPDOCS 35091493.2

investigation regarding her own misconduct. In fact, if Plaintiff eliminated her allegations regarding the personnel decisions the District took against her *after* discovering her misconduct, she would have no facts supporting any cause of action. Plaintiff admits that throughout her employment with the District she reported Professors Nakajima and Gerwig for various violations. However, Plaintiff does not allege one retaliatory or disciplinary act that arose from her complaints until *after* she was placed under investigation for her own misconduct. As the Court noted in *Nam,* "had defendants received the complaints about [plaintiff's] performance and proceeded to discipline her in a manner commensurate with her shortcomings, in the absence of evidence of retaliation, its acts would have been characterized as protected." (*Nam, supra,* 2 Cal.5th at 1192.) This is exactly what the District did here.

Plaintiff's continuous unsatisfactory work performance, coupled with her final act of professional misconduct, triggered the District's right, indeed its duty on behalf of the public, to investigate Plaintiff and discipline her accordingly. As a result of the District performing its public duty, Plaintiff filed the instant complaint. Thus, Defendant's protected activity is not "merely incidental" to Plaintiff's causes of action. That is, it does not "merely provide context or evidence of animus." Rather, all of plaintiff's causes of action arise directly out of the District's protected activity.

3.     *A Finding that the District's Acts Were Protected Activity Will Not Immunize Public Entity Employment Decisions*

The application of the anti-SLAPP statute to public entity personnel decisions does not immunize any cause of action from judicial scrutiny. Rather, it recognizes that discretionary employment decisions which are arrived at pursuant to an official proceeding authorized by law, and made in connection with the public interest, are protected activity. This satisfies the District's step one burden under the anti-SLAPP analysis. The burden then shifts to Ms. Kailikole on step two of

13

the analysis, to demonstrate that there is a probability that she will prevail on her claims.

## IV.  PLAINTIFF CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON ANY CAUSE OF ACTION

### A.  All Of Plaintiff's Retaliation Causes of Action Will Fail Because The Governing Board Had Legitimate, Non-Retaliatory Reasons For Voting To End Plaintiff's Employment

As a threshold matter, all of Plaintiff's retaliation causes of action will fail because the District had legitimate, non-retaliatory reasons for voting to terminate Plaintiff's employment. Plaintiff's first and second causes of action are federal retaliation claims, her third cause of action is for retaliation under the FEHA, and her seventh cause of action is for whistleblower retaliation under Cal. Lab. Code §1102.5. (See FAC ¶¶ 87-110, 131-139.) Each of these retaliation causes of action require Plaintiff to show that the alleged wrongful conduct she complains of was casually connected to her protected activity. (See *Burch v. Regents of University of California* ("*Burch*") (E.D. Cal. 2006) 433 F.Supp.2d 1110, 1125-1126 (federal retaliation claims); *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 713 (FEHA retaliation claims); *Edgerly v. City of Oakland* ("*Edgerly*") (2012) 211 Cal.App.4th 1191, 1203, as modified (Dec. 13, 2012) (Cal. Lab. Code §1102.5 retaliation claims)). Thereafter, the burden then shifts to the employer to offer a legitimate, non-retaliatory reason for the adverse employment action.  Once the employer has done so the plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with retaliatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally retaliated against the employee. *Stegall v. Citadel Broadcasting Co.* (9th Cir. 2003) 350 F.3d at 1065.

Here, the Governing Board was presented with compelling information which warranted its unanimous vote to terminate Plaintiff's employment. (Norman

14

Decl., par. 4, Ex. A, p. 1; Kahn Decl., par 4, Ex. A, p.1; Declaration of Jeffrey B. Love ("Love Decl."), par. 3-4). Indeed, Mr. Kahn's recommendation to the Board included numerous instances of Ms. Kailikole missing deadlines, failing to monitor the faculty under her supervision, failing to properly administer grant funds, and engaging in misconduct. (*Id.*) Further, Plaintiff does not allege that any retaliatory conduct occurred before she was placed under investigation regarding her own misconduct. Specifically, Plaintiff reported Professors Nakajima and Gerwig in May of 2017 and she was not placed under investigation until December 14, 2017. (FAC ¶¶ 6 and 13.) Plaintiff does not allege any retaliatory conduct during the 7-month period between her last report regarding Professors Nakajima and Gerwig and the date she was placed under investigation. The fact is, Plaintiff was placed under investigation and ultimately terminated due to her continued unsatisfactory work performance, dishonesty, misconduct, unprofessional conduct, and insubordination. Such conduct would, under the terms of her employment contract and District policy constitute a breach of contract and cause for discharge. Plaintiff cannot demonstrate that these proffered reasons for her termination were pretext. Accordingly, Plaintiff's retaliation causes of action fail as a matter of law.

