1  **DWIN LEGAL, APC**
   Evan Dwin (SBN 241027)
2  2121 Palomar Airport Road, Suite 170
   Carlsbad, CA 92011
3  Tel: (760) 536-6471
   Fax:(760) 585-4649
4  e-mail: edwin@dwinlegal.com

5  Attorneys for Plaintiff
   KATHRYN KAILIKOLE
6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10  KATHRYN KAILIKOLE, an          | Case No. 3:18-cv-02877-AJB-MSB
    individual;
11                                 | [Previously San Diego Superior Court
                        Plaintiff, | Case No. 37-2018-00058754-CU-WT-
12      vs.                        | NC]

13  PALOMAR COMMUNITY COLLEGE
    DISTRICT, a governmental entity; and
14  DOES 1 through 25, inclusive;  | **PLAINTIFF KATHRYN
                                   | KAILIKOLE'S OPPOSITION TO
15                    Defendants.  | DEFENDANT PALOMAR
                                   | COMMUNITY COLLEGE
16                                 | DISTRICT'S SPECIAL MOTION TO
                                   | STRIKE PLAINTIFF'S FIRST
17                                 | AMENDED COMPLAINT

18                                 | **DATE: June 20, 2019**
                                   | **TIME: 2:00 p.m.**
19                                 | **PLACE:  Courtroom 4A**

20

21

22

23

24

25

26

27

28
                        - 1 -
         **OPPOSITION TO SPECIAL MOTION TO STRIKE**

Table of Contents

I.      INTRODUCTION ....................................................................................1

II.     RELEVANT FACTS AND PROCEDURAL BACKGROUND....................2

        A.      Plaintiff Is Appointed As Dean Of The MNHS Department. ...............2

        B.      Plaintiff Is Diagnosed With Anxiety.................................................3

        C.      Plaintiff Complains About Discrimination By Physics Professors.......3

        D.      Dr. Kahn Pledges To Support Plaintiff In Her Job. .............................5

        E.      The District Begins Retaliating Against Plaintiff. ..............................5

        F.      The District Non-Renews Plaintiff's Contract....................................5

        G.      The District's Investigation Of Plaintiff. ..........................................6

        H.      The District Terminates Plaintiff For Plainly Pretextual Reasons........6

        I.      Plaintiff Brings This Action Against The District. .............................7

        J.      The District's Pretextual And Inadmissible Reasons For Its
                Actions........................................................................................7

        K.      Plaintiff Has Not Had An Opportunity To Conduct Discovery..........10

III.    FEDERAL CLAIMS ARE NOT SUBJECT TO ANTI-SLAPP
        MOTIONS. ...........................................................................................10

IV.     Procedure For Deciding An Anti-SLAPP MOTION. ................................11

V.      THE CLAIMS DO NOT ARISE FROM PROTECTED ACTIVITY. .........12

VI.     PLAINTIFF's CLAIMS ARE SUFFICIENTLY ALLEGED. ......................16

        A.      Plaintiff Engaged In "Protected Activity."........................................16

        B.      Section 1102.5 Applies "Regardless" Of Job Duties...........................19

        C.      FEHA Expressly Applies to Public Employers. .................................19

        D.      Plaintiff Alleged A Disability Under FEHA.......................................20

        E.      The Exhaustion of Internal Remedies Doctrine Does Not Apply.......21

VII.    PLAINTIFF ESTABLISHED A *PRIMA FACIE* CASE AND
        PRETEXT................................................................................................22

VIII.   Plaintiff Should BE AWARDED HER ATTORNEYS' FEES. ...................25

IX.     PLAINTIFF MUST BE PERMITTED ADEQUATE DISCOVERY...........25

- i -

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

X.    CONCLUSION.................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

Table of Authorities

## CASES

### Federal Cases

*Bell v. Clackamas Cnty.*, 341 F.3d 858 (9th Cir. 2003)................................................23

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F.Supp. 2d 1172 (C.D. Cal. 2006) ..........................................................................10

*Burch* v. *Cal. DMV*, 2017 U.S. Dist. LEXIS 131780 (E.D. Cal., decided December 20, 2013)..............................................................................21

*Chapman v. Milwaukee Cnty.*, 151 F. Supp. 3d 892 (E.D. Wis. 2015)...................... 18

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty*, 555 U.S. 271 (2009)........................................................................................... 16, 18

*Demasters v. Carillion Clinic*, 796 F.3d 409 (2d Cir. 2015)..................................... 17

*Diaz v. Fed. Express Corp.*, 373 F.Supp.2d 1034, 1041 (C.D. Cal. 2005)................. 20

*EEOC v. HBE*, 135 F.3d 543 (8th Cir. 1997) ............................................................ 18

*Emeldi v. Univ. of Oregon.*, 698 F.3d 715 (9th Cir. 2012)........................................ 23

*Estrada v. Gate Gourmet, Inc.*, 2017 U.S. Dist. LEXIS 86848 (C.D. Cal., decided June 6, 2017) ...........................................................................21

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ................................................................ 17

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ......................................... 10

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) ....................................... 16

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) .................................. 17

*Lund v. Leprino Foods Co.*, 2007 U.S. Dist. LEXIS 46705 (E.D. Cal. 2007)............ 19

*McKenzie v. Renberg's, Inc.*, 94 F.3d 1478 (10th Cir. 1996)..................................... 18

*Miller v. Fairchild Indus., Inc.*, 797 F.2d 727 (9th Cir. 1986). ................................. 23

*Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 970 (N.D. Cal. 2010) ............... 19

*Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843 (9th Cir. 2014).........22, 23

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,* 890 F.3d 828 (9th Cir. 2018) ................................................................. 11, 16, 25

*Robinson v. Wichita State University*, 2018 U.S. Dist. LEXIS 22983 (D. Kansas 2018, decided February 13, 2018) ......................................................... 18

*Rosenfield v. GlobaTranz Enters., Inc.*, 811 F. 3d 282, 285 (9th Cir. 2015) ............. 18

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

*Skare v. Extendicare Health Servs. Inc.*, 515 F.3d 836 (8th Cir. 2008) ..................... 17

*Stegall v. Citadel Broad. Co.* 350 F.3d 1061 (9th Cir. 2003) ........................................ 23

*Striplin v. Shamrock Foods Co.* 2016 U.S. Dist. LEXIS 39680 (C.D. Cal.,
   decided March 24, 2016) ............................................................................................ 21

*Striplin* v. *Shamrock Foods Co.*, 731 F.App'x 618 (9th Cir. 2018) .......................... 21

*Tworivers v. Lewis*, 174 F.3d 987 (9th Cir. 1999) ....................................................... 16

*Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081 (9th Cir. 2004) ............. 12

*Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987) ...................................................... 23

### State Cases

*In re Lance W.*, 37 Cal. 3d 873 (1985) ........................................................................ 19

*Bonni v. St. Joseph Health Sys.,* 13 Cal. App. 5th 851 (2017) .................................. 11

*Caldwell v. Montoya*, 10 Cal. 4th 972, 976-77 (1995)  ............................................. 20

*California Back Specialists Med. Group v. Rand*, 160 Cal. App. 4th 1032
   (2008)............................................................................................................................ 25

*Campbell v. Regents of California*, 35 Cal. 4th 311 (2005) ........................................ 22

*City of Cotati v. Cashman*, 29 Cal. 4th 69 (2002) ...................................................... 12

*DeJung v. Superior Court,* 169 Cal. App. 4th 533, 544 (2008)  ................................ 20

*Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191 (2012) ....................................... 19

*Equilon Enters. v. Consumer Cause, Inc.,* 29 Cal. 4th 53 (2002) ............................... *11*

*Farmers Ins. Group v. Cnty. of Santa Clara*, 11 Cal. 4th 992 (1995)........................ 20

*Hansen v. California Dept. of Corrs. and Rehab.*, 171 Cal. App. 4th 1537
   (2008)............................................................................................................................ 16

*Higgins-Williams v. Sutter Med. Found.*, 237 Cal. App. 4th 78 (2015)..................... 21

*Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245 (2000) ......................................... 20

*Miller v. City of Los Angeles*, 169 Cal. App. 4th 1373 (2008)............................. 15, 16

*Nam v. Regents of the Univ. of California*, 1 Cal. App. 5th 1176 (2016) 12, 13, 14, 15

