1 | **DWIN LEGAL, APC**
Evan Dwin (SBN 241027)
2 | 2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011
3 | Tel: (760) 536-6471
4 | Fax: (760) 585-4649
Email: edwin@dwinlegal.com
5 |
Attorneys for Plaintiff
6 | KATHRYN KAILIKOLE
7 |
8 |
9 | **UNITED STATES DISTRICT COURT**
10 | **SOUTHERN DISTRICT OF CALIFORNIA**
11 |

12 | KATHRYN KAILIKOLE, an individual,

Case No:  3:18-cv-02877-AJB-MSB

13 | 

Plaintiff,

**DECLARATION OF EVAN DWIN IN SUPPORT OF PLAINTIFF KATHRYN KAILIKOLE'S OPPOSITION TO DEFENDANT PALOMAR COMMUNITY COLLEGE DISTRICT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**

14 | 

15 | v.

16 | PALOMAR COMMUNITY COLLEGE DISTRICT, a governmental entity; and DOES 1 through 25, inclusive,

17 |

18 |

**DATE: June 20, 2019**
**TIME: 2:00 p.m.**
**PLACE: Courtroom 4A**

19 | Defendants.

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

DECLARATION OF EVAN DWIN IN SUPPORT OF OPPOSITION TO SPECIAL MOTION
TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. § 425.16

I, Evan Dwin, hereby declare and state as follows:

1.    I am an attorney licensed to practice before this Court, and the principal of Dwin Legal, APC, counsel of record for Plaintiff Kathryn Kailikole ("Plaintiff").   I make this Declaration in support of Plaintiff's Opposition to Defendant Palomar Community College District's (the "District") Special Motion to Strike Plaintiff's First Amended Complaint Pursuant to Cal. Code Civ. Proc. § 425.16.  I have personal knowledge of the matter contained herein.  If called as a witness I could and would testify competently to the matters set forth in herein.

2.    Attached hereto as **Exhibit 1** is a true and correct copy of an email from me to Andrea Naested, counsel for the District, dated January 30, 2018.

3.    Attached hereto as **Exhibit 2** is a true and correct copy of an e-mail Ms. Naested sent to me, which is dated February 01, 2018.

4.    Attached hereto as **Exhibit 3** is a true and correct copy of an email I sent to Ms. Naested on February 16, 2018.

5.    Attached hereto as **Exhibit 4** is an e-mail Ms. Naested sent to me on February 20, 2018.

6.    Attached hereto as **Exhibit 5** is a true and correct copy of a Notice of Proposed Non-Renewal dated February 26, 2018 that the District sent to Plaintiff.

7.    Attached hereto as **Exhibit 6** is a true and correct copy of an e-mail I sent to Ms. Naested on February 27, 2018.

8.    Attached hereto as **Exhibit 7** is a true and correct copy of an e-mail from Ms. Naested to me, dated February 27, 2018.

9.    On January 9, 2019, I sent a letter, via e-mail, to Kevonna Ahmad and Adam Sloustcher, counsel for the District, in response to the District's threat to file an anti-SLAPP motion in this Action.  I advised Ms. Ahmad and Mr. Sloustcher in writing of the recent opinion by the California Supreme Court in *Park v. Board of Trustees of the University of California*, 2 Cal. 5th 1057 (2018) and by the

DECLARATION OF EVAN DWIN IN SUPPORT OF OPPOSITION TO SPECIAL MOTION
TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. § 425.16

California Court of Appeal in *Nam v. Regents of California*, 1 Cal. App. 5th 1176 (2016). A true and correct copy of that e-mail is attached hereto as **Exhibit 8**.

10. There has not yet been a Rule 26(f) Conference in this Action and discovery has not commenced. Plaintiff has not had an opportunity to request and review documents in the exclusive possession of the District, including her own e-mails and e-mails by District administrators regarding its employment decisions and she has not had the opportunity to depose Kahn, Norman, Love, or other witnesses as is her right under the Rules of Civil Procedure.

I declare under penalty perjury under the laws of the United States of America and California that the foregoing is true and correct.

Executed this 17th day of April 2019 in Carlsbad, California.

_/s/_ Evan Dwin
Evan Dwin

---

3

DECLARATION OF EVAN DWIN IN SUPPORT OF OPPOSITION TO SPECIAL MOTION
TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. § 425.16

# INDEX OF EXHIBITS

| Ex. | Pages | Description |
|-----|-------|-------------|
| 1 | 1-4 | E-mail from Evan Dwin to Andrea Naested dated January 30, 2018. |
| 2 | 5-8 | E-mail from Andrea Naested to Evan Dwin dated February 1, 2018. |
| 3 | 9-10 | E-mail from Evan Dwin to Andrea Naested dated February 16, 2018. |
| 4 | 11-12 | E-mail from Andrea Naested to Evan Dwin dated February 20, 2018. |
| 5 | 13-14 | Notice of Proposed Non-Renewal dated February 26, 2018. |
| 6 | 15-17 | E-mail from Evan Dwin to Andre Naested dated February 27, 2018. |
| 7 | 18-22 | E-mail from Andrea Naested to Evan Dwin dated February 27, 2018. |
| 8 | 23-27 | Letter from Evan Dwin to Kevonna Ahmad and Adam Sloustcher dated January 9, 2019. |

4

DECLARATION OF EVAN DWIN IN SUPPORT OF OPPOSITION TO SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. § 425.16

# EXHIBIT 1

**Evan Dwin**

| | |
|---|---|
| **From:** | Evan Dwin |
| **Sent:** | Tuesday, January 30, 2018 10:18 PM |
| **To:** | Andrea |
| **Subject:** | RE: Kathryn Kailikole |

Dear Ms. Naested,

I write to follow up on our call from last week, and to request Dr. Kailikole's employment records.

