Regina A. Petty (SBN 106163)
   E-Mail: rpetty@fisherphillips.com
Adam F. Sloustcher (SBN 291657)
   E-Mail: asloustcher@fisherphillips.com
Kevonna J. Ahmad (SBN 324312)
   E-Mail: kahmad@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858)597-9600
Facsimile: (858)597-9601

Attorneys for Defendant
Palomar Community College District

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN KAILIKOLE, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>PALOMAR COMMUNITY COLLEGE DISTRICT, a governmental entity; and DOES 1 through 25, inclusive,<br><br>          Defendants. | Case No: 3:18-cv-02877-AJB-MSB<br><br>*[Previously San Diego Superior Court Case No. 37-2018-00058754-CU-WT-NC before the Honorable Ronald F. Frazier]*<br><br>**DEFENDANT PALOMAR COMMUNITY COLLEGE DISTRICT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: June 20, 2019<br>Time: 2:00 p.m.<br><br>State Complaint: November 20, 2018<br>Removal Date: December 26, 2018 |

## I. AN ACTION CHALLENGING PLAINTIFF'S TERMINATION IS BARRED BY CALIFORNIA'S ANTI-SLAPP STATUTE

The District's SLAPP motion should be granted because the District has met the two-step test required for the granting of a SLAPP motion. The District's actions in terminating Plaintiff were protected activity because they came as a result of a unanimous vote by the publicly-elected Governing Board. In addition, despite voluntary amendment, Plaintiff has not met her burden of showing that she has will prevail under any of her causes of action.

In an unavailing attempt to save her First Amended Complaint ("FAC") from being stricken, Plaintiff submitted an 84-page declaration, and her counsel submitted a 31-page declaration, including exhibits. The District objects to both declarations and all exhibits on the grounds that they contain several statements which constitute impermissible opinion; hearsay; lack foundation or personal knowledge; and are irrelevant. (See Fed. Rule Evid. §§ 401, 602, 701, 801-802, and 901.) Accordingly, the Court should disregard Plaintiff and her counsel's declarations and all exhibits attached thereto.

## II. PLAINTIFF CONCEDES THAT THE DISTRICT'S SLAPP MOTION CHALLENGES THE LEGAL SUFFICENCY OF HER CLAIMS

"When an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." (*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress* (9th Cir. 2018) 890 F.3d 828, 834.) Plaintiff admits that the District's SLAPP motion challenges the legal sufficiency of her FAC. (Plaintiff's Opposition ("Oppos."), 16:11-13.) Legal insufficiency alone is enough to SLAPP Plaintiff's FAC. (See *Planned Parenthood, supra,* 890 F.3d at 834-835.) Plaintiff cannot state a claim under any of her causes of action. Thus, the Court should analyze the District's motion under Rule 12 (b)(6) standards, without further inquiry into the factual sufficiency of Plaintiff's FAC.

## III. PLAINTIFF ERRONEOUSLY ARGUES THAT THE DISTRICT'S CONDUCT WAS NOT PROTECTED ACTIVITY

### A. District action taken in furtherance or anticipation of legally mandated pre-termination proceedings are protected activity.

It is well settled that in following mandatory pre-termination procedures, a public entity and its employees engage in protected activity. (See *Miller v. City of Los Angeles* (2009) 169 Cal.App.4th 1373; *Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537.) Here, the District's pre-termination proceedings, as mandated by the Brown Act, are official proceedings authorized by law. Thus, any acts carried out in furtherance of, or in anticipation of official pre-termination proceedings are protected.

Plaintiff admits that her claims may be stricken if protected speech or petitioning activity **itself** is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted. (Oppos., 12:9-12.) In addition, Plaintiff admits that all of the wrongs she suffered can be summarized as: being placed on paid leave, the non-renewal of her employment contract, and the termination of her employment. (Oppos., 7:19-21.) It is the **actions themselves**, which Plaintiff complains are the wrongful conduct. Placing Plaintiff on leave is **itself** being alleged as a wrongful act, not as mere evidence of a wrongful act. The non-renewal of Plaintiff's contract in **itself** is being alleged as a wrongful act. All the wrongs Plaintiff complains of are protected activities because these were clearly actions taken in anticipation of official pre-termination proceedings. As such, Plaintiff's contention that the disciplinary actions taken against her do not constitute protected activity is erroneous.