**B.      Plaintiff's First and Second Causes of Action Will Fail Because Plaintiff Did Not Engage in Protected Activity**

To plead a prima facie case of retaliation, Ms. Kailikole must allege that (1) she engaged in a protected activity; (2) the District took an adverse action against her; and (3) the adverse action was causally linked to the protected activity." (*Burch, supra,* 433 F.Supp.2d 1110, 1125-1126.)

Plaintiff's retaliation claims require that she show that she engaged in some protected activity. Plaintiff cannot make such a showing. As Dean, Plaintiff was charged with addressing issues concerning her staff, including issues of student safety and welfare. (; Norman Decl., par. 4, Ex. A, pp.1-5 and 124-128 [pages 41-45 of Ex. 10, Interview Transcript]). Evidence showing that an employee was

15

merely doing their job is insufficient to support a retaliation cause of action. (See *Patten v. Grant Joint Union High School Dist.* ("*Patten*") (2005) 134 Cal. App.4th 1378, 1384-1385; *Garcetti v. Ceballos*, ("*Garcetti*") (2006) 547 U.S. 410; *Edgerly, supra,* 211 Cal.App.4th at 1203.)

In *Garcetti,* the United States Supreme Court, held that complaints made within the scope of an employee's job cannot constitute protected conduct to support a retaliation claim. *(Garcetti, supra,* 547 U.S. at 421-24.) While neither California District Courts nor the Ninth Circuit has had occasion to expand on the Supreme Court's ruling in *Garcetti* in the federal civil rights context, our sister circuits have expressed discernment. Some courts in our sister circuits refer to the rule in *Garcetii* as the "manager rule." Under the manager rule, "in order to state a retaliation claim, complaints made within the scope of an employee's job cannot constitute protected conduct." (See *Skare v. Extendicare Health Servs., Inc.,* 515 F.3d 836, 841 (8th Cir. 2008) (applying manager rule in suit brought under state whistleblower statute by a nurse whose duties included ensuring legal compliance and reporting unlawful behavior); *EEOC v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998) (applying manager rule in Title VII retaliation suit brought by an employment manager and personnel director whose duties included implementing company policy); *McKenzie v. Renberg's*, *Inc.*, 94 F.3d 1478, 1486–87 ("*Mckenzie*") (10th Cir. 1996) ("a requirement of 'stepping outside' a normal role is satisfied by a showing that the employee took some action against a discriminatory policy."))

Moreover, California district courts have found *Mckenzie* persuasive in defining protected activity under California Labor Code section 1102.5. (See *Muniz v. United Parcel Service, Inc.* (N.D. Cal. 2010) 731 F.Supp.2d 961, 970; *Lund v. Leprino Foods Co.* (E.D. Cal., June 20, 2007, No. CIVS060431WBSKJM) 2007 WL 1775474, at *8 (holding that employee did not engage in protected activity when he reported an illegal spill because such reports were a part of his basic job

16

1  responsibilities.))

2      In the FLSA context, the Ninth Circuit held that "[t]o fall within the scope

3  of the antiretaliation provision, a complaint must be sufficiently clear and detailed

4  for a reasonable employer to understand it, in light of both content and context, as

5  an assertion of rights protected by the statute and a call for their protection."

6  (*Rosenfield v. GlobalTranz Enterprises, Inc.* (9th Cir. 2015) 811 F.3d 282, 286.)

7  "The employee's job title and responsibilities—in particular, whether he or she is

8  a manager—form an important part of that "context." (*Id.*) The court continued,

9      Managers are in a different position vis-a-vis the employer than are

10      other employees because their employer expects them to voice work-

11      related concerns and to suggest changes in policy to their superiors.