*Navellier v. Sletten,* 29 Cal. 4th 82 (2002)................................................................... 11

*Ortega v. Contra Costa Community College Dist.,* 156 Cal. App. 4th 1073
   (2007)........................................................................................................................ 21, 22

*Palmer v. Regents of the Univ. of California*, 107 Cal. App. 4th 899 (2003) ............ 22

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

*Park v. Bd. of Trustees of the California State Univ.*, 2 Cal. 5th 1057 (2017)....passim

*Patten v. Grant Joint Union Sch. Dist.* 134 Cal. App. 4th 1378 (2005)..................... 19

*San Ramon Valley Fire Prot. Dist. v. Contra Costa Cnty. Emps. Ret. Ass'n,*
125 Cal. App. 4th 343 (2004) .......................................................... 12, 13, 14, 15

*Schifando v. City of Los Angeles,* 31 Cal. 4th 1074 (2003) ......................................... 21

*Terris v. Cnty. of Santa Barbara*, 20 Cal. App. 5th 551 (2018) ................................. 22

*Vergos v. McNeal*, 146 Cal. App. 4th 1387 (2007), ................................................ 15

*Westlake Cmty. Hosp. v. Superior Court*, 17 Cal. 3d 465 (1976)................................ 22

*Whitehall v. Cty. of San Bernardino*, 17 Cal. App. 5th 352 (2017)............................ 13

*Williams v. Hous. Auth. of Los Angeles,* 121 Cal. App. 4th 708 (2004) ..................... 22

**STATUTES**

**Federal Statutes**

20 U.S.C. Section 1681 ............................................................................... passim

42 U.S.C. Section 2000d.................................................................... 7, 10, 11, 17

Federal Rule of Civil Procedure 12 .............................................................. 11, 16

Federal Rule of Civil Procedure 15 .................................................................... 11

Federal Rule of Civil Procedure 56 .............................................................. 11, 25

Federal Rule of Evidence 403 ............................................................................ 10

Federal Rule of Evidence 602............................................................................ 10

Federal Rule of Evidence 801 ........................................................................... 10

Federal Rule of Evidence 901 ........................................................................... 10

**State Statutes**

California Code of Civil Procedure section 425.16............................................. 11, 25

California Government Code 12926................................................................. 19, 20

California Labor Section 1102.5..................................................................... 1, 7, 19

California Government Code section 12940 ....................................................... passim

California Government Code Section 815.2 ............................................................ 19

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

California Government Code Section 820.2 ................................................................ 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

# I.    INTRODUCTION

This Court should deny Defendant Palomar Community College District's (the "District") misguided special motion to strike under California Code of Civil Procedure 425.16, California's anti-SLAPP statute, because the motion has no legal basis and was filed to suppress rather than promote petitioning activity.

First, it is well-settled in the Ninth Circuit that the anti-SLAPP statute cannot apply to federal claims because it would frustrate federal substantive rights.  Thus, the District has no plausible basis for seeking to strike Plaintiff's federal civil rights claims under Title IX and Title VI.  Further, the anti-SLAPP statute applies only where the complaint arises from an act by the defendant in furtherance of a right to free speech or to petition.  The gravamen of all of Plaintiff's claims is that the District's decisions to place her on leave, non-renew her contract and terminate her were retaliatory and discriminatory.  As the California Supreme Court held in *Park v. Bd. of Trustees of the California State Univ.*, 2 Cal. 5th 1057, 1066 (2017), such claims, which are based on a public entity's <u>decisions</u>, as distinguished from any related speech or petitioning activity by officials, do not arise out of protected activity.  Thus, the motion should be denied without further inquiry because the anti-SLAPP statute does not apply to Plaintiff's claims.  Further, because the motion has no basis, it is frivolous and Plaintiff should be awarded her attorneys' fees.

Additionally, Plaintiff can demonstrate a probability of success on the merits.  The District's claim that Plaintiff's job duties exclude her from engaging in "protected activity" is contradicted by federal law providing that a communication about discrimination "virtually always" constitutes "protected activity" and there is no exception based on an employee's job duties.  Similarly, California Labor Section 1102.5 applies to employees who report illegal activity "regardless" of their job duties.  Further, no purported "manager rule" could apply to Plaintiff because she was not a compliance officer and she specifically complained about discrimination.

The District's is not immune, as it claims, from Plaintiff's FEHA claims

1

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1  because FEHA's definition of a covered employer expressly includes "state"
2  employers which supersedes any general immunity statute.  Plaintiff was also not
3  required to exhaust the District's internal procedures because FEHA claims as well as
4  any related non-FEHA claims based on the same allegations are exempt from internal
5  exhaustion requirements.  Further, Plaintiff plainly alleged a disability under FEHA
6  because her anxiety causes numerous issues that limit her major life activities.

7       Plaintiff can also establish a *prima facie* retaliation case and there is sufficient
8  evidence of pretext because there is a close "temporal proximity" between the
9  District's adverse employment decisions and Plaintiff's complaints about
10 discrimination and retaliation and her request for an accommodation.  Moreover, the
11 District's reasons for terminating Plaintiff are unworthy of credence because, among
12 other reasons: 1) the District's e-mails about alleged performance issues were not
13 collected until after Plaintiff demanded to know why she was placed on leave; 2) the
14 District has never explained why it began investigating Plaintiff; and 3) the District's
15 investigator did not interview any decision-maker in his purported investigation of
16 Plaintiff allegations of retaliation; and 4) there was no reasonable basis for the
17 District to conclude that by properly forwarding an e-mail to her Department Chair to
18 check on a prior directive prohibiting the use of an airsoft gun, Plaintiff was actually
19 conspiring to "leak" allegedly confidential information to the Chair's wife.

20      Finally, in the Ninth Circuit, an anti-SLAPP motion cannot be granted unless
21 the Plaintiff has an opportunity to conduct discovery.  Here, Plaintiff has not yet had
22 the opportunity to conduct discovery.  Accordingly, if the Court does not deny the
23 motion on the current record, then it should postpone any decision, order the
24 commencement of discovery and permit Plaintiff to supplement her opposition.

25 **II.**     **RELEVANT FACTS AND PROCEDURAL BACKGROUND.**

26     **A.**     <u>**Plaintiff Is Appointed As Dean Of The MNHS Department.**</u>

27      In January 2016, Plaintiff was hired as Interim Dean of the Mathematics and
28 the Natural Health Sciences Division of Palomar College.  (First Amended Complaint

("FAC"), Doc. 7 ¶ 35, Declaration of Kathryn Kailikole ("Kailikole Decl.") ¶ 2, Ex. 1.)  In April 2017, Plaintiff's supervisor, Daniel Sourbeer, Vice-President of Instruction, gave Plaintiff a superlative performance review.  (FAC ¶¶ 48-50, Kailikole Decl. ¶ 3, Ex. 2.)  The review stated Plaintiff is an "excellent communicator" and that her "grant writing and management" are "superior."  (*Id*. p. 4)  The review stated Plaintiff is "a fierce advocate for students" with an "excellent understanding of budgets and how to use them."  (*Id*. p. 2, 4.)  Shortly after the review, Plaintiff was promoted to Dean.  (FAC ¶¶ 51-52, Kailikole Decl. ¶ 4, Ex. 3.)

As an academic dean, Plaintiff was responsible for an instructional program and was not a compliance officer.  (FAC ¶¶ 51, 57, Kailikole Decl. ¶ 5.)  Separate departments, such as the EEO Office and Human Resources are responsible for enforcing anti-discrimination policies.  (FAC ¶ 57, Kailikole Decl. ¶ 5.)

**B.   Plaintiff Is Diagnosed With Anxiety.**

In May 2017, Plaintiff suffered a panic attack and was diagnosed with anxiety which limits her life activities by causing feelings of being overwhelmed, helpless and nervous and vertigo and cysts.  (FAC ¶ 4, 53, Kailikole Decl. ¶ 6, Ex. 4.)