In accordance with Labor Code section 1198.5, please provide me with Dr. Kailikole's entire personnel file. Pursuant to the statute, this file necessarily includes any documents related to "any grievance" concerning Dr. Kailikole as well as any document concerning her performance. Accordingly, among other things, Palomar College should provide copies of all documents relating the investigation that prompted Palomar to place Dr. Kailikole on paid leave.

In the meantime, on our call, you advised me that you would try to obtain further information regarding the subject matter of the investigation. The requested information included at least advising me of the department to which the investigation relates, as well as identifying the documents constituting the purported "confidential information" alleged to have been disclosed. Please update me on the status of that inquiry.

In addition, pursuant to Labor Code section 226(c), please also provide me with all Dr. Kailikole's pay statements and other payroll documents within 21 days of this letter. Finally, in accordance with Labor Code section 432, please also provide me with all documents signed by Dr. Kailikole since she has been an employee of Palomar College.

If it is more convenient for you, I will accept the documents electronically.

Thank you for your cooperation in this matter.

Sincerely,
Evan Dwin


Evan Dwin
Dwin Legal, APC
2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011
Phone: 760-536-6471
Fax: 760-585-4649
edwin@dwinlegal.com

**From:** Andrea [mailto:naested@aol.com]
**Sent:** Tuesday, January 23, 2018 3:49 PM
**To:** Evan Dwin <edwin@dwinlegal.com>
**Subject:** RE: Kathryn Kailikole

Dear Mr. Dwin,

Our law firm represents the Palomar Community College District. Your email to Dr. Norman (below) requests that the District communicate with you directly regarding Dr. Kailikole, and also requests that the District not contact Dr. Kailikole directly. Please be advised that the District has a right as an employer to communicate with Dr. Kailikole directly regarding employment related matters. For example, the District will send communications directly to Dr. Kailikole

Exhibit 1
P. 1

regarding the currently pending workplace investigation such as notification of when her interview will take place.  Pursuant to your request that the District communicate with you about these matters, the District will copy you on these communications.

You also requested that Dr. Norman call you to discuss the District's letter to Dr. Kailikole dated December 14, 2017.  Please direct any questions concerning this matter to my attention.

Sincerely,
Andrea Naested


Andrea Naested
Currier & Hudson
P.O. Box 910329
San Diego, CA 92191
Ph: 858-481-2429
Fax: 858-481-2439
www.currierhudson.com


CONFIDENTIALITY – The information contained in this message is intended only for the personal and confidential use of the designated recipient(s) named above.  This message is a communication from attorneys or their agents relating to pending legal matters and, as such, is intended to be privileged and confidential.  If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail or telephone at 858-481-2429 and destroy this message. Thank you.


**From:** Evan Dwin [mailto:edwin@dwinlegal.com]
**Sent:** Tuesday, January 16, 2018 4:15 PM
**To:** Norman, Lisa M. <lnorman@palomar.edu>
**Subject:** Kathryn Kailikole

Dear Ms. Norman,

I am an attorney representing Dr. Kathryn Kailikole in connection with her employment with Palomar College.  Accordingly, please direct any further communications regarding Dr. Kailikole to me and do not contact Dr. Kailikole directly.

As I mentioned in my voicemail to you this afternoon, please call me to discuss the letter you provided to Dr. Kailikole on December 14, 2017.  My phone number is 760-536-6471 or you can e-mail me so can set up a specific time for a telephone conference.

Thank you for your cooperation in this matter.  I look forward to speaking with you.

Sincerely,
Evan Dwin

Evan Dwin
Dwin Legal, APC
2121 Palomar Airport Road, Suite 170

Exhibit 1
P. 2

Carlsbad, CA 92011
Phone: 760-536-6471
Fax: 760-585-4649
edwin@dwinlegal.com

Exhibit 1
P. 3

# EXHIBIT 2

**Evan Dwin**

| | |
|---|---|
| **From:** | Andrea <naested@aol.com> |
| **Sent:** | Thursday, February 01, 2018 2:41 PM |
| **To:** | Evan Dwin |
| **Subject:** | RE: Kathryn Kailikole |

Dear Mr. Dwin,

This confirms receipt of your request for a copy of Dean Kailikole's personnel file, payroll records and documents signed by her (pursuant to Labor Code section 432).  The District is gathering the documents and I expect to send them to you electronically next week.

Your email states that with respect to personnel records, "pursuant to the statute, this file necessarily includes any documents related to "any grievance" concerning Dr. Kailikole as well as any document concerning her performance."  Dr. Kailikole's performance evaluations are included with her personnel file records, however, any grievances and complaints against her (if they exist), would only be included in her personnel file if she had been provided with a copy of the materials prior to placement in her file.

You also requested to know the department to which the pending investigation relates, and the specific documents that Dr. Kailikole is alleged to have disclosed.   The relevant department is the Physics/Engineering Department.  The District is not identifying the documents at this time due to the pendency of the investigation.

Please note that Shawna Cohen in the District's Human Resources Department will be emailing Dr. Kailikole in the next week or so to schedule an interview with the investigator, and will copy you on that communication.

Sincerely,
Andrea Naested


Andrea Naested
Currier & Hudson
P.O. Box 910329
San Diego, CA 92191
Ph: 858-481-2429
Fax: 858-481-2439
www.currierhudson.com


CONFIDENTIALITY – The information contained in this message is intended only for the personal and confidential use of the designated recipient(s) named above.  This message is a communication from attorneys or their agents relating to pending legal matters and, as such, is intended to be privileged and confidential.  If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail or telephone at 858-481-2429 and destroy this message. Thank you.