### B. Plaintiff's reliance on the *Nam* and *Park* cases is misplaced

Plaintiff's urges the Court to blindly follow the results in *Nam* and *Park* simply because both of those decisions involved public agency defendants. However, the Court should ignore Plaintiff's request. In *Nam,* a competency committee made the decision to dismiss the plaintiff from her residency program.

(*Nam v. Regents of University of California* (2016) 1 Cal.App.5th 1176, 1184.) Similarly, in *Park*, the university's retention, tenure, and promotion proceedings resulted in the plaintiff being denied tenure. (*Park v. Board of Trustees of California State University* (2015) 239 Cal.App.4th 1258; See also *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057) In both cases, the adverse employment decisions were made by mere employees of each respective public entity.

In the instant case, the District's disciplinary actions against Ms. Kailikole were the result of unanimous votes of the Governing Board. (Norman Decl., par. 5-9, Ex. B-E; Kahn Decl., par 5-9, Ex. B-E.) The five-member Governing Board consists of elected officials, who serve at the pleasure of the citizens of northern San Diego County. (Norman Decl., par. 2; Kahn Decl., par. 2). The Governing Board is extensively regulated by California law through the Education Code and the Ralph M. Brown Act. California Education Code Section 70902 mandates that every California State public community college district be under the control of a Governing Board. "In carrying out its powers and duties, the governing board of each community college district retains *full authority* to adopt rules and regulations that are *necessary and proper* to executing [its] prescribed functions." (*Id.*) Thus, by definition, the Governing Board's actions in fulfilling its duties are in service of the public interest.

In addition, the Governing Board owes special duties to the public when making personnel decisions under the Brown Act. (See SLAPP, 5:14-7:12) The Brown Act requires that all the District's personnel decisions be open to the public and subject to public review. (See Gov. Code, § 54950.) The Brown Act makes clear that "[t]he people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know… [t]he people insist on remaining informed so that they may retain control over the instruments they have created." (*Id.*) Accordingly, the completely

3

disinterested and publicly-elected Governing Board had to take the recommendation of Plaintiff's termination under a publicly disclosed vote in order to comply with the Brown Act. Thus, *Nam* and *Park* are not controlling here because neither involved disinterested, publicly-elected officials executing legally-mandated duties pursuant to California law.

Plaintiff also relies on *Park* for the erroneous contention that the District's personnel decisions cannot be protected solely because they are made in the public interest. (*Park, supra,* 2 Cal.5th 1057.) In *Park,* the court rejected the public interest argument because the university failed to explain whether its decision to deny a professor tenure furthered the university's speech and was a matter of public interest. (*Id* at 1072.) Here, the District has clearly articulated the reasons why its personnel decisions related to Plaintiff were in furtherance of the District's speech and were a matter of public concern. (See SLAPP, 10:16-26; 12:15-13:20.) Plaintiff's failure to properly administer grant funds threatened the loss of thousands of tax-payer dollars, the jobs of professors who received their salaries from grant funding, and the students and members of the community who received services funded by the grant. (See SLAPP, 2:21 – 3:8.)

### C. There is no evidence of retaliation or discrimination leading up to the District's decision to place Plaintiff on leave

Finally, Plaintiff relies on *Whitehall v. City of San Bernardino,* 17 Cal.App.5th 352, 357-358 (2017), to support her contention that the District's conduct was not protected. In *Whitehall,* the court found that placing plaintiff on administrative leave was not protected activity because there was clear evidence of whistleblower retaliation *before* the leave ordered. (*Id.*) Here, Ms. Kailikole can point to no discriminatory or retaliatory act taken against her *before* she was placed on leave pending the outcome of an independent investigation of her own misconduct. In fact, Plaintiff's allegations regarding any adverse personnel decisions by the Governing Board are solely post-investigation actions. Accordingly, *Whitehall* is inapplicable.

## IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER EACH OF HER CAUSES OF ACTION

### A. **Plaintiff's cannot prevail on her 1102.5 claim because it is barred as a matter of law**

Failure to exhaust internal administrative remedies is an absolute bar to a Labor Code §1102.5 cause of action. (*Terris v. County of Santa Barbara* (2018) 20 Cal.App.5th 551, 558) Plaintiff cites no authority which provides that this exhaustion requirement may be circumvented. None of the cases Plaintiff relies upon involve a section 1102.5 claim.[1] Accordingly, the Court should strike Plaintiff's section 1102.5 cause of action without leave to amend because Plaintiff cannot truthfully amend to allege exhaustion.

### B. **The court's decision in *DeJung* is in conflict with the California Supreme Court**

The California Supreme Court specifically held that section 820.2 affords immunity to public employees for FEHA claims. (*Caldwell v. Montoya* (1995) 10 Cal.4th 972.) This immunity extends to the District pursuant to section 815.2. (See *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1435.)

The court arrived at the wrong decision in *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, and the decision is in direct conflict with the California Supreme Court. The entire opinion in *DeJung* is based on dictum from two cases: *Caldwell, supra,* 10 Cal.4th 972 and *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992. The *DeJung* court relied heavily on dictum from the *Caldwell* court to reach its holding. (See *DeJung, supra,* 169 Cal.App.4th at 544.) There the *Caldwell* court simply acknowledged that that there was a distinction between the immunity provided for by section 820.2 and the *potential* for direct liability of the employer as an entity. (*Caldwell, supra*, 10 Cal.4th at 989, fn. 7.) However, the California Supreme Court in *Caldwell* **expressly left open** the issue

---

[1] The inapposite FEHA cases Plaintiff relies on are *Ortega v. Contra Costa City College Dist.,* (2007) 156 Cal.App.4th 1073; *Schifando v. City of Los Angeles,* (2003) 31 Cal. 4th 1074; and *Williams v. Housing Authority of Los Angeles,* (2004) 121 Cal.App.4th 708.

of whether the governmental immunity statutes extend immunity to governmental entities. (*Id.*) In doing so, the high court held that the public entity for which a public employee works cannot itself be vicariously liable for the employee's actions to the extent the employee is immune from suit. (*Id.*) As a matter of principle, the District cannot be liable to Ms. Kailikole in any other way except by *vicarious liability*. The court's acknowledgment that a public entity could not be liable where the public employee is immune, is a strong indication that the Supreme Court would have extended immunity to government entities if the question had been before it.

The *DeJung* court also relied on dicta from *Farmers*. The minority dissenting justices in *Farmers* believed that the FEHA "provides a basis of direct entity liability." (*Farmers, supra,* 11 Cal.4th at 1014–1015, fn. 12.) The dissenting justices **did not** decide the ultimate disposition in *Farmers*. Accordingly, the *DeJung* case should be disregarded because it is entirely based on dictum and directly contradicts the Supreme Court's reasoning.

### C. Plaintiff did not engage in protected activity by merely performing her job duties

Evidence showing that an employee was merely doing their job is insufficient to support a retaliation cause of action. (See *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal. App.4th 1378, 1384-1385.) In support of her argument that the Manager Rule does not apply to her retaliation claims, Plaintiff relies upon a number of cases that are not controlling and that California courts have not expressed agreement with.[2] The only case Plaintiff cites that has any precedential value is *Crawford v. Metro. Gov't of Nashville & Davidson Cnty,* 555 U.S. 271 (2009). However, even *Crawford* is inapplicable to Plaintiff's claims. Not only does the court interpret an entirely different statute in *Crawford,* but the plaintiff in *Crawford* was not a supervisory employee and it was not a part of her

---

[2] The case are *Demasters v. Carillion Clinic*, 796 F.3d 409, 423 (2d Cir. 2015); *Johnson v. Univ. of Cincinnati,* 215 F. 3d 561 (6th Cir. 2000); and *Robinson v. Wichita State University* (D. Kan., Feb. 13, 2018, No. 16-2138-DDC-GLR) 2018 WL 836294, at *3.

job duties to report sexual harassment committed by her superiors. Thus, the Manger Rule would not have applied to the plaintiff in *Crawford*.