12      [Thus], a reasonable employer almost certainly would not understand

13      that report as a 'complaint'. . . Rather, the employer naturally would

14      understand the manager's report as carrying out his or her duties. In

15      short, when determining whether an employee has 'filed any

16      complaint,' the employee's role as a manager often is an important

17      contextual element.

18  (*Id.*)

19      In sum, these cases demonstrate that when a supervisory employee makes a

20  complaint pursuant to a protected right, the employee must make it sufficiently

21  clear that the complaint is being made in their capacity as an employee, and not as

22  a supervisor merely performing their job duties. (*McKenzie*, *supra,* 94 F.3d at

23  1486.)

24      Accordingly, when Plaintiff reported alleged discrimination on behalf of

25  students by Professors Nakajima and Gerwig, she was not engaged in a protected

26  activity. Rather, she was acting in accordance with her job duties. (*Edgerly, supra,*

27  211 Cal.App.4th at 1191 (holding that the Manager Rule applies where the

28  plaintiff's "general job duties" involve reporting violations.)) Plaintiff never had

17

MEMO OF P'S AND A'S ISO DEF'S MOTION TO DISMISS PLTF'S COMPLAINT PURSUANT TO CAL.
CODE CIV. PROC. § 425.16
CASE NO.: 3:18-CV-02877-AJB-MSB

FPDOCS 35091493.2

contact with the original student complainants. (FAC ¶5). Rather, she received the original report from Dr. Daniel Finkenthal and relayed it to Shawna Cohen for handling. (FAC ¶5-6). Moreover, Plaintiff did not pursue the complaint or purposefully act as a witness in the investigation. Plaintiff does not - because she cannot - allege how her reports regarding professors Nakajima and Gerwig's Title VI and Title IX violations were any different than the other reports she made as part of her job, in the past. For instance: the reports she made regarding the airsoft gun, use of the "warning letter," and use of storage rooms as lab rooms. Plaintiff alleges no facts to suggest that she "stepped out of her role" as dean, and reported these violations in a manner that sufficient to put the District on notice that she was engaging in protected activity. As such, Plaintiff will be unable to establish that she engaged in protected activity under Title VI or Title IX and these claims will fail.

### C. Plaintiff's Third, Fourth, Fifth, and Sixth Causes of Action Will Fail Because They Are Barred By California' Public Entity Immunity Statutes

California Government Code §820.2 provides that public employees are immune from liability for harm resulting from their discretionary decisions. Further, section 815.2 provides that a public entity is not liable for harm resulting from a public employee's act or omission, where the employee themselves is immune from liability. In her Opposition to the Districts' Motion to Dismiss ("Oppos."), Plaintiff flatly admitted that the District should be immune from liability in connection with Plaintiff's FEHA claims. (Dkt. 11, Oppos., p. 18:1-3.) Plaintiff acknowledges that immunity under section 815.2 means that *respondeat superior* does not apply against a public entity. (Dkt. 11, Oppos., p. 18:1-3.) The District could not be liable for Plaintiff's termination and the alleged resulting harm other than through the doctrine of *respondeat superior*. Section 820.2 expressly immunizes public entity employees for harm resulting from their discretionary decisions. The Governing Board's unanimous vote to terminate Plaintiff's

employment resulted from each individual Board Member's use of discretion in furtherance of their official duties. The Board Members are therefore immune from liability under section 820.2 - meaning the District is also immune pursuant to the express language of section 815.2.

Moreover, the California Supreme Court specifically held that section 820.2 affords immunity to public employees for FEHA claims. (*Caldwell v. Montoya* (1995) ("*Caldwell*") 10 Cal.4th 972.) In *Caldwell*, the court determined that public employee's enjoy immunity from suit for their discretionary acts, even where it is alleged that those acts violated the FEHA. (*Id.*) See also *Kemmerer v. County of Fresno* ("*Kemmerer*") (1988) 200 Cal.App.3d 1426; *Kayfetz v. State* (1984) 156 Cal.App.3d 491, 496-99.)