**C.   Plaintiff Complains About Discrimination By Physics Professors.**

In May 2017, a professor in the Physics and Engineering Department, Dr. Daniel Finkenthal, reported to Plaintiff that a student complained about materials posted in labs used by Professors Takashi Nakajima ("Nakajima") and Arthur Gerwig ("Gewig").  (FAC ¶ 5, 54, Kailikole Decl. ¶¶ 7, 10, Ex. 5, p. 1.)  Plaintiff complained about the postings to Shawna Cohen, the Manager of EEO and Deputy Title IX Coordinator.  (FAC ¶ 6, 55, Kailikole Decl. ¶¶ 7,10, Ex. 5, p. 1.)  The postings included:

- A recitation of a mnemonic device stating: "Black Boys Rape Our Young Girls But Violet Gives Willingly Get Some Now."
- A posting entitled "Vogue May Edition" portraying a student lying on the hood of a pickup truck holding a drawing of a penis.

3

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1        • A posting portraying a latino student named Juan which stated "2017
2          you know you juant me?/Hello Ladies" as a racist play on Juan's name.
3        • A sexually harassing and racist posting which stated "Dick got her like"
4          which was accompanied by a hashtag remark of "#black cock slut."
5  (FAC ¶ 55, Ex. A p. 5, Kailikole Decl. ¶¶ 7, 10, Ex. 5, p. 5.)  In June 2017, the Title
6  IX Office began an investigation.  (FAC ¶ 59, Ex. A p. 1, Kailikole Decl. ¶¶ 9, 10,
7  Ex. 5 p. 1.)  Plaintiff was interviewed by the investigator, Jeffrey Love.  (FAC ¶ 61,
8  Ex. A, p. 2, Kailikole Decl. ¶¶ 9, 10, Ex. 5 p. 2.)

9      On November 1, 2017, the District concluded its investigation, determining
10  Nakajima and Gerwig either "displayed the items" or "allowed and even encouraged
11  others to do so" and lied about it. (FAC ¶ 62, Ex. A p. 7, 12, Kailikole Decl. ¶ 10 Ex.
12  5, p. 7, 12.)  Plaintiff then suggested to Dr. Lisa Norman, Vice-President of Human
13  Resources that Nakajima and Gerwig be terminated.  (FAC ¶ 10, 65, Kalikole Decl. ¶
14  11.)  Norman refused to pursue termination, claiming that the offense did not merit
15  harming their careers and livelihood.  (FAC ¶ 10, 65, Kalikole Decl. ¶ 11.)

16      On November 27, 2017, Finkenthal advised Plaintiff of complaints about
17  Nakajima and Gerwig, which Plaintiff forwarded to Norman and requested they be
18  removed from the classroom given their history.  (Kailikole Decl. ¶ 12.)  Norman
19  refused to take any action, but "highly recommended" that Plaintiff and Finkenthal
20  "observe" Nakajima and Gerwig.  (FAC ¶¶ 66-67, Kailikole Decl. ¶ 12-13, Ex. 6, p.
21  1-2.) Consistent with this directive and Finkenthal's role as Chair of the Department,
22  Plaintiff forwarded an e-mail from 2016 regarding Nakajima's unsafe use of an
23  airsoft gun in the lab.  (FAC ¶¶ 75-76, Kailikole Decl. ¶ 14.)

24      When the gun incident occurred in April 2016, Plaintiff requested that the
25  Police investigate it and reported it to her supervisor.  (FAC ¶¶ 41-42, 44, Kailikole
26  Decl. ¶ 15, Ex. 7.)  The Police determined that the use of the gun should have been
27  approved by the Police.  (FAC ¶¶ 46, Kailikole Decl. ¶ 15, Ex. 7 p. 5.)  Plaintiff
28  instructed Nakajima to stop using the gun and received no more complaints or reports

4

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1  about a gun in any classroom or lab.  (FAC ¶¶ 46-47, Kailikole Decl. ¶ 15.)

2  Plaintiff's obvious and proper purpose when she forwarded the e-mail about the

3  incident to Finkenthal in December 2017 was so he could confirm Nakajima followed

4  the prior directive to stop using the gun.  (FAC ¶ 76, Kailikole Decl. ¶ 16.)

5      **D.**    **Dr. Kahn Pledges To Support Plaintiff In Her Job.**

6         On December 4, 2017, Plaintiff met with her supervisor, Dr. Jack Kahn.  (FAC

7  ¶ 11, 68, Kailikole Decl. ¶ 17.)  Plaintiff discussed her anxiety with Kahn and

8  expressed concern about her workload because she was seeking an accommodation.

9  (*Id.*)  Kahn assured Plaintiff she was a "valuable member of the team" and pledged

10 his support.  (*Id.*)  Kahn stated that he looked forward to continuing to work with her

11 and that he was aware of her "medical concerns."  (*Id.*)  Kahn did not mention any

12 possible discipline against Plaintiff.  (*Id.*)

13     **E.**    **The District Begins Retaliating Against Plaintiff.**

14        On December 12, 2017, the District placed Nakajima and Gerwig on unpaid

15 leave for only one month, even though they were repeat discrimination offenders.

16 (FAC ¶¶ 12, 69, Kailikole Decl. ¶ 18.)  Two days later, and a week after Plaintiff

17 discussed her anxiety with Kahn, the District placed Plaintiff on paid leave.  (FAC ¶

18 13, 70, Kailikole Decl. ¶ 19, Ex. 8.)  The District provided no explanation except that

19 there was a purported "breach of confidential information."  (FAC ¶¶ 70, 72,

20 Kailikole Decl. ¶ 19, Ex. 8.)

21        On January 30, 2018, Plaintiff, through counsel, requested her personnel

22 records, including information about any "grievance" against her.  (Declaration of

23 Evan Dwin, "Dwin Decl." ¶ 2, Ex. 1.)  The District's stated that there was "no formal

24 written grievance or complaints against" her.  (Dwin Decl. ¶ 5, Ex. 4.)  The District

25 did not mention any alleged performance issues. (Dwin Decl. ¶ 5, Ex. 4.)

26     **F.**    **The District Non-Renews Plaintiff's Contract.**

27        On or about February 16, 2018, Plaintiff advised the District that she believed

28 she was being retaliated against for reporting the lab postings.  (FAC ¶ 16, 72; Dwin

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

Decl. ¶ 4, Ex. 3.)  The District advised Plaintiff of her right to file a formal complaint with the District or to pursue her claims with the DFEH or EEOC and that "District policy and applicable law prohibit retaliation against any employee for filing a complaint of unlawful discrimination/harassment and/or for participating in any manner in an investigation thereof." (Kailikole Decl. ¶ 20, Ex. 9 p. 1-2.)

On February 26, 2018, the District notified Plaintiff that it was considering non-renewing her contract. (Kailikole Decl. ¶ 21, Ex. 10, Dwin Decl. ¶ 6, Ex. 5.) The District denied that it was considering any complaints or charges against Plaintiff. (Dwin Decl. ¶ 8, Ex. 7.)  The next day, in a closed meeting, the District non-renewed Plaintiff's contract without explanation.  (FAC ¶ 73, Kailikole Decl. ¶ 21, Ex. 11.)

### G.    The District's Investigation Of Plaintiff.

On February 27, 2018, Plaintiff was interviewed by Love as part of a purported investigation of her, in which he asked her about the incident in April 2016 where Nakajima used the airsoft gun.  (FAC ¶ 74, Kailikole Decl. ¶ 22-23.)  Plaintiff confirmed that she forwarded an e-mail about the incident to Finkenthal in December 2017, which was entirely proper.  (FAC ¶¶ 75-76, Kailikole Decl. ¶ 23.)  Love asked Plaintiff whether she ever agreed with Finkenthal to forward information about the gun incident to his wife or the Board.  (FAC ¶ 21, 77, Kailikole Decl. ¶ 23.)  Plaintiff confirmed that she never made any such agreement with Finkenthal and that Finkenthal never indicated to her that he planned to share the information with anyone.  (FAC ¶ 21, 77, Kailikole Decl. ¶ 23.)

On March 4, 2018, Plaintiff was informed that Kahn told faculty Plaintiff was not returning, which confirmed that a decision to terminate her was made prior to the conclusion of the "investigation."  (FAC ¶ 22, 78, Kailikole Decl. ¶ 24.)

### H.    The District Terminates Plaintiff For Plainly Pretextual Reasons.

On May 2, 2018, Kahn sent Plaintiff a letter stating he recommended her termination.  (FAC ¶ 23, 79, Kailikole Decl. ¶ 25.)  On June 13, 2018, the District

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1 | terminated Plaintiff.  (FAC ¶ 27, 84 Kailikole Decl. ¶ 26.)