Exhibit 2
P. 1

**From:** Evan Dwin [mailto:edwin@dwinlegal.com]
**Sent:** Tuesday, January 30, 2018 10:18 PM
**To:** Andrea <naested@aol.com>
**Subject:** RE: Kathryn Kailikole

Dear Ms. Naested,

I write to follow up on our call from last week, and to request Dr. Kailikole's employment records.

In accordance with Labor Code section 1198.5, please provide me with Dr. Kailikole's entire personnel file. Pursuant to the statute, this file necessarily includes any documents related to "any grievance" concerning Dr. Kailikole as well as any document concerning her performance. Accordingly, among other things, Palomar College should provide copies of all documents relating the investigation that prompted Palomar to place Dr. Kailikole on paid leave.

In the meantime, on our call, you advised me that you would try to obtain further information regarding the subject matter of the investigation. The requested information included at least advising me of the department to which the investigation relates, as well as identifying the documents constituting the purported "confidential information" alleged to have been disclosed. Please update me on the status of that inquiry.

In addition, pursuant to Labor Code section 226(c), please also provide me with all Dr. Kailikole's pay statements and other payroll documents within 21 days of this letter. Finally, in accordance with Labor Code section 432, please also provide me with all documents signed by Dr. Kailikole since she has been an employee of Palomar College.

If it is more convenient for you, I will accept the documents electronically.

Thank you for your cooperation in this matter.

Sincerely,
Evan Dwin


Evan Dwin
Dwin Legal, APC
2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011
Phone: 760-536-6471
Fax: 760-585-4649
edwin@dwinlegal.com

**From:** Andrea [mailto:naested@aol.com]
**Sent:** Tuesday, January 23, 2018 3:49 PM
**To:** Evan Dwin <edwin@dwinlegal.com>
**Subject:** RE: Kathryn Kailikole

Dear Mr. Dwin,

Our law firm represents the Palomar Community College District. Your email to Dr. Norman (below) requests that the District communicate with you directly regarding Dr. Kailikole, and also requests that the District not contact Dr. Kailikole directly. Please be advised that the District has a right as an employer to communicate with Dr. Kailikole directly regarding employment related matters. For example, the District will send communications directly to Dr. Kailikole regarding the currently pending workplace investigation such as notification of when her interview will take place. Pursuant to your request that the District communicate with you about these matters, the District will copy you on these communications.

Exhibit 2
P. 2

You also requested that Dr. Norman call you to discuss the District's letter to Dr. Kailikole dated December 14, 2017.  Please direct any questions concerning this matter to my attention.

Sincerely,
Andrea Naested


Andrea Naested
Currier & Hudson
P.O. Box 910329
San Diego, CA 92191
Ph: 858-481-2429
Fax: 858-481-2439
www.currierhudson.com


CONFIDENTIALITY — The information contained in this message is intended only for the personal and confidential use of the designated recipient(s) named above.  This message is a communication from attorneys or their agents relating to pending legal matters and, as such, is intended to be privileged and confidential.  If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail or telephone at 858-481-2429 and destroy this message. Thank you.



**From:** Evan Dwin [mailto:edwin@dwinlegal.com]
**Sent:** Tuesday, January 16, 2018 4:15 PM
**To:** Norman, Lisa M. <lnorman@palomar.edu>
**Subject:** Kathryn Kailikole

Dear Ms. Norman,

I am an attorney representing Dr. Kathryn Kailikole in connection with her employment with Palomar College.  Accordingly, please direct any further communications regarding Dr. Kailikole to me and do not contact Dr. Kailikole directly.

As I mentioned in my voicemail to you this afternoon, please call me to discuss the letter you provided to Dr. Kailikole on December 14, 2017.  My phone number is 760-536-6471 or you can e-mail me so can set up a specific time for a telephone conference.

Thank you for your cooperation in this matter.  I look forward to speaking with you.

Sincerely,
Evan Dwin

Evan Dwin
Dwin Legal, APC
2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011
Phone: 760-536-6471
Fax: 760-585-4649
edwin@dwinlegal.com

Exhibit 2
P. 3

# EXHIBIT 3

## Evan Dwin

**From:** Evan Dwin
**Sent:** Friday, February 16, 2018 4:43 PM
**To:** 'Andrea'
**Subject:** Kathryn Kailikole

Dear Ms. Naested,

In your February 1, 2018 e-mail to me, you indicated that Shawna Cohen would be e-mailing Dr. Kailikole to "schedule an interview" and that I would be cc'ed on that e-mail.

On February 15, 2018, Dr. Kailikole received an e-mail from Shawna Cohen. I was not cc'ed on that e-mail. Additionally, in the e-mail, Ms. Cohen advises Dr. Kailikole that she may contact the Administrative Association to "arrange for representation." Ms. Cohen did not mention or acknowledge my current representation of Dr. Kailikole in this matter. I am concerned about Ms. Cohen offering advice to my client about representation without at least including me on the e-mail or by first asking you to discuss it with me prior to e-mailing Dr. Kailikole. Please reiterate to Ms. Cohen that, at a minimum, she should cc me on any communications with my client. Further, please confirm that Ms. Cohen understands that Dr. Kailikole is represented by counsel and that I should be present for any interview that may take place.