### D. The manager rule applies to section 1102.5 claims

Labor Code section 1102.5 protects employees "regardless of whether disclosing information is part of their job duties." However, this language does not eliminate the requirement that a Plaintiff must clearly demonstrate that any such disclosure is being done in his or her capacity as an employee making a complaint – not a supervisor merely performing their job. No authority exists which suggest that section 1102.5 provides such a blanket protection. Plaintiff asserts only that she received a report from Dr. Finkenthal relating to Professors Nakajima and Gerwig, and she relayed the report to Shawna Cohen in accordance with her job duties. (FAC ¶¶ 5-6, 55.) Plaintiff does not allege that she filed a formal complaint opposing the violations or actively pursued the violations *outside of her role* as the dean. Consequently, Plaintiff does not allege that she engaged in protected activity and she fails to state a claim under her Seventh Cause of Action.

### E. Plaintiff's FEHA claims fail because she has not alleged a disability under the FEHA

Workplace stress related to an employee's job performance is not alone a cognizable disability under the FEHA. (*Higgins-Williams v. Sutter Medical Foundation* (2015) 237 Cal.App.4th 78, 84-86.) Plaintiff's FAC alleges only that Plaintiff met with her supervisor to discuss anxiety related to performing her job duties. (See FAC ¶11.) Thus, as a matter of law, Plaintiff's FAC fails to state a claim under her fourth, fifth, and sixth causes of action because work-related stress is not a disability under the FEHA.

## V. PLAINTIFF FAILS TO ESTABLISH A PRIMA FACIE CASE AND PRETEXT

### A. The court need not consider Plaintiff's argument regarding pretext to decide this motion

Plaintiff's arguments relating to pretext are unnecessary. Because it has already been demonstrated that Plaintiff fails to state a claim under each of her

7
DEF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PLTF'S FAC
CASE NO. 3:18-cv-02877-AJB-MSB

FPDOCS 35289652.1

causes of action, her FAC should be stricken in its entirety without further inquiry. (See *Planned Parenthood, supra,* 890 F.3d at 834-835.)

### B. Plaintiff cannot establish that the District's proffered reasons for her termination were pretext

Even if the Court does consider Plaintiff's pretext argument, Plaintiff's argument still fails because Plaintiff cannot prove pretext. To prevail on her retaliation claims Plaintiff has the initial burden to show that a causal link exists between her protected activity and the District's action. (*Passantino v. Johnson & Johnson Consumer Products, Inc.* (9th Cir. 2000) 212 F3d 493, 506.) Even cases that accept mere temporal proximity as sufficient evidence of causality "uniformly hold that the temporary proximity must be 'very close.'" (*Clark County School Dist. v. Breeden* (2001) 532 U.S. 268, 273, (no causal relationship shown where adverse action taken 20 months after claimed protected activity); *Cornwell v. Electra Central Credit Union* (9th Cir. 2006) 439 F.3d 1018, 1036 (8-month gap between employee's complaint and demotion too great to support inference that employee's complaints caused termination.)

Moreover, under California law, proximity in time satisfies only the plaintiff's initial burden. If the employer offers a legitimate, nonretaliatory reason for its adverse action, "temporal proximity … does not, without more" establish that reason is pretextual. (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388.)

Plaintiff has not offered sufficient evidence of temporal proximity. Plaintiff reported Professors Nakajima and Gerwig in May 2017 and she was not placed under investigation and on administrative leave until December 14, 2017. (FAC ¶¶ 6, 13.) Plaintiff does not allege any retaliatory conduct during the 7-month period between her report and the date she was placed under investigation.

Plaintiff's assertion that the District did not bring up her performance issues until after this lawsuit was filed is not supported by the evidence. In September 2017, Plaintiff received a verbal warning from Dr. Kahn for failing to meet

deadlines. (Norman Decl., par. 4, Ex. A, p. 3.) In November 2017, Plaintiff and Dr. Kahn meet to discuss her failure to meet deadlines and unsatisfactory job performance. (*Id.*; FAC ¶ 10.) Finally, Plaintiff received the Notice of Proposed Disciplinary Action on May 2, 2018, which laid out all of the reasons that Dr. Kahn was proposing her termination, including issues with her job performance. (Norman Decl., par. 4, Ex. A.) Thus, Plaintiff received ample notice that there were issues with her job performance before she filed this lawsuit.