In *Caldwell*, the plaintiff sued individual members of an elected school board alleging age and race discrimination in violation of FEHA, as well as for retaliatory discharge in violation of public policy. (*Caldwell, supra,* 10 Cal.4th at 975-976.) The California Supreme Court affirmed the sustaining of a demurrer and held that §820.2 affords "discretionary act immunity to the individual board members against both the common law and FEHA causes of action stated in plaintiff's complaint." (*Id* at 976.) The court reasoned that decisions by school board members to not renew a superintendent's employment contract were discretionary acts under §820.2 because "the collective determination whether to hire or fire a person as the district's superintendent must be considered a basic policy decision." (*Id.* at 983.)

Similarly, in *Kemmerer*, the court determined that Government Code §§ 821.6 and 820.2 immunize supervisors from tort liability for personnel decisions and affirmed a judgment of dismissal following an order sustaining a demurrer without leave to amend. (*Kemmerer, supra*, 200 Cal.App.3d at 1437.) The court of appeal aptly explained its reasoning for finding that supervisors are immune under these circumstances:

If every public entity employee who was found to have committed an

act of misconduct and later disciplined were allowed to bring a tort action against his coworkers and superiors, this would certainly bode ill for the continuing efficiency and morale of the civil service system. Supervisors within the civil service system would not be able to fulfill their function without the overhanging threat of legal action from employees who become subject to discipline.

(*Id* at 1439.) Moreover, the court explained, "though sections 821.6 and 820.2 expressly immunize only a decision making employee, if the employee is immune, so too is the county." (*Id* at 1435.)

Here, *Caldwell* and *Kemmerer* are instructive and immunity extends to the District, even though no individual defendants are named in the instant lawsuit. As in *Caldwell* and *Kemmerer*, the District's alleged misconduct was connected to the initiation of internal grievance administrative proceedings relating to disciplining Plaintiff, for her poor work performance. Because the decision to terminate Plaintiff as based on each individual Board member's discretionary vote, the Board members are immune from liability under sections 820.2. Pursuant to Government Code §815.2, the District must also therefore, be immune. (*City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 468 (the provisions of the California Government Code are in *pari materia* and must be read together and construed in a manner that gives effect to each); *Kemmerer, supra,* 200 Cal.App.3d at 1435 ("if the public employee is immune, so too is the public entity."))

Finally, the legislature's intent in drafting Sections 820.2 and 815.2 is in line with the District's position. The Legislative Committee comment to Section 815 provides: "In general, the statutes imposing liability are cumulative in nature, *i.e.,* …***the immunity provisions will as a general rule prevail over all sections imposing liability.***" (emphasis added.) Here, Plaintiff cannot establish liability against the individual Governing Board members or the District under any provision of the Act. Accordingly, the District is immune from liability for

20

FPDOCS 35091493.2

1    Plaintiff's FEHA claims pursuant to California Government Code Sections 820.2

2    and 815.2 - which is directly in line with the California state legislature's intent.

3    **D.**    **Plaintiff's Fourth, Fifth, and Sixth Causes of Action Fail as a**

4          **Matter of Law Because Plaintiff Did Not Suffer a FEHA-**

5          **Recognized Disability**

6    Workplace stress related to an employee's job performance is not alone a

7    cognizable disability under the FEHA. (*Higgins-Williams v. Sutter Medical*

8    *Foundation* (2015) 237 Cal.App.4th 78, 84-86; *Striplin v. Shamrock Foods Co.,*

9    *Inc.,* (9th Cir. 2018) 731 F. App'x 618, 620; *Estrada v. Gate Gourmet, Inc.*, (C.D.

10   Cal. Dec. 6, 2017) No. CV171100MWFFFMX, 2017 WL 7803787, at *6; *Burch v.*

11   *California Dep't of Motor Vehicles*, (E.D. Cal. Aug. 17, 2017) No. 2:13-CV-

12   01283-TLN-DB, 2017 WL 3537242, at *5.)

13   Plaintiff expressly admits that her alleged anxiety is related to her workload.

14   (FAC ¶11.) This assertion alone defeats Plaintiff's FEHA disability causes of

15   action. *Higgins-Williams, supra,* 237 Cal.App.4th at 84-86. Moreover, Plaintiff's

16   allegation that she "was diagnosed with anxiety which limits her in her major life

17   activities" is nothing more than a conclusory recital of one of the elements of her

18   causes of action. (FAC ¶4.)