2 | **I.   Plaintiff Brings This Action Against The District.**

3 | Rather than allow the District to judge its own discriminatory conduct in an

4 | internal proceeding, Plaintiff filed a complaint with the DFEH, then filed this Action.

5 | (FAC ¶ 29, FAC 33: 18-20, Ex. B.)  Plaintiff alleges 7 causes of action against the

6 | District: 1) retaliation in violation of 20 U.S.C. section 1681 ("Title IX"); 2)

7 | retaliation in violation of 42 U.S.C. section 2000d ("Title VI"); 3) retaliation in

8 | violation of California Government Code section 12940 ("FEHA"); 4) disability

9 | discrimination in violation of FEHA; 5) failure to accommodate disability in violation

10 | FEHA; 6) failure to engage in the interactive process in violation of FEHA; and 7)

11 | retaliation in violation of Labor Code section 1102.5.  (FAC ¶¶ 87-95, 96-104, 105-

12 | 110, 111-118, 119-124, 125-130, 131-139).  Plaintiff clearly states in the FAC that

13 | "each of [her] claims arise[s] out of adverse employment actions to retaliate against

14 | her for complaining about racist and sexually harassing conduct by [Nakajima and

15 | Gerwig], to discriminate against Plaintiff on the basis of her mental health disability,

16 | and to avoid accommodating her disability."  (FAC ¶ 2.)  Specifically, Plaintiff

17 | alleges that she engaged in protected activity by complaining about sex and race

18 | discrimination and retaliation she suffered for reporting it.  (FAC ¶¶ 90-92, 98-100.)

19 | Plaintiff further alleges that the District retaliated against her by "engag[ing] in

20 | adverse employment actions against Plaintiff, which were to place her on paid leave,

21 | non-renew her contract and terminate her employment."  (FAC ¶¶ 91, 99, 107, 137.)

22 | Additionally, Plaintiff alleges that her disability was "a motivating factor in" the

23 | District's decision to place her on leave, non-renew her and terminate her and that it

24 | failed to accommodate her disability or engage in the interactive process.  (FAC ¶¶

25 | 115, 121, 127.)  Plaintiff sued only the District and does not name any individuals.

26 | (FAC 2: 20-22, ¶¶ 2, 33.)

27 | **J.   The District's Pretextual And Inadmissible Reasons For Its Actions.**

28 | In its special motion to strike, the District relies on the purported reasons for

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1  Plaintiff's termination that it stated in the May 2, 2018 Notice of Recommended

2  Termination and the June 13, 2018 Termination Letter. Specifically, the District

3  claims that the termination was legitimate based on an Investigative Report by Love,

4  dated April 25, 2018 and various e-mails allegedly evidencing performance issues.

5  (FAC ¶¶ 79, Declaration of Jack Kahn ("Kahn Decl.") Doc. 14-4 ¶¶ 4, 9, Exs. A, E.)

6      In the purported Investigative Report Love claims Plaintiff was part of a

7  conspiracy to "leak" information about the gun incident to Finkenthal's wife. (FAC ¶

8  80, Declaration of Jeffrey Love ("Love Decl.") Doc. No. 14-3 ¶ 4, Ex. A. p. 8, 12, 24-

9  26, passim.) The evidence of the alleged conspiracy is that Plaintiff may have talked

10 to Finkenthal on the phone before forwarding him the e-mail. (Love Decl. ¶ 4, Ex. A

11 p. 8, 12, 24-26.) Plaintiff had no idea Finkenthal forwarded e-mails to his wife and

12 did not ask him to do so. (FAC ¶ 80, Kailikole Decl. ¶ 23.) Further, during the

13 investigation, which took four months, Love interviewed only two witnesses, Plaintiff

14 and Finkenthal, both of whom denied any alleged "conspiracy." (FAC ¶ 81, Love

15 Decl. ¶ 4, Ex. A p. 8, 10, 12, 18, 22, passim.) Love did not consider Norman's

16 November 27, 2017 directive instructing Plaintiff to enlist Finkenthal's aid in

17 "observing" Nakajima and Gerwig. (Love Decl. ¶ 4, Ex. A p. 17, 23-26.) Love also

18 provides no explanation as to why Plaintiff would want to "leak" information to, of

19 all people, Finkenthal's wife. (Love Decl. ¶ 4, Ex. A p. 23-26.)

20     Love's report also denies the District retaliated against Plaintiff by placing her

21 on administrative leave and non-renewing her contract. (Love Decl. ¶ 4, Ex. A p. 33-

22 36.) However, Love interviewed only Plaintiff and <u>did not interview a single person</u>

23 <u>involved in the decision to place her on leave or non-renew her</u>. (Love Decl. ¶ 4, Ex.

24 A p. 33-36.) Notably absent was any inquiry into the origin of the investigation, who

25 ordered it, or why the District was monitoring Plaintiff's e-mails, instead stating only

26 that the investigation was "internally generated at the request of Human Resources."

27 (FAC ¶ 81, Love Decl. ¶ 4, Ex. A p. 10.) Love conducted no analysis of retaliation

28 policy or law and did not consider the timing of the non-renewal in relation to

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1   Plaintiff's complaints.   (Love Decl. ¶ 4, Ex. A p. 34-36.)  Love also concluded that

2   the decision to non-renew Plaintiff was justified based on his findings of alleged

3   misconduct, <u>even though the report was issued two months after the decision was</u>

4   <u>made</u> and Plaintiff was advised by District's counsel that the proposed non-renewal

5   was not based on accusations of misconduct. (Love Decl. ¶ 4, Ex. A p. 36; Dwin

6   Decl. ¶ 8, Ex. 7.)

7        The District's alleged evidence of performance issues consists mostly of e-

8   mails Kahn started forwarding to Human Resources for the first time on February 1,

9   2019 - within two days of Plaintiff's attorney demanding information about why she

10  was being investigated. (Kahn Decl. ¶ 4, Ex. A p. 32-47, Dwin Decl. ¶ 2, Ex. 1.)

11  Norman immediately forwarded the e-mails to the District's counsel.  (Kahn Decl. ¶

12  4, Ex. A p. 32-47.)  The e-mails included: 1) e-mails from September 2017 in which a

13  professor complained about alleged inaction on his requests for grant money; 2) e-

14  mails chain from October 2017 regarding the faculty interviews; 3) e-mails chain

15  from December 2017 regarding the Annual Division Update; 4) the December 4,

16  2017 e-mail from Dr. Kahn about Plaintiff's workload and medical issues; and 5) a

17  January 31, e-mail from a staff member claiming Plaintiff allegedly "belittling her."

18  (*Id*.)  None of the e-mails were provided to Plaintiff as possible grounds for discipline

19  prior to Kahn's May 2 letter recommending termination.  (Kailikole Decl. ¶ 25.)  The

20  District also claimed Plaintiff waited 18 months to report the gun incident to Human

21  Resources, even though she immediately reported it to her supervisor and the police.

22  (FAC ¶¶ 44, 83, Love Decl. ¶ 4, Ex. A, p. 27-30.)

23        The Notice of Recommended Termination and Termination Letter attach

24  hundreds of pages of exhibits, including e-mails, letters, alleged interview transcripts,

25  alleged reports and other documents.  The District submits these documents as

26  Exhibits A and E to Norman's and Kahn's Declarations.  The District submits no

27  testimony establishing foundation for the authenticity of any of these documents and

28  submits no testimony from any person claiming to have personal knowledge of the

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

incidents and events purportedly described therein, let alone any testimony regarding whether the purported incidents or events occurred. Similarly, the District submits no foundational testimony as to the authenticity of the purported evidence, such as e-mails, transcripts and reports, relied upon by Love in his April 25, 2018 report attached as Exhibit A to his declaration. His conclusions are merely opinions and are not based on any evidence of any facts for which he has personal knowledge. Thus, Plaintiff objects to Exhibits A and E to Norman's and Kahn's Declarations and Exhibit A to Love's Declaration and they should be excluded because they lack foundation, are hearsay offered for their truth and because any probative value is substantially outweighed by danger of prejudice. Fed. Rule Evid. 403, 602, 801, 901.