In addition, we have not yet received a response to my e-mail of February 1, 2018 regarding Dr. Kailikole's personnel file. As I mentioned, under the express language of Labor Code section 1198.5, Dr. Kailikole's personnel file must include documents related to "any grievance concerning" her. This obviously includes any documents related to the investigation referenced by Ms. Cohen. Your claim that District need not produce such documents unless they were already provided to Dr. Kailikole is not supported by any authority to which I am aware and, in fact, is contrary to the statutory purpose of providing employees with access to documents their employers maintain about them. Indeed, as the court held in *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal. App. 4th 110, 124 (1997), Section 1198.5 defines "personnel file" broadly to prevent employers from assigning documents to a differently labeled file, then refusing access to the documents by claiming that they are not part of the personnel file. Accordingly, please confirm that such documents will be produced and that such production will happen before any interview with my client.

Finally, in case you are not aware, prior to this investigation being conducted against her, Dr. Kailikole reported that two professors in the Physics/Engineering Department were posting racist and sexually explicit materials in laboratories utilized by students and other faculty in violation of Title IX and the California Government Code, as well as other misconduct. Dr. Kailikole is informed and believes that the investigation against her is in retaliation for her reporting that illegal conduct.

Thank you for your cooperation in this matter. We will wait to hear from you regarding the production of the investigation file and confirmation that Dr. Kailikole will have her attorney present for any interview conducted by Mr. Love.

Sincerely,
Evan Dwin

Evan Dwin
Dwin Legal, APC
2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011
Phone: 760-536-6471
Fax: 760-585-4649

Exhibit 3
P. 1

EXHIBIT 4

**Evan Dwin**

| | |
|---|---|
| **From:** | Andrea <naested@aol.com> |
| **Sent:** | Tuesday, February 20, 2018 12:51 PM |
| **To:** | Evan Dwin |
| **Subject:** | RE: Kathryn Kailikole - Personnel File and Payroll Records |

Dear Mr. Dwin,

This confirms that the District's Human Resources Department will copy you on communications to Dr. Kailikole about the investigation. This also acknowledges that the District is aware that Dr. Kailikole is represented by counsel and that you, as her counsel, will be present during her interview. Please note that employees represented by employee organizations have additional rights to union representation, separate from any right to counsel, that's why the District advised Dr. Kailikole that she may contact the Administrative Association to arrange for such union representation.

You have requested that the District produce any documents related to "any grievance concerning" Dr. Kailikole, and any "documents related to the investigation" before Dr. Kailikole's interview. As you are aware, Dr. Kailikole has a right to a copy of her personnel file under Labor Code § 1198.5 and Education Code § 87031 within 30 days, and that "personnel records" are defined to include "the records that the employer maintains relating to the employee's performance or to any grievance concerning the employee." (Labor Code § 1198.5 (a).)  It is my understanding that there are no formal written grievances or complaints against Dr. Kailikole.

With respect to information in documents related to the investigation, these documents are not personnel records.  While the California Supreme Court has interpreted "personnel record" in the context of community colleges and K-12 school districts broadly, the Court has held a district is able to conduct its own review and investigation before deciding whether or not any materials that may affect an employee's employment status should be included as part of a personnel file.  (*Miller v. Chico Unified School Dist.* (1979) 24 Cal.3d 703, 712–713).  In ruling that materials affecting an employee's employment status must be contained in the personnel file and that employees must be provided a reasonable opportunity to respond to them, the Court stated: "In requiring notification within a reasonable time <u>we foresee that a school district may wish to weigh the accuracy, relevance, good faith, or usefulness of any information it receives before deciding to place the information in its employee's personnel file</u>." (See *Miller,* 724 at FN 11 (emphasis added).)  Thus, the District is conducting its own review and investigation before deciding whether or not any documents relevant to the investigation should be included as part of Dr. Kailikole's personnel file.  Should the District determine that such documents should be contained in her personnel file, Dr. Kailikole will be provided with reasonable notice and an opportunity to respond prior to placement in her personnel file.

Sincerely,
Andrea Naested


Andrea Naested
Currier & Hudson
P.O. Box 910329
San Diego, CA 92191
Ph: 858-481-2429
Fax: 858-481-2439
www.currierhudson.com


CONFIDENTIALITY – The information contained in this message is intended only for the personal and confidential use of the designated recipient(s) named above.  This message is a communication from attorneys or their agents relating to

Exhibit 4
P. 1

# EXHIBIT 5



**PALOMAR COLLEGE®**  1140 West Mission Road, San Marcos, California 92069-1487 • 760-744-1150 • www.palomar.edu
Learning for Success

Joi Lin Blake, Ed.D.
Superintendent/President

**Governing Board**
Nina Deerfield
Mark R. Evilsizer
John J. Halcón, Ph.D.
Nancy Ann Hensch
Paul P. McNamara
Student Trustee:
ASG President

**Office of the President**

February 26, 2018

**PERSONAL & CONFIDENTIAL**

<u>**DELIVERY BY EMAIL AND REGULAR U.S. MAIL**</u>

Dr. Kathryn Kailikole
P.O. Box 308
Suisan City, CA 94585-0308

Re:   **Twenty-Four (24) Hour Notice Pursuant to Government Code § 54957**

Dear Dr. Kailikole:

This letter constitutes formal notice that the Governing Board of the Palomar Community College District ("District") will consider, pursuant to Education Code Section 72411 and Section 2 of your employment contract, whether to non-renew your employment contract as Dean, Instructional, Mathematics and the Natural and Health Sciences.

The possible Board action is scheduled to take place during a closed session of the Governing Board on February 27, 2018, at approximately 5:00 p.m., at the District's Governing Board room, SSC-1, Student Services Building, located at 1140 West Mission Road, San Marcos, California, 92069.