Moreover, the fact that emails about her performance were forwarded to the District compliance officer after Plaintiff complained about retaliation is not indicative of pretext. These emails were actually forwarded after Plaintiff informed the District that she had hired an attorney, in January 2018. (FAC ¶ 16; Norman Decl., par. 4, Ex. A, pp. 181-247 [Ex. 3, Emails]). Thus, the District was simply doing its due diligence by getting its compliance officer involved.

Finally, the District's investigation into Plaintiff is not evidence of pretext. The District had a thorough, fair, and independent investigation conducted. In her FAC, Plaintiff praises Mr. Love's investigations and even relies on them for the contention that Mr. Love found Ms. Kailikole to be credible. (FAC ¶ 9.) However, now that the investigation results are not in her favor, Ms. Kailikole no longer appreciates the value of Mr. Love's investigations. Plaintiff is simply attempting to craft allegations for the first time on Opposition to save her FAC from be stricken. Accordingly, Plaintiff's bare allegations of temporal proximity are insufficient to establish pretext because the District had legitimate reasons for its conduct.

## VI. PLAINTIFF SHOULD NOT BE PERMITTED LEAVE TO CONDUCT DISCOVERY

On step two of the SLAPP analysis, Plaintiff must demonstrate a probability of prevailing on her claims. (*Braun v. Chronicle Publishing Co.,* (1997) 52 Cal.App.4th 1036, 1042-43.) In order to show a probability of prevailing on her claims, all Plaintiff must do is state a plausible claim under each of her causes of action. (*Planned Parenthood, supra,* 890 F.3d at 834-835.) Indeed, the ability to

9

state legally sufficient claims is required of a plaintiff at the outset of any lawsuit, whether or not a defendant brings a SLAPP motion. (See e.g. *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678.) Moreover, "[i]n defending against a SLAPP motion, if the defendant has urged only insufficiency of pleadings, then the plaintiff can properly respond by showing sufficiency of pleadings, and there is no requirement for a plaintiff to submit evidence..." (*Planned Parenthood, supra,* 890 F.3d at 834.) Thus, Plaintiff's request for leave to conduct discovery should be denied.

## VII. PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS SHOULD BE DENIED

If the Court overrules the District's motion, it should not award costs and attorney's fees to Plaintiff. The motion is clearly not frivolous or solely intended to cause unnecessary delay. "A determination of frivolousness requires a finding the motion is 'totally and completely without merit,' (§128.5, subd. (b)(2)), that is, 'any reasonable attorney would agree such motion is totally devoid of merit.' [Citation.]" (*Foundation for Taxpayer and Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375, 1387-88.) Several courts of appeal have held that a public employer's investigative and disciplinary procedures are an "official proceeding authorized by law." Moreover, the California Supreme Court held that there can be no liability for a public entity itself, where the public entity's employee would be immune from liability.

## VIII. CONCLUSION

Based on the foregoing, the Court should grant Defendant's SLAPP Motion and enter an order striking Plaintiff's FAC in its entirety.

Dated: April 24, 2019

Respectfully submitted,
**FISHER & PHILLIPS LLP**

By: /s/ Kevonna J. Ahmad
Regina A. Petty
Adam F. Sloustcher
Kevonna J. Ahmad
Attorneys for Defendant
Palomar Community College District

# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 4747 Executive Drive, Suite 1000, San Diego, California, 92121.

On April 24, 2019 I served the foregoing document entitled **DEFENDANT PALOMAR COMMUNITY COLLEGE DISTRICT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Evan Dwin (SBN 241027)<br>DWIN LEGAL, APC<br>2121 Palomar Airport Road, Suite 170<br>Carlsbad, CA  92011 | Telephone: (760) 536-6471<br>Facsimile:  (760) 585-4649<br>E-Mail: Edwin@DwinLegal.com<br>Attorneys for Plaintiff<br>*Kathryn Kailikole* |

☐ **[by MAIL]** – I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☒ **[by ELECTRONIC SUBMISSION]** – I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐ **[by OVERNIGHT SERVICE]** – I am readily familiar with the firm's practice for collection and processing of correspondence for overnight delivery. Under that practice such correspondence will be deposited at a facility or pick-up box regularly maintained by the overnight service for receipt on the same day in the ordinary course of business with delivery fees paid or provided for in accordance with ordinary business practices.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed April 24, 2019 at San Diego, California.

Michael Lynn Filio          By: _____