19   Plaintiff alleges no instance where she was prevented from performing her

20   job duties due to her anxiety. Plaintiff also fails to allege that she presented the

21   District's human resources department with a medical certification from her

22   physician, verifying she required accommodation. To that end, Plaintiff fails to

23   allege that she ever placed a request for accommodation with the human resources

24   department. Plaintiff's bare assertion that she informed a colleague she was having

25   trouble managing her workload does not rise to the level of requesting a disability

26   accommodation. As such, Plaintiff fails to allege facts sufficient to establish that

27   she suffered a disability recognized under the FEHA and that she requested

28   accommodations for said disability. This failure will also result in the failure of her

1  fourth, fifth, and sixth causes of action.

2  **E.** **Plaintiff's Seventh Cause of Action Will Fail Because Plaintiff**

3  **Fails to State a Claim for Which She Is Entitled to Relief**

4  *1.* *Plaintiff is Not Entitled to Relief Because She Failed to Exhaust*

5  *the District's Internal Grievance Procedures*

6  Failure to exhaust internal administrative remedies is an absolute bar to a

7  Labor Code §1102.5 cause of action. (*Terris v. County of Santa Barbara* ("*Terris*")

8  (2018) 20 Cal.App.5th 551, 558, review denied (May 23, 2018); *Campbell v.*

9  *Regents of University of California* ("*Campbell*") (2005) 35 Cal.4th 311, 321;

10  *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70; *Westlake Community*

11  *Hosp. v. Superior Court* (1976) 17 Cal.3d 465.) The District is aware of no

12  authority which provides that this exhaustion requirement may be circumvented.

13  This is not a case in which Plaintiff's only opportunity to dispute her

14  unfavorable employment decision came after the decision had already been

15  rendered. Rather, Plaintiff had multiple opportunities and over 30 days to contest

16  the proposed disciplinary action by exhausting internal administrative remedies.

17  (Dkt. 9, Motion to Dismiss pp. 7:7 8:9.) Plaintiff failed to do so. The District has

18  established procedures for employees to follow should they dispute disciplinary

19  actions taken against them, such as the discharge of their employment. (Norman

20  Decl., par. 4, Ex. A, pp. 13-15; Kahn Decl., par. 4, Ex. A, pp.13-15). Plaintiff, a

21  public employee, received a notice of proposed discharge from the District and she

22  chose not to respond. (Norman Decl., par. 4, Ex. A, pp. 13-15, par. 9, Ex. E; Kahn

23  Decl., par. 4, Ex. A, pp.13-15, par. 9, Ex. E). The notice provided that there was

24  evidence Plaintiff had engaged in misconduct. (Norman Decl., par. 4, Ex. A, pp. 1-

25  5; Kahn Decl., par. 4, Ex. A, pp. 1-5). The notice also informed Plaintiff that if she

26  did not timely respond to Notice, a termination decision would be made without

27  her input. (Norman Decl., par. 4, Ex. A, p. 6; Kahn Decl., par. 4, Ex. A, p. 6).

28  Despite being confronted with the mounting evidence of her misconduct, notice of

FPDOCS 35091493.2

potential termination, and being given the opportunity to meaningfully respond at a hearing, Plaintiff did nothing. (Norman Decl., par. 9, Ex. E; Kahn Decl., par. 9, Ex. E).

As such, because Plaintiff has admittedly failed to exhaust her internal administrative remedies, her whistleblower retaliation claim is barred. (Dkt. 13, See, Oppos. to Motion to Dismiss p. 24:9-10). Further, because Plaintiff cannot truthfully amend the Complaint to allege exhaustion, Plaintiff has no likelihood of prevailing on this cause of action.

2.     *Plaintiff is Not Entitled to Relief Because She Did Not Engage in Protected Activity Under Her Whistleblower Retaliation Cause of Action*

Like Plaintiff's federal retaliation claims, her whistleblower retaliation claim fails because she cannot establish that she engaged in protected activity under the Manager Rule. (See *Patten, supra,* 134 Cal. App.4th at 1384-1385; *Edgerly, supra,* 211 Cal.App.4th at 1204.)