### K. Plaintiff Has Not Had An Opportunity To Conduct Discovery.

Plaintiff's access to her e-mails was cut-off by the District in December 2017. Further, discovery has not commenced in this Action. (Dwin Decl. ¶ 10.) Plaintiff has not had an opportunity to review documents in the exclusive possession of the District, including her own e-mails and e-mails by District administrators regarding its investigations and employment decisions and she has not had an opportunity to depose Kahn, Norman, Love or any other key witnesses. (Dwin Decl. ¶ 10.)

## III. FEDERAL CLAIMS ARE NOT SUBJECT TO ANTI-SLAPP MOTIONS.

The application of California's anti-SLAPP statute to federal claims "would frustrate substantive federal rights", is contrary to the federal interest of prescribing uniformity of federal law and risks permitting "state law to affect and alter the substance of federal claims in violation of the Supremacy Clause of the Constitution." *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F.Supp.2d 1172, 1180-82 (C.D. Cal. 2006) Thus, the anti-SLAPP statute does not apply to causes of action arising from federal law asserted in federal court. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010); *Bulletin, supra*, 448 F.Supp. 2d at 1180-81.

In her Title IX and Title VI claims Plaintiff seeks to enforce substantive federal rights. The law is clear that these claims are not subject to an anti-SLAPP motion

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1  because it would allow state law to limit substantive federal rights. Thus, the special

2  motion to strike Plaintiff's Title IX and Title VII should be denied.

3  **IV.   PROCEDURE FOR DECIDING AN ANTI-SLAPP MOTION.**

4        "In evaluating an anti-SLAPP motion, the court conducts a potentially two step

5  inquiry." *Bonni v. St. Joseph Health Sys., 13 Cal. App. 5th 851,* 859 (2017). "First,

6  the court must decide whether the defendant has made a threshold showing that the

7  plaintiff's claim *arises from* protected conduct." *Navellier v. Sletten, 29 Cal. 4th 82,*

8  88 (2002). "To meet its burden, under the first prong of the anti-SLAPP test, the

9  defendant must demonstrate that its act underlying the plaintiff's claim fits one of the

10  categories spelled out in" California Code of Civil Procedure section 425.16(e),

11  which are (1) statements or writings made an official proceeding, (2) statements in

12  connection with an issue under consideration by an official proceeding, (3) statements

13  made in a public place or forum in connection with an issue of public interest, or (4)

14  conduct in furtherance of the exercise of the constitutional right of petition or the

15  constitutional right of free speech in connection with a public issue or an issue of

16  public interest. *Bonni, supra*, 13 Cal. App. 5th at 859.

17        Where an action arises from protected activity, the burden shifts to the plaintiff

18  to demonstrate a probability of prevailing on the merits. *Equilon Enters. v. Consumer*

19  *Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). The Ninth Circuit applies one of two

20  standards to this issue. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.*

21  *Progress,* 890 F.3d 828, 834 (9th Cir. 2018). Where the motion "challenges only the

22  legal sufficiency of a claim" the court applies the Rule of Civil Procedure 12(b)(6)

23  standard and "considers whether a claim is properly stated." *Id.* at 834. Where the

24  motion challenges the factual sufficiency of a claim, then the Rule of Civil Procedure

25  56 standard applies. *Id.* However, "discovery must be allowed, with opportunities to

26  supplement evidence . . . . before any decision is made by the court" and the motion

27  cannot be granted without first permitting leave to amend under Rule of Civil

28  Procedure 15(a). *Planned Parenthood, supra*, 890 F.3d at 834; *Verizon Del., Inc. v.*

*Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

## V.      THE CLAIMS DO NOT ARISE FROM PROTECTED ACTIVITY.

A claim "arises from protected activity" where the "defendant's act underlying the plaintiff's cause of action" is "an act in furtherance of the right to petition or free speech." *Park v. Bd. of Trustees of the California State Univ.*, 2 Cal. 5th 1057, 1062 (2017) (*quoting City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002)).  A claim "is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity." *Id.* at 1060.  "Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *Id.*  Thus, the fact that a complaint alleges that a public entity's action was taken as a result of a vote of its members "does not mean that the litigation challenging that action *arose from* protected activity" because "[a]cts of governance mandated by law, without more, are not exercises of free speech or petition." *Id.* at 1064 (*quoting San Ramon Valley Fire Prot. Dist. v. Contra Costa Cnty. Emps. Ret. Ass'n*, 125 Cal. App. 4th 343, 354 (2004)).

In discrimination cases, "[w]hat gives rise to liability is not that the defendant spoke, but that the defendant denied the plaintiff a benefit, or subjected the plaintiff to a burden, on account of a discriminatory or retaliatory consideration." *Park, supra, 2 Cal. 5th* at 1066.  Thus, "[w]hile [the] discrimination may be carried out by means of speech . . . and an illicit animus may be evidenced by speech, neither circumstance transforms a discrimination suit to one arising from speech." *Id.*

In *Nam v. Regents of the Univ. of California*, 1 Cal. App. 5th 1176, 1180-82 (2016), the plaintiff was a doctor who was investigated and terminated by a public hospital after she complained about procedures for intubating patients.  The trial court denied the Regent's anti-SLAPP motion on the plaintiff's claims for discrimination and retaliation. *Id.* at 1184. The Court of Appeals affirmed, characterizing the motion

as "misguided" and "abusive." *Id.* at 1179, 1184. The court held that the gravamen

of the complaint was the defendant's retaliatory and harassing conduct and not its

written statements. *Id.* at 1192. The court reasoned that the fact that an official

proceeding is involved does not "inoculat[e]" a defendant where the "gravamen of the

complaint" is "discrimination or retaliation." *Id.* at 1190. To hold otherwise, the

court reasoned, would "allow an employer to use a protected activity as the means to

discriminate or retaliate and thereafter capitalize on the subterfuge by bringing an

anti-SLAPP motion to strike the complaint." *Id.*

In *Park*, the plaintiff was a professor at a public university who was denied

tenure. *Park, supra*, 2 Cal. 5th at 1061. The California Supreme Court held that the

plaintiff's discrimination claims did not arise from protected activity because the

elements of the claim did not depend on any evaluation in the tenure process "but

only on the denial of tenure and itself and whether the motive for that action was

impermissible." *Id.* at 1068. Thus, while there were allegations of related statements,

such allegations did "not convert" the statements into the "basis of liability." *Id.*[1]

In *Whitehall v. Cty. of San Bernardino*, 17 Cal. App. 5th 352, 357-358 (2017),

the plaintiff was a social worker who sought legal advice after she was asked to

submit doctored photos and withhold evidence in a hearing. The County placed her

on leave purportedly to investigate whether she disclosed confidential information.

*Id.* at 358. The plaintiff resigned and sued for whistleblower retaliation under Section

1102.5. *Id.* at 359. The court reasoned the claims did not arise from protected

activity because the plaintiff did not sue individuals and challenged only the

"employment decision" to place her on leave and "not the process". *Id.* at 362.

In *Sam Ramon Valley Fire Protection Dist. v. Contra Costa Cty. Employees'*

*Retirement Assn.*, 125 Cal. App. 4th 343, 348 (2004), the plaintiff sued a retirement

---

[1] Plaintiff advised the District in advance of its motion that *Park* and *Nam* held that the anti-SLAPP statute does not apply to employment decisions as opposed to speech or petitioning activity but the District filed its motion anyway. (Dwin Decl. ¶ 9, Ex. 8.)

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

board over the pension contribution it voted to impose.  The board's anti-SLAPP was denied.  *Id.* at 349, 353.  The Court of Appeal affirmed, holding that the pension decision was not protected activity because the action challenged was simply to charge more for pension contributions and not to engage in any speech or petitioning activity.  *Id.* at 357.  The court reasoned that "[a]cts of governance mandated by law, without more, are not exercises of free speech or petition."  *Id.* at 353.

Like the defendant in *Nam*, the District by "stitching together a number of disparate legal principles extracted from cases with very different facts," is "*ignoring the fundamental question* [of] *whether the lawsuit is indeed a SLAPP*, and divorcing the analysis from the purpose of the anti-SLAPP law" so as to "construct an argument that, in effect would subject most harassment and retaliation claims against public entities to an anti-SLAPP motion."  *Nam, supra*, 1 Cal. App. 5th at 1186 (emphasis in original).  Indeed, like the plaintiff's allegations in *Nam*, *Park*, and *Whitehall*, there is no doubt that the gravamen of Plaintiff's FAC is that the District injured Plaintiff by making retaliatory employment decisions.  Each of Plaintiff's claims depends on proof that the District's decisions to place her on administrative leave, non-renew her contract and terminate her were for discriminatory and retaliatory reasons.[2]  The claims do not implicate any speech or petitioning activity by the District.