Pursuant to Government Code section 54957, you may request that the matter be heard in an open session rather than a closed session.  If you want the matter to be heard in an open session rather than a closed session, you must make this request in writing to me so that I actually receive it no later than February 27, 2018, at 10:00 a.m.  At either a closed session or an open session, you and/or your representative will have the opportunity to present any oral or written statements and any other information that you believe appropriate, but the session will not be a formal evidentiary hearing within the meaning of California Code of Civil Procedure § 1094.5.

If you have any questions, please contact me.

Sincerely,

Lisa Norman, Ed.D., J.D.
Assistant  Superintendent/Vice President, Human Resource Services
PALOMAR COMMUNITY COLLEGE DISTRICT

cc:  Evan Dwin, Attorney (by email edwin@dwinlegal.com)

Exhibit 5
P. 1

# EXHIBIT 6

**Evan Dwin**

| | |
|---|---|
| **From:** | Evan Dwin |
| **Sent:** | Tuesday, February 27, 2018 7:47 AM |
| **To:** | Andrea |
| **Subject:** | Kathryn Kailikole |
| | |
| **Importance:** | High |

Dear Ms. Naested,

I write in response to a letter from Dr. Lisa Norman that Dr. Kailikole received yesterday. In the letter, Dr. Norman, advises Dr. Kailikole that the Board is considering whether to non-renew Dr. Kailikole's contract. The letter further advises that the action is scheduled to take place during a closed meeting "at approximately 5:00 p.m." on February 27, 2018. The letter was sent via e-mail at approximately 3:08 p.m. Dr. Norman also states that the letter was sent by mail but Dr. Kailikole has not received it by mail.

Dr. Norman's letter states that it "constitutes formal notice" that the Board of the Palomar Community College District (the "District") will consider whether to non-renew Dr. Kailikole's contract as Dean, Instructional, Mathematics and the Natural Health Sciences. The letter does not state any reason why the District is considering this action.

As the letter seems to acknowledge, pursuant to Government Code section 54957(b)(2), Dr. Kailikole is entitled to notice – 24 hours in advance of the meeting – of her right to have any complaint or charge against her heard in an open session rather than a closed session. Dr. Norman's letter fails to meet this requirement in several material respects.

First, Section 54957(b)(2) requires that the notice be "delivered to the employee personally or by mail at least 24 hours before the time for the holding the session." On its face, Dr. Norman's letter fails to meet this requirement because it was sent by e-mail and the mailing was too late to be delivered to Dr. Kailikole more than 24 hours in advance of the meeting. In addition, Dr. Norman demands that Dr. Kailikole advise as to whether she is requesting an open meeting "no later than February 27, 2018 at 10:00 a.m" which renders the notice several hours shorter than the 24 hours required by law. Further, the letter lists the time of the meeting as 5:00 p.m, while the agenda for the meeting which states that the closed session beings at 4:00 p.m. Thus, the notice is defective in numerous and material aspects and is insufficient to apprise Dr. Kailikole of her rights sufficiently in advance of this meeting.

In addition, it not clear whether, in taking possible action against Dr. Kailikole, the District is considering any charges or complaints against Dr. Kailikole. For example, the letter does not mention the pending investigation of Dr. Kailikole, which Dr. Kailikole believes is in retaliation for reporting improper conduct by members of the faculty who violated the District's rules and applicable law against harassment based on sex and race. Given that Dr. Kailikole's interview with the investigator is tomorrow, the investigation is incomplete and any action by the District at this point related to Dr. Kailikole's employment contravenes Dr. Kailikole's due process rights and general principles of fairness. Indeed, two months after being abruptly placed on paid leave, Dr. Kailikole still does not know of what she is being accused. Further, Dr. Kailikole has been ordered not to discuss the investigation with anyone and to maintain confidentiality. This instruction, coupled with the fact that Dr. Kailikole does not know of what she is being accused, rendered it impossible to for her to gather evidence in her defense. Thus, any proceedings related to her contract are premature and fundamentally unfair.

Given the facially defective and opaque nature of the notice, it is difficult for Dr. Kailikole to make an informed decision regarding how to exercise her rights. However, and without waiver of Dr. Kailikole's right to further challenge the validity of the notice at a later time, Dr. Kailikole hereby requests an open session wherein she can present a statement regarding her excellent job performance and her general confusion and disappointment related to the lack of transparency surrounding the District's actions in placing her on paid leave.

Exhibit 6
P. 1

Further, because Dr. Kailikole has been ordered to maintain confidentiality regarding the investigation, Dr. Kailikole requests that she be informed in advance of the meeting of the scope of the issues being considered by the District and what it believes Dr. Kailikole is entitled to discuss at the open meeting.  Dr. Kailikole further requests that a closed session be available – at her option - for parts of the proceedings that involve the discussion of matters that are confidential.

Please confirm receipt of this e-mail and that it will be provided immediately to Dr. Norman.  Please also provide more details regarding the purpose of the meeting and scope of what the District expects will be discussed.

Thank you for your cooperation in this matter.

Sincerely,
Evan Dwin

Evan Dwin
Dwin Legal, APC
2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011
Phone: 760-536-6471
Fax: 760-585-4649
edwin@dwinlegal.com

Exhibit 6
P. 2

EXHIBIT 7

**Evan Dwin**

| | |
|---|---|
| **From:** | Andrea <naested@aol.com> |
| **Sent:** | Tuesday, February 27, 2018 3:11 PM |
| **To:** | Evan Dwin |
| **Subject:** | RE: Kathryn Kailikole |
| **Attachments:** | BP-2350-Speakers.pdf |

Dear Mr. Dwin,

Your email this morning raised a number of issues, including that the District's 24-hour notice failed to comply with the Brown Act because it was sent by e-mail and also mailed out too late to be delivered to Dr. Kailikole at least 24 hours in advance of the meeting.  Please note that Dr. Kailikole received "actual notice" since she actually received the notice by email at least 24 hours in advance of the session before the Board.