While Labor Code section 1102.5 protects employees "regardless of whether disclosing information is part of their job duties," this language does not provide blanket protection to employees who are required to disclose violations to their employers. Moreover, this language does not eliminate the requirement that a Plaintiff must clearly demonstrate that any such disclosure is being done in his or her capacity as an employee making a complaint – ***not*** a supervisor merely performing their job. No authority exists which suggest that section 1102.5 provides such a blanket protection. Indeed, a blanket protection would allow employees who report violations, even where required to do so by their jobs, to have whistleblower protection for each routine report. This interpretation strains logic and cannot be what is required to engage in protected activity.

Here, Plaintiff asserts only that she reported Professor Nakajima and Gerwig for violations in accordance with her job duties. (FAC ¶55.) Plaintiff does not allege

FPDOCS 35091493.2

that she filed a formal complaint opposing the violations or actively pursued the violations outside of her role as the dean. Rather, she asserts that she received the original report from Dr. Daniel Finkenthal and relayed it to Shawna Cohen for handling. (FAC ¶¶5-6). Plaintiff did not pursue the Complaint or purposefully act as a witness in the investigation. Instead, she was kept abreast of updates and asked to be a witness because Professors Nakajima and Gerwig were her direct reports and the physics department was her responsibility. (Ex. A pp. 193-195; Norman Decl., par. 4, Ex. A, pp. 193-195; Kahn Decl., par. 4, Ex. A, pp. 193-195). Consequently, Plaintiff does not allege that she engaged in protected activity under Labor Code section 1102.5.

As such, similar to her First and Second Causes of Action, Plaintiff's Seventh Cause of Action will fail because Plaintiff did not engage in protected activity.

## V.   DEFENDANT IS ENTITLED TO ALL COSTS AND ATTORNEY'S FEES INCURRED RELATED TO ITSANTI-SLAPP MOTION

A defendant who prevails on an anti-SLAPP motion is entitled to recover attorney's fees and court costs from the plaintiff who filed the stricken pleading. Code of Civil Procedure § 425.16(c)(1). Importantly, a defendant does not need to succeed on the entire anti-SLAPP motion in order to be considered the prevailing party. (*Mann v. Quality Old Time Serv., Inc.* (2006) 139 Cal.App.4th 328, 339.) Accordingly, should this Court decide to grant all or part of Defendant's anti-SLAPP motion, Defendant should be awarded its attorney's fees and costs.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## VI.    REQUESTED RELIEF

2          Based on the foregoing, the Court should grant Defendant's SLAPP Motion

3   and enter an order striking Plaintiff's FAC in its entirety, dismissing the instant

4   lawsuit, and awarding Defendant its attorney's fees and costs pursuant to California

5   Code of Civil Procedure § 425.16(c)(1).

6

7   DATE: March 19, 2019                    **FISHER & PHILLIPS LLP**

8                                    By:    /s/ Adam F. Sloustcher
                                            Regina A. Petty
9                                           Adam F. Sloustcher
                                            Attorneys for Palomar Community
10                                          College District

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF P'S AND A'S ISO DEF'S MOTION TO DISMISS PLTF'S COMPLAINT PURSUANT TO CAL.
CODE CIV. PROC. § 425.16
CASE NO.: 3:18-CV-02877-AJB-MSB

1

## CERTIFICATE OF SERVICE

2

3

I, the undersigned, am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 4747 Executive Drive, Suite 1000, San Diego, California, 92121.

4

5

6

7

On March 19, 2019 I served the foregoing document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PALOMAR COMMUNITY COLLEGE DISTRICT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

8

9

10

Evan Dwin
DWIN LEGAL, APC
2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011

Telephone: (760) 536-6471
Facsimile: (760) 585-4649
E-Mail: edwin@dwinlegal.com
Attorneys for Plaintiff
Kathryn Kailikole

11

12

13

14

15

16

☒      **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

17

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

18

Executed March 19, 2019 at San Diego, California.

19

Michael Lynn Filio                    By: _____

20

21

22

23

24

25

26

27

28

1

FPDOCS 35091493.2