The District has no basis for its position that protected activity includes <u>any</u> official action it takes or decision it reaches by a vote.  Indeed, it is well-settled that decisions of an elected board are <u>not</u> protected even though they "are 'arrived at after discussion and a vote at a public meeting . . . .'"  *Park, supra*, 2 Cal. 5th at 1067 (citing *San Ramon, supra*, 125 Cal. App. 4th at 358).  In fact, in *Park*, the court warned that failing to distinguish between challenged decisions and "the speech that leads to them or thereafter expresses them 'would chill the resort to legitimate

---

[2]  While the sham investigation is evidence of pretext and retaliation, none of Plaintiff's causes of action or theories of recovery depend on or are based on the investigation.

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1  judicial oversight over potential abuses of legislative and administrative power.'"

2  *Park, supra,* 2 Cal. 5th at 1067 (citing *Sam Ramon, supra,* 2 Cal. 5th at 358).

3  　　The District's argument that personnel decisions are protected because they are

4  purportedly made in the "public interest" was also rejected in *Park,* which held that

5  an assertion that a hiring decisions is a matter of public interest does not "suffice to

6  bring that decision within the scope of protected activity." *Park, supra,* 2 Cal. 5th at

7  1072.  The court in *Nam* elaborated on this principle, reasoning:

8  　　　The quintessential SLAPP is filed by an economic powerhouse to

9  　　　dissuade its opponent from exercising its constitutional right to free

10  　　　speech or to petition . . . . [I]t is . . . designed to stifle dissent or public

11  　　　participation.  It is hard to imagine that [the plaintiff's] complaint alleging

12  　　　retaliatory conduct was designed to, or could, stifle [the defendant] from

13  　　　investigating and disciplining doctors who endanger public health and

14  　　　safety. The underlying lawsuit may or may not have merit that can be

15  　　　tested by summary judgment, but it is quite a stretch to consider it a

16  　　　SLAPP merely because a public university commences an investigation.

17  *Nam, supra,* 1 Cal. App. 5th at 1186.  Unlike in *Vergos v. McNeal,* 146 Cal. App. 4th

18  1387 (2007), relied upon by the District, which decided an anti-SLAPP motion by an

19  individual, Plaintiff sued only the District.  In *Park,* the court held that *Vergos* is not

20  applicable to claims against an entity because, while denying protection to individuals

21  could chill participation in "matters of public importance" there is "no similar concern"

22  in denying protection for the "decision itself" and none of the "purposes the Legislature

23  sought to promote when enacting the anti-SLAPP statute are furthered by ignoring the

24  distinction between a government entity's decisions and the individual speech or

25  petitioning activity that may contribute to them." *Park, supra,* 2 Cal. 5th at 1071.

26  　　In *Miller v. City of Los Angeles,* 169 Cal. App. 4th 1373, 1378, 1383 (2008),

27  cited by the District, the special motion to strike was filed only as to claims for

28  defamation and intentional infliction of emotional distress related to statements made

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

in an investigation. *Id.* at 1383. In *Hansen v. California Dept. of Corrs. and Rehab.*, 171 Cal. App. 4th 1537 (2008), the plaintiff retired before bringing a purported whistleblower claim and claims for defamation and intentional infliction of emotional distress based on statements made during an investigation. *Id.* at 1541, 1544. Unlike here, the claims in *Hansen* and *Miller* were based on speech and not based on adverse employment actions. Thus, *Miller* and *Hansen* illustrate only that Plaintiff properly limited the FAC to claims based on the District's employment decisions themselves.

Because Plaintiff's claims arise from employment decisions and not from speech or petitioning activity, the motion should be denied without further inquiry.

## VI.   PLAINTIFF'S CLAIMS ARE SUFFICIENTLY ALLEGED.

The District's motion challenges the legal sufficiency of the FAC by asserting a purported "manager" exception to retaliation claims, claiming immunity and arguing Plaintiff was required to pursue internal remedies. Thus, the motion should be considered under the Rule 12(b)(6) standard, which requires the court to accept as true all of Plaintiff's allegations and draw all reasonable inferences in her favor. *Planned Parenthood, supra*, 890 F.3d at 834; *Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). To the extent the District challenges the factual sufficiency of the FAC, the Court should: 1) deny the motion because there are genuine issues of material fact, or; 2) permit discovery so Plaintiff can "supplement evidence" before any decision is made." *Planned Parenthood, supra*, 890 F.3d at 834.

### A.   Plaintiff Engaged In "Protected Activity."

Title IX provides a private right of action for any person retaliated against for complaining about sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 180-181 (2005). Because reporting discrimination is critical to preventing discrimination, "[w]hen an employee communicates" a belief that discrimination occurred "that communication' virtually always" constitutes protected activity. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty*, 555 U.S. 271, 276 (2009)

The lack of an exception to the rule that "virtually any" communication about

discrimination is protected activity was confirmed in a Title VII case, *Demasters v. Carillion Clinic*, 796 F.3d 409, 423 (2d Cir. 2015). In *Demasters*, the court reversed a motion to dismiss where the plaintiff was terminated after helping another employee file a harassment complaint, even though the plaintiff's job was to counsel employees. *Id*. at 414-415, 422. The court held there was no reason to believe "Congress intended to excise a large category of workers" from protection. *Id*. at 422. The court reasoned that any exception would put in motion a "downward spiral" of enforcement by discouraging reporting by employees in the best position to assist others with claims. *Id*. at 422-23; *see Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 567-69, 579 (6th Cir. 2000) (even high-level affirmative action official is protected to prevent retaliation against person best able to oppose discrimination). *Id*. at 580.

*DeMasters, Johnson, Jackson* and *Crawford* all recognize – without exception - that encouraging reporting is essential to the goal of preventing discrimination. In an academic environment, victims of discrimination may fear retaliation if they pursue complaints against powerful professors. It is therefore essential to Title IX and Title VI's purpose of preventing discrimination to ensure that any employee of a college, especially a dean, can pursue a complaint with the Title IX Office on behalf of others without fear of reprisal. The District's own non-retaliation policy confirms its agreement that this is the law by prohibiting retaliation against "any employee" for "filing a complaint of unlawful discrimination/harassment and/or for participating in any manner in an investigation thereof." Thus, as a matter of law, Plaintiff's job duties did not preclude her from engaging in protected activity when she complained on behalf of students, participated as a witness and complained about retaliation.

The cases cited by the District do not support its unfounded assertion that reporting discrimination is protected activity only for certain employees. *Garcetti v. Ceballos*, 547 U.S. 410, 414-415 (2006) is a first amendment case. *Skare v. Extendicare Health Servs. Inc.*, 515 F.3d 836 (8th Cir. 2008) concerned a Minnesota whistleblower statute and not federal or California law, let alone discrimination. In

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

*Rosenfield v. GlobalTranz Enters., Inc.*, 811 F. 3d 282, 285 (9th Cir. 2015), the plaintiff was a human resources director, who was terminated after complaining about FLSA non-compliance. The district court granted summary judgment on the ground that the plaintiff was not entitled to protection under the FLSA because she never "filed any complaint." *Id.* at 285. The Ninth Circuit reversed, applying the FLSA's "fair notice" test and declining to apply a "manager rule" even to FLSA retaliation claims. *Id.* at 287. The court further held the plaintiff "complained" because defendant's president was responsible for FLSA compliance. *Id.* at 287-288.

   *McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996) is an FLSA case, decided 20 years before *Crawford*, that concerned a report by personnel director of possible FLSA violations who did not assist anyone in making a complaint. *Id* at 1486-87. Further, in *Rosenfield*, the Ninth Circuit declined to adopt *McKenzie's* "manager rule" even in FLSA cases. *Rosenfield, supra,* 811 F.3d at 287.