In addition, your email states it's unclear whether in taking possible action to non-renew Dr. Kailikole's employment contract, the Board "is considering any complaints or charges against" her.  The Board will not consider complaints and charges against Dr. Kailikole at the meeting tonight, but simply consider whether to non-renew her employment contract as it has discretion to do under Section 2 of the contract and Education Code section 72411.  The courts have held that simply considering whether to dismiss a public employee, where the dismissal is not based on accusations of misconduct, does not amount to a "hearing of complaints or charges" and therefore does not require advance notice to the employee under the Brown Act (*Moreno v. City of King* (App. 6 Dist. 2005) 25 Cal.Rptr.3d 29).  In this case, the District provided a 24-hour notice out of an abundance of caution even though it is not required to provide such notice since the Board will not consider "complaints or charges" in closed session.

You requested an open session Board meeting so that Dr. Kailikole can present a statement, and also requested closed session "for parts of the proceedings that involve the discussion of matters that are confidential."  Please note that Dr. Kailikole can elect to present a statement to the Board during "public comment," and that the District will keep the closed session matter on the agenda for the Board to consider whether to take action to non-renew her employment contract under Section 2 of the contract and Education Code section 72411.  If Dr. Kailikole wishes to make a statement to the Board in open session, she should complete a written request to address the Governing Board at the beginning of the meeting (like all speakers that wish to address the Board pursuant to Board Policy 2350).  Please see that attached Board Policy.

You also requested that Dr. Kailikole be informed in advance of the Board meeting about the scope of the issues being considered by the District and what it believes Dr. Kailikole "is entitled to discuss at the open meeting."  Please note the Board will not consider complaints and charges, but simply consider whether to non-renew Dr. Kailikole's contract as it routinely does for administrators employed by contract.  Please note further that with respect to the content of Dr. Kailikole's comments in open session, the Brown Act broadly defines the subject matter to be discussed at Board meetings as "any item of interest to the public ... that is within the subject matter of the legislative body" in Government Code section 54954.3(a), and that Section 54954.3(c) further prohibits the legislative body of a local agency from limiting public criticism of the policies, procedures, programs, or services of the agency, or of the acts or omissions of the legislative body.  In addition, Board meetings are limited public forums and, as such, while the District may limit the subject matter to be discussed (for example, to subjects within the jurisdiction of the Board), it may not limit the views which may be expressed on such subjects without violating state and federal constitutional speech and viewpoint protections. *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F.Supp. 719 (C.D. Cal. 1996).

Sincerely,
Andrea Naested

Exhibit 7
P. 1

**Andrea Naested**
Currier & Hudson
P.O. Box 910329
San Diego, CA 92191
Ph: 858-481-2429
Fax: 858-481-2439
www.currierhudson.com

CONFIDENTIALITY – The information contained in this message is intended only for the personal and confidential use of the designated recipient(s) named above.  This message is a communication from attorneys or their agents relating to pending legal matters and, as such, is intended to be privileged and confidential.  If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail or telephone at 858-481-2429 and destroy this message. Thank you.

**From:** Evan Dwin [mailto:edwin@dwinlegal.com]
**Sent:** Tuesday, February 27, 2018 11:24 AM
**To:** Andrea <naested@aol.com>
**Subject:** RE: Kathryn Kailikole

Thank you, Andrea.

Evan Dwin
Dwin Legal, APC
2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011
Phone: 760-536-6471
Fax: 760-585-4649
edwin@dwinlegal.com

**From:** Andrea [mailto:naested@aol.com]
**Sent:** Tuesday, February 27, 2018 11:17 AM
**To:** Evan Dwin <edwin@dwinlegal.com>
**Subject:** RE: Kathryn Kailikole

Dear Mr. Dwin,

This confirms receipt of your e-mail and that it has been provided to Dr. Norman.  I will respond to the issues you've raised later today.

Sincerely,
Andrea Naested

Andrea Naested
Currier & Hudson
P.O. Box 910329
San Diego, CA 92191

Exhibit 7
P. 2

Ph: 858-481-2429
Fax: 858-481-2439
www.currierhudson.com

CONFIDENTIALITY – The information contained in this message is intended only for the personal and confidential use of the designated recipient(s) named above. This message is a communication from attorneys or their agents relating to pending legal matters and, as such, is intended to be privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail or telephone at 858-481-2429 and destroy this message. Thank you.

**From:** Evan Dwin [mailto:edwin@dwinlegal.com]
**Sent:** Tuesday, February 27, 2018 7:47 AM
**To:** Andrea <naested@aol.com>
**Subject:** Kathryn Kailikole
**Importance:** High

Dear Ms. Naested,

I write in response to a letter from Dr. Lisa Norman that Dr. Kailikole received yesterday. In the letter, Dr. Norman, advises Dr. Kailikole that the Board is considering whether to non-renew Dr. Kailikole's contract. The letter further advises that the action is scheduled to take place during a closed meeting "at approximately 5:00 p.m." on February 27, 2018. The letter was sent via e-mail at approximately 3:08 p.m. Dr. Norman also states that the letter was sent by mail but Dr. Kailikoke has not received it by mail.