   The lone discrimination case cited by the District is *EEOC v. HBE*, 135 F.3d 543, 554 (8th Cir. 1997), also decided decades before *Crawford*, which held that a personnel director <u>did</u> engage in protected activity when he refused to carry out an illegal termination.[3] Further, in a recent case from the same Circuit, *Robinson v. Wichita State Univ.*, 2018 U.S. Dist. LEXIS 22983 (D. Kansas 2018, decided February 13, 2018) \*\*9, 11, the court held that <u>even a Title IX compliance officer</u> engages in protected activity where she files the complaint as opposed to just advising the defendant that it should investigate. *Id.* \*\*9, 11 (denying motion to dismiss where plaintiff reported and led investigation of sexual assault of student).

   Unlike an EEO Officer, whose responsibility is investigating discrimination claims and ensuring legal compliance, Plaintiff was an academic dean responsible for instructional programs. Thus, even if there were a manager's rule in discrimination

---

[3] Even where courts applied a "manager rule" it applied "only to managers in human resources departments . . . with specific duties related to investigating personnel issues." *Chapman v. Milwaukee Cnty.*, 151 F. Supp. 3d 892, 899-900 (E.D. Wis. 2015).

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1   cases, which there is not, it would not apply to Plaintiff.  Further, Plaintiff

2   complained about discrimination and complained again when she was retaliated

3   against and therefore engaged in "protected activity" regardless of her job duties.

4        **B.**    **Section 1102.5 Applies "Regardless" Of Job Duties.**

5        "It is a settled principle in California law that '[w]hen statutory language is . . .

6   clear and unambiguous there is no need for construction, and courts should not

7   indulge in it.'"  *In re Lance W.*, 37 Cal. 3d 873, 886 (1985).  California Labor Code

8   section 1102.5(b) provides that an employer shall not retaliate against an employee

9   for disclosing information "if the employee has reasonable cause to believe that the

10  information discloses a violation of state or federal statute . . . regardless of whether

11  disclosing the information is part of the employee's job duties."

12       Section 1102.5 is clear in its protection of whistleblowers "regardless" of

13  whether reporting is part of their job.  The District provides no authority for its claim

14  that "regardless of job duties" means anything other than what it says.[4]  Thus, as a

15  matter of law, Plaintiff engaged in protected activity <u>regardless</u> of her job duties.

16       **C.**    **FEHA Expressly Applies to Public Employers.**

17       California Government Code 12926, which defines the terms used in FEHA,

18  provides that the term "[e]mployer" includes "the state or any political or civil

19  subdivision of the state, and cities . . . ."  Cal. Gov. Code § 12926.  This definition of

20  "'employer' is [an] express declaration of the Legislature's intent to subject public

21  entities to liability for violations of FEHA, and a 'clear indication of legislative intent

22  that immunity [under [Gov. Code] sections 820.2 and 815.2] be withdrawn" for

23  _____

24  [4]The cases cited by the District. *Patten v. Grant Joint Union Sch. Dist.* 134 Cal. App.

25  4th 1378 (2005), *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191 (2012), *Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 970 (N.D. Cal. 2010) and *Lund v. Leprino*

26  *Foods Co.*, 2007 U.S. Dist. LEXIS 46705 (E.D. Cal. 2007), were all decided before Section 1102.5 was amended to add the language protecting employees "regardless" of

27  job duties.  Cal. Labor Code § 1102.5(a) as amend. by Ch 781 § 4.1 (SB 496), effective January 1, 2014.  Thus, to the extent those cases even considered the plaintiffs' job

28  duties, they are superseded by the express language of the amended statute.

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1 | FEHA claims. *DeJung v. Superior Court,* 169 Cal. App. 4th 533, 544, 546 (2008)

2 | Public employers are "directly liable" for FEHA violations *Id.* at 545

3 |     In *Dejung*, the court rejected the exact argument made by the District here

4 | under *Caldwell v. Montoya*, 10 Cal. 4th 972, 976-77 (1995). In *Caldwell*, the court

5 | held that a public entity is not *vicariously liable* for an individual official's actions.

6 | *Dejung, supra*, 169 Cal. App. 4th at 544, *Caldwell, supra*, 10 Cal. 4th at 989

7 | (emphasis in *Dejung*). However, the court "expressly declined" to decide "whether a

8 | government employer *as an entity*" can be sued." *Dejung, supra,* 169 Cal. App. 4th

9 | at 544-45 (emphasis added), *Caldwell, supra,* 10 Cal. 4th at 989 n. 9. *Dejung* settled

10 | this issue, holding that "FEHA provides a basis of direct liability" independent of any

11 | derivative liability addressed by immunity statutes. *DeJung, supra* 169 Cal. App. 4th

12 | at 545, (*quoting Farmers Ins. Group v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1014-

13 | 15 (1995)) Thus, the District is an "employer" under FEHA and has no immunity.

14 | **D.**    **Plaintiff Alleged A Disability Under FEHA.**

15 |     FEHA defines a "mental disability" as "any mental or psychological disorder

16 | or condition" such as an "emotional or mental illness" that "limits a major life

17 | activity." Cal. Gov. Code § 12926(j)(i). A condition limits a major life activity "if it

18 | makes the achievement" of the activity "difficult." Cal. Gov. Code § 12926(j)(1)(B).

19 | "Major life activities" are "broadly construed" and include "physical, mental, and

20 | social activities and working." Cal. Gov. Code § 12926(j)(i). Even temporary

21 | anxiety arising from work conditions constitutes a disability under FEHA. *Diaz v.*

22 | *Fed. Express Corp.*, 373 F.Supp.2d 1034, 1041, 1053 (C.D. Cal. 2005); *see also*

23 | *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 249, 253, 257-58 (2000) (PTSD

24 | suffered as a result of incident at work constituted protected  disability).

25 |     Plaintiff suffers from a diagnosed disorder, anxiety, which causes her to suffer

26 | feelings of being overwhelmed and other symptoms that limit her "major life

27 | activities," including working. Thus, Plaintiff's anxiety is a disability under FEHA.

28 |     The District relies on cases concerning allegations that anxiety or stress

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

1  prevented the plaintiff from working under a particular supervisor. *Higgins-Williams*
2  *v. Sutter Med. Found.*, 237 Cal. App. 4th 78, 84-85 (2015); *Estrada v. Gate Gourmet,*
3  *Inc.*, 2017 U.S. Dist. LEXIS 86848 *13-14 (C.D. Cal., decided June 6, 2017) and
4  *Burch* v. *Cal. DMV*, 2017 U.S. Dist. LEXIS 131780 *14 (E.D. Cal., decided
5  December 20, 2013) (inability to work under a particular supervisor because of
6  anxiety related to the supervisor's standard oversight does not constitute a disability.)
7  The District also cites to *Striplin* v. *Shamrock Foods Co.*, 731 F.App'x 618 (9th Cir.
8  2018) for the proposition that workplace stress related to oversight of an employee's
9  job performance is not a recognized disability. *Id.* at 620 (Trial Court opinion,
10 *Striplin v. Shamrock Foods Co.* 2016 U.S. Dist. LEXIS 39680 **15-16 (C.D. Cal.,
11 decided March 24, 2016).  Unlike the plaintiffs in *Higgins-Williams*, *Estrada* and
12 *Burch*, Plaintiff does not allege that her anxiety was caused by her supervisor.
13 Further, unlike in *Striplin*, Plaintiff does not allege that she was merely stressed by
14 the oversight of her job performance.  To the contrary, Plaintiff has diagnosed anxiety
15 which is precisely the type of disability contemplated by FEHA's broad protection.
16 Further, when Plaintiff told her supervisor she needed an accommodation, the District
17 placed her on leave and instructed her not to speak with anyone.  Thus, the District's
18 claim that Plaintiff should have submitted a medical certification merely highlights its
19 illegal interference with Plaintiff's access to a proper interactive process.
20  **E.    The Exhaustion of Internal Remedies Doctrine Does Not Apply.**
21  Employees who claim that "they have suffered employment-related
22 discrimination" do not need to exhaust internal remedies. *Schifando v. City of Los*
23 *Angeles,* 31 Cal. 4th 1074, 1092 (2003).  Thus, in a discrimination case, the employee
24 "may choose to ignore" internal procedures and proceed directly to the courts to
25 obtain relief under FEHA. *Ortega v. Contra Costa Community College Dist.,* 156
26 Cal. App. 4th 1073, 1083 (2007).  As a necessary corollary to this right, employees
27 need not exhaust internal remedies for other claims if the "resolution of those claims
28 would have a preclusive impact on the FEHA claim." *Id.* at 1086 (*quoting Williams*

21
**OPPOSITION TO SPECIAL MOTION TO STRIKE**

*v. Hous. Auth. of Los Angeles,* 121 Cal. App. 4th 708, 713 (2004)).