Dr. Norman's letter states that it "constitutes formal notice" that the Board of the Palomar Community College District (the "District") will consider whether to non-renew Dr. Kailikole's contract as Dean, Instructional, Mathematics and the Natural Health Sciences. The letter does not state any reason why the District is considering this action.

As the letter seems to acknowledge, pursuant to Government Code section 54957(b)(2), Dr. Kailikole is entitled to notice – 24 hours in advance of the meeting – of her right to have any complaint or charge against her heard in an open session rather than a closed session. Dr. Norman's letter fails to meet this requirement in several material respects.

First, Section 54957(b)(2) requires that the notice be "delivered to the employee personally or by mail at least 24 hours before the time for the holding the session." On its face, Dr. Norman's letter fails to meet this requirement because it was sent by e-mail and the mailing was too late to be delivered to Dr. Kailikole more than 24 hours in advance of the meeting. In addition, Dr. Norman demands that Dr. Kailikole advise as to whether she is requesting an open meeting "no later than February 27, 2018 at 10:00 a.m" which renders the notice several hours shorter than the 24 hours required by law. Further, the letter lists the time of the meeting as 5:00 p.m, while the agenda for the meeting which states that the closed session beings at 4:00 p.m. Thus, the notice is defective in numerous and material aspects and is insufficient to apprise Dr. Kailikole of her rights sufficiently in advance of this meeting.

In addition, it not clear whether, in taking possible action against Dr. Kailikole, the District is considering any charges or complaints against Dr. Kailikole. For example, the letter does not mention the pending investigation of Dr. Kailikole, which Dr. Kailikole believes is in retaliation for reporting improper conduct by members of the faculty who violated the District's rules and applicable law against harassment based on sex and race. Given that Dr. Kailikole's interview with the investigator is tomorrow, the investigation is incomplete and any action by the District at this point related to Dr. Kailikole's employment contravenes Dr. Kailikole's due process rights and general principles of fairness. Indeed, two months after being abruptly placed on paid leave, Dr. Kailikole still does not know of what she is being accused. Further,

Exhibit 7
P. 3

• Dr. Kailikole has been ordered not to discuss the investigation with anyone and to maintain confidentiality.  This instruction, coupled with the fact that Dr. Kailikole does not know of what she is being accused, rendered it impossible to for her to gather evidence in her defense.  Thus, any proceedings related to her contract are premature and fundamentally unfair.

Given the facially defective and opaque nature of the notice, it is difficult for Dr. Kailikole to make an informed decision regarding how to exercise her rights.  However, and without waiver of Dr. Kailikole's right to further challenge the validity of the notice at a later time, Dr. Kailikole hereby requests an open session wherein she can present a statement regarding her excellent job performance and her general confusion and disappointment related to the lack of transparency surrounding the District's actions in placing her on paid leave.

Further, because Dr. Kailikole has been ordered to maintain confidentiality regarding the investigation, Dr. Kailikole requests that she be informed in advance of the meeting of the scope of the issues being considered by the District and what it believes Dr. Kailikole is entitled to discuss at the open meeting.  Dr. Kailikole further requests that a closed session be available – at her option - for parts of the proceedings that involve the discussion of matters that are confidential.

Please confirm receipt of this e-mail and that it will be provided immediately to Dr. Norman.  Please also provide more details regarding the purpose of the meeting and scope of what the District expects will be discussed.

Thank you for your cooperation in this matter.

Sincerely,
Evan Dwin

Evan Dwin
Dwin Legal, APC
2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011
Phone: 760-536-6471
Fax: 760-585-4649
edwin@dwinlegal.com

Exhibit 7
P. 4

EXHIBIT 8

EVAN DWIN
760.536.6471 telephone
760.585.4640 facsimile
edwin@dwinlegal.com

# Dwin Legal, APC

Dwin Legal, APC
2121 Palomar Airport Road, Suite 170
Carlsbad, CA 92011

January 9, 2019

<u>VIA E-MAIL</u>

Kevonna Ahmad
kahmad@fisherphillips.com

Adam F. Sloustcher
asloustcher@fisherphillips.com

Re:     ***Kailikole v. Palomar Community College District***

Dear Ms. Ahmad and Mr. Sloustcher:

I write in response to your letter dated January 7, 2019 and to confirm our discussion of today's date.

As I informed you on our call today, the California Supreme Court recently, and unanimously, rejected the type of abusive anti-SLAPP motion suggested by your letter.  In *Park v. Board of Trustees*, 2 Cal. 5th 1057 (2018), the court held that a claim by a professor who alleged the decision to deny his tenure was discriminatory was not subject to an anti-SLAPP motion.  The Regents argued that the plaintiff's claims arose out of protected activity because the allegedly discriminatory decision was rendered in protected statements connected to the tenure review process.  The Court rejected this argument because the elements of the plaintiff's discrimination claims were not based on the process or any statements by the Regents but "only on the denial of tenure itself and whether the motive for that action was impermissible." *Id.* at 1068.

Similarly, in *Nam v. Regents of California*, 1 Cal. App. 5th 1176 (2016), the Court of Appeal held that a claim for harassment and retaliation by a resident physician terminated after a peer review process was not subject to an anti-SLAPP motion.  The court reasoned that even though protected speech, such as the notice of termination, was used to carry out the discriminatory conduct, that does not transform a discrimination suit to one about speech.  Further, as applicable here, the court reasoned that the anti-SLAPP statute cannot be used to immunize discriminatory employment decisions carried out through protected processes or speech because it would allow "any employer that initiates an investigation of an employee, whether for lawful or unlawful motives" to be "at liberty to claim its conduct was protected and

Exhibit 8
P. 1

**Dwin Legal, APC**
Kevonna Ahmad
Adam F. Slouscher
January 9, 2019
Page 2

thereby shift the burden of proof to the employee" which would be "fatal for most harassment, discrimination and retaliation actions against public employers." *Id.* at 1179.