In *Ortega*, the plaintiff sued for discrimination and retaliation under FEHA, intentional infliction of emotional distress, and wrongful termination. *Ortega, supra*, 156 Cal. App. 4th at 1078. The court held that the plaintiff was not required to exhaust internal remedies on any of his claims. *Id* at 1086. The court reasoned it would be unfair to require internal resolution of any claims because it would have a preclusive impact on the FEHA claim. *Id*. Thus, the plaintiff properly bypassed internal remedies on all his claim, even the non-FEHA claims. *Id*.

Like her FEHA claim, Plaintiff's Section 1102.5 claim is based on the retaliation against her for reporting discrimination. Thus, like the common law claims in *Ortega*, Plaintiff could bypass internal procedures on all her claims because if she pursued internal remedies, it would risk findings that could be preclusive on FEHA issues like whether the District's reasons for its actions are pretextual.[5]

## VII.  PLAINTIFF ESTABLISHED A *PRIMA FACIE* CASE AND PRETEXT.

In a retaliation claim, the plaintiff must first establish a *prima facie* case by showing: 1) she engaged in protected activity; 2) she was subject to an adverse employment action; and 3) there was a causal link between the protected activity and the employer's action. *Ollier v. Sweetwater Union High Sch. Dist.,* 768 F.3d 843, 867 (9th Cir. 2014). Only a "minimal" showing is required. *Id*. Causation "may be inferred from circumstantial evidence" including the temporal proximity between the protected activity and the retaliatory action. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376

---

[5] The cases cited by the District are inapplicable. In *Westlake Cmty. Hosp. v. Superior Court*, 17 Cal. 3d 465, 487 (1976) the internal remedies doctrine did not apply because no internal remedy was available. In *Campbell v. Regents of California*, 35 Cal. 4th 311, 317 (2005), *Terris v. Cnty. of Santa Barbara*, 20 Cal. App. 5th 551, 554-55 (2018) and *Palmer v. Regents of the Univ. of California*, 107 Cal. App. 4th 899, 902 (2003), the plaintiffs alleged whistleblower claims that were not based on reporting discrimination as distinguished from other illegal acts. Unlike in *Terris, Palmer* and *Campbell*, Plaintiff's Section 1102.5 claim is based on retaliation for reporting discrimination and is asserted together with a FEHA claim.

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

(9th Cir. 1987); *Emeldi v. Univ. of Oregon.*, 698 F.3d 715, 726-27 (9th Cir. 2012).

After a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason" for its actions. *Id.* If the defendant can do so, the burden shifts back to the plaintiff to show that the reason is pretextual. *Id.* A plaintiff can show pretext by showing that a discriminatory reason more likely motivated the employer or that the "proffered explanation is unworthy of credence.'" *Stegall v. Citadel Broad. Co.* 350 F.3d 1061, 1068 (9th Cir. 2003). Temporal proximity between protected activity and an adverse employment action "can by itself" establish pretext and it evidences pretext even where the gap between protected activity and adverse employment actions is several months. *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003); *Yartzoff, supra*, 809 F.2d at 1376-77; *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-733).

Where alleged performance issues were not contemporaneously addressed, it suggests that the proffered non-retaliatory reasons are merely "*post hoc* rationalization[s]" for a retaliatory termination. *Ollier, supra,* 768 F.3d at 870; *see also Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1071 (9th Cir. 2003) (reason asserted for the first time in litigation was unworthy of credence). Similarly, when an employer starts closely watching an employee, it "strongly suggests the possibility of a search for a pretextual basis for discipline." *Yartzoff, supra,* 809 F.2d at 1377.

In *Ollier*, the plaintiffs sued a high school for Title IX retaliation after it fired a coach who supported their discrimination claims. *Ollier, supra*, 768 F.3d at 851 n.3. The defendant claimed it fired the coach due to issues with his temperament and rule violations. *Id.* at 869. The Ninth Circuit affirmed judgment for the plaintiffs. *Id* at 871. The court reasoned that pretext was established because the defendant's proffered reasons for the termination shifted and were inconsistent. *Id.* at 870-871.

Here, Plaintiff reported discrimination during summer break and the investigation did not conclude until November. Plaintiff then requested Nakajima and Gerwig be terminated after the District confirmed they engaged in discrimination.

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

Within weeks, Plaintiff was suddenly placed on administrative leave.  Then, within days of asserting that the decision to place her on leave was retaliatory, the District non-renewed Plaintiff's contract and kept her on unpaid leave until it terminated her. This "temporal proximity" between the complaints and the adverse employment actions is sufficient to support a *prima facie* case as well as providing circumstantial evidence of pretext.

There is also overwhelming evidence that the District's purported reasons for its actions are "unworthy of credence."  When Plaintiff was placed on leave, she was told it was so the District could investigate a purported "confidentiality issue."  Now, a year later, the District claims performance issues were part of the decision to place her on leave.  This new explanation is exactly the type of "*post hoc* rationalization" the court in *Ollier* held to be "unworthy of credence."  Further, the e-mails about alleged performance issues were not sent by Dr. Kahn to human resources until <u>after</u> Plaintiff demanded to know why she was under investigation.  Several of these e-mails were months old and none were discussed with Plaintiff prior to the notice of termination.  The District fails to explain why Kahn suddenly changed his mind after promising to support Plaintiff, but his hasty collection of e-mails is strong evidence the District's made the decision to terminate for illegitimate reasons months earlier and was searching for purportedly legitimate bases after-the-fact.

The District's sham investigation is also evidence of pretext. Despite purporting to investigate Plaintiff's allegation of retaliation, Love did not interview any decision-maker, does not mention any policies relating to discrimination or retaliation and did not analyze the timing of the District's decisions.   With respect to the alleged "confidentiality" issue, Love does not dispute that it was proper for Plaintiff to forward Finkenthal the e-mail about the airsoft gun incident, especially after Norman instructed her to enlist his help in observing Nakajima and Gerwig.  Nonetheless, Love adopts the absurd theory that there was a conspiracy to "leak" the information to Finkenthal's wife.  An honest investigation could not possibly conclude that this routine exchange

**OPPOSITION TO SPECIAL MOTION TO STRIKE**

of information between a dean and Department Chair is unusual, let alone that it evidences a "leaking" conspiracy.  Love also adopts nonsensical claim that Plaintiff somehow "waited 18 months" to report the airsoft gun incident to human resources, ignoring the fact that she immediately reported it to the police and her supervisor.

The timing of the District's actions and the complete lack of credibility of its purported reasons for its actions create genuine issues of material fact on the issue of pretext.  Thus, Defendant's motion should be denied.

## VIII. PLAINTIFF SHOULD BE AWARDED HER ATTORNEYS' FEES.

If a special motion to strike "is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion."  Cal Code Civ. Proc. § 425.16(c)(1); *California Back Specialists Med. Group v. Rand*, 160 Cal. App. 4th 1032, 1037-38 (2008).

The law is clear that the anti-SLAPP statute does not apply to federal claims and that employment decisions are not protected activity.  Thus, the District's anti-SLAPP motion is frivolous and Plaintiff should be awarded her attorneys' fees.

## IX.   PLAINTIFF MUST BE PERMITTED ADEQUATE DISCOVERY.

Plaintiff has a right to conduct discovery and supplement her opposition so that she is afforded the procedural rights set forth in Rule 56(f).  *Planned Parenthood, supra*, 890 F.3d at 834.  Thus, if the court does not deny the District's motion on the pre-discovery record, it should continue the hearing and permit Plaintiff to conduct discovery so that she has a proper opportunity to obtain documents in the exclusive possession of the District and to depose the District's employees and other witnesses.

## X.   CONCLUSION

For the above reasons, the special motion to strike should be denied.

Dated: April 17, 2019

**DWIN LEGAL, APC**

By: __/s/ Evan Dwin__

Evan Dwin
Attorneys for Plaintiff KATHRYN
KAILIKOLE

**OPPOSITION TO SPECIAL MOTION TO STRIKE**