Notably, the court in *Nam* called the Regents position a "misguided" use of the anti-SLAPP procedure. In fact, the court reasoned that the Regents' anti-SLAPP motion was "abusive" and part of the "very disease" the anti-SLAPP statute was passed to prevent:

> The quintessential SLAPP is filed by an economic powerhouse to dissuade its opponent from exercising its constitutional right to free speech or to petition. The objective of the litigation is not to prevail but to exact enough financial pain to induce forbearance. As its name suggests, it is a strategic lawsuit designed to stifle dissent or public participation. It is hard to imagine that a resident's complaint alleging retaliatory conduct was designed to, or could, stifle the University from investigating and disciplining doctors who endanger public health and safety. The underlying lawsuit may or may not have merit that can be tested by summary judgment, but it is quite a stretch to consider it a SLAPP merely because a public university commences an investigation.

*Id.* at 1193.

As made clear in *Park* and *Nam*, the District cannot use the anti-SLAPP procedures to immunize itself from Dr. Kailikole's claims, which are based on the discriminatory and retaliatory <u>decisions</u> to place her on paid leave, non-renew her contract and terminate her. Dr. Kailikole's claims do not in any way "arise out of" the processes that were used by the District to carry out these discriminatory and retaliatory adverse employment actions. Indeed, the District's attempt to silence Dr. Kailikole through an anti-SLAPP motion contravenes the entire purpose of both the anti-SLAPP statute <u>and</u> FEHA's policy of protecting persons who report discriminatory and harassing conduct. Accordingly, should the District proceed with a frivolous anti-SLAPP motion in contravention of controlling authority by the California Supreme Court, Dr. Kailikole will seek her attorneys' fees in connection with defending it.

Your argument that Dr. Kailikole was required to exhaust internal grievance procedures also contravenes applicable and controlling law. As the California Supreme Court plainly held in *Schifando v. City of Los Angeles*, 31 Cal. 4th 1074, 1092 (2003), a FEHA plaintiff does <u>not</u> need to exhaust internal remedies before pursuing a civil action. Further, in *Ortega v. Contra Costa Community College*, 156 Cal. App. 4th 1073 (2007), the court held that non-FEHA claims based on the same facts as FEHA claims are not subject to the internal exhaustion requirement. *Id.* at 1086. The court reasoned that it would be unfair to require a plaintiff to pursue any claims internally which might result in preclusive findings in a later FEHA action. *Id.* Thus, under *Schifando* and *Ortega*, Dr. Kailikole was entitled to forego internal procedures to preserve her FEHA claims and any other claims based on the same facts.

Exhibit 8
P. 2

Dwin Legal, APC
Kevonna Ahmad
Adam F. Slouscher
January 9, 2019
Page 3

The District's reliance on *Terris v. County of Santa Barbara*, 20 Cal. App. 5th 551 (2018) is misplaced. In *Terris*, the plaintiff's whistleblower claims were based on retaliation for complaints about interference with her labor organizing activities and were not based on allegations of retaliation for reporting discrimination or harassment asserted in a related FEHA claim. Thus, *Terris* is inapplicable and Dr. Kailikole was not required to pursue internal remedies for any of her claims.

In addition, there is no authority for the proposition that the District is somehow immune from liability for discriminatory and retaliatory employment decisions. None of the cases you cite have anything to do with sex and race discrimination or adverse employment actions in retaliation for reporting it and all of them are inapplicable.

Finally, the so-called "manager's rule" cannot immunize the District for its decision to terminate Dr. Kailikole in retaliation for her reporting of sex and race discrimination and harassment by Drs. Nakajima and Gerwig. *Garcetti v. Ceballos*, 547 U.S. 410 (2006) was a free speech case and had nothing to do with a manager who reported harassment and discrimination.

*Rosenfeld v. GlobalTranz Enterprises, Inc.*, 811 F. 3d 282, 286 (9th Cir. 2015) is also inapplicable. *Rosenfeld* involved a human resources manager who complained about wage practices that violated the FLSA which is a completely different statutory scheme, than Title VI, Title IX and FEHA. In fact, in *DeMasters v. Carillion Clinic*, 796 F. 3d 409 (4th Cir. 2015), the court held that the "manager's rule", which is of questionable validity in any context, does not apply to discrimination claims brought under Title VII. Further, even in *Rosenfelt*, the court denied summary judgment because the manager was in fact complaining on behalf of employees and not simply performing her management duties.

Dr. Kailikole was a Dean and not a human resources manager. She reported and complained about the discriminatory and harassing conduct by Nakajima and Gerwig to protect the victims. Further, she was a witness in the investigation and not the person responsible for conducting it or administering appropriate discipline. Thus, even if the "manager's rule" could apply to a claim under the relevant discrimination statutes (which it cannot), it would not apply to Dr. Kailikole's claims.

\\\

\\\

\\\

Exhibit 8
P. 3

Dwin Legal, APC
Kevonna Ahmad
Adam F. Sloustcher
January 9, 2019
Page 4


Based on the foregoing, the District has no grounds to strike or dismiss the Complaint. However, pursuant to our discussion today, we agree to continue the meet and confer process so that we can consider the issues and try to avoid unnecessary motion practice.  In accordance therewith, Dr. Kailikole agrees to further extend the District's deadline to respond to the Complaint to January 25, 2019.

Very truly yours,

Evan Dwin

Exhibit 8
P. 4