UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN KAILIKOLE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PALOMAR COMMUNITY COLLEGE DISTRICT, a governmental entity; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 18-CV-02877-AJB-MSB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Doc. No. 9)** |

Pending before the Court is Defendant Palomar Community College District's motion to dismiss. (Doc. No. 9.) Plaintiff filed an opposition to Defendant's motion to dismiss. (Doc. No. 11.) For the reasons set forth more fully below, the Court **DENIES** Defendant's motion to dismiss. Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. Accordingly, the hearing date of June 20, 2019 at 2 p.m. is vacated as to this motion only.

## I.  BACKGROUND

Kathryn Kailikole ("Plaintiff") brings seven causes of action, under state and federal law, for retaliation and disability discrimination against her previous employer, Palomar Community College District ("Defendant"). (Doc. No. 7.) Plaintiff alleges that on December 14, 2017 she was "mysteriously and suddenly placed on paid leave." (*Id.* ¶ 13.)

She was told she could not speak to anyone at the college and was not given information about why she was removed, other than that it involved an investigation related to a confidentiality issue. (*Id.* ¶ 14.) Plaintiff remained on paid leave for five months without ever being informed of the nature of the allegations. (*Id.* ¶ 15.)

Plaintiff's retaliation claims are rooted in her participation as a witness in an investigation against Takashi Nakajima ("Nakajima") and Arthur Gerwig ("Gerwig"), who were professors at Palomar Community College District accused of sexual harassment and race discrimination. (*Id.* ¶¶ 5–10.) In May 2017, Plaintiff received a report from a faculty member about their racist and sexually harassing conduct, and reported the incident to Shawna Cohen, the District's Manager of the Equal Opportunity and Compliance Office and a Deputy Title IX Coordinator. (*Id.* ¶ 6.) On November 1, 2017, an investigator for the school district concluded that Plaintiff was credible, and Nakajima and Gerwig were guilty of violating the College's anti-harassment policies. (*Id.* ¶ 9.) No action was taken against these professors. (*Id.* ¶ 10.) Plaintiff inquired and discussed with other faculty in November 2017 as to why action was not being taken. (*Id.*) On December 12, 2017, the District placed Nakjima and Gerwig on one month of unpaid leave. (*Id.* ¶ 12.) Plaintiff was subsequently placed on paid leave on December 14, 2017. (*Id.* ¶ 13.) Plaintiff alleges that her computer was searched, without her consent, to acquire evidence that would discredit her report of Nakajima's and Gerwig's racist and sexually harassing conduct. (*Id.* ¶ 19.) Through this search, an email dated December 8, 2017 was obtained. (*Id.*) This email contained a forwarded message from the Plaintiff to another faculty member about an incident involving Nakajima and Gerwig. (*Id.*) The faculty member then forwarded the email to his wife. (*Id.* ¶¶ 20–22.) Based on this conduct, the District investigator concluded that Plaintiff was part of a conspiracy to leak confidential information about Nakajima and Gerwig outside the College. (*Id.*)

Plaintiff's disability claims are rooted in her informing the Defendant of her disability and her subsequent termination. (*Id.* ¶¶ 2, 11, 14.) On May 5, 2017, Plaintiff alleges that she needed to leave a meeting because she believed she was having a heart

attack. (*Id.* ¶ 4.) Plaintiff was instead having a panic attack and was later diagnosed with anxiety. (*Id.*) She suffers from feelings of being overwhelmed, helplessness, and nervousness. (*Id.*) She also has panic attacks and suffers from vertigo and cysts. (*Id.*) The effects of her anxiety affect her daily activities. (*Id.*) Plaintiff informed Dr. Jack Kahn, the Vice-President of Instruction, that she suffered from anxiety in May 2017. (*Id.*) Plaintiff later met with Dr. Kahn on December 4, 2017 and discussed her anxiety with him. (*Id.* ¶ 11.) Dr. Kahn "assured Plaintiff that she was an 'incredibly valuable member of the team' and that he was dedicated to providing her with his 'complete support.'" (*Id.*) Less than two weeks after this meeting, Plaintiff was put on paid leave. (*Id.* ¶ 13.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, a reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664.

/ / /

### III. DISCUSSION

A. Request for Judicial Notice

As a threshold issue, the Court will first turn to Defendant's request for judicial notice. Pursuant to Rule 201, a court may take judicial notice of adjudicative facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). Facts are indisputable, and thus subject to judicial notice, only if they are either "generally known" under Rule 201(b)(1) or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned" under Rule 201(b)(2). *Id*. If the parties dispute the facts contained in the documents, "the Court takes judicial notice only of the statements contained," but not for the truth of the matters asserted. *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1122 (N.D. Cal. 2017) (citations omitted); *see also City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1108 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017) (court found it unnecessary to consider the truthfulness of judicially noticeable documents in a defendant's motion to dismiss).

Defendant's motion requests judicial notice of the following documents: Notice of Proposed Discharge (Exhibit A), the Governing Board Regular Meeting Agenda for June 12, 2018 (Exhibit B), the June 11, 2018 24-Hour Notice Pursuant to Government Code section 54957 (Exhibit C), the Governing Board Minutes for the June 12, 2018 Meeting of the Governing Board (Exhibit D), and the Notice of Termination (Exhibit E). (Doc. No. 9-3.) Plaintiff argues that the documents contain assertions that are subject to dispute and are being offered for the truth of the matter asserted. (Doc. No. 11 at 9.) The Court agrees. Defendant requests judicial notice of exhibits that contain assertions that are disputed and are not generally known or capable of accurate and ready determination. As such, the Court finds the documents are purported evidence of Plaintiff's performance issues and thus, are subject to reasonable dispute. Accordingly, the Court **DENIES** Defendant's request for judicial notice.

/ / /

/ / /

B. <u>Plaintiff Participated in a Protected Activity and then Faced Retaliation by her Employer</u>

A plaintiff establishes a prima facie case of retaliation by showing "that: 1) [s]he engaged in a protected activity; 2) [s]he [subsequently] suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). "Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to 'oppose[]' an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185, 1197 (9th Cir. 2003) (quoting 42 U.S.C. § 2000e-3(a)). "[P]roximity in time between the protected action and the allegedly retaliatory employment decision" can create an inference that the employer's actions were caused by an employee's engagement in protected activities. *Id.* (internal quotations and citations omitted). "[T]he plaintiff must also make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *Id.*

The Defendant alleges that under the "manager rule," Plaintiff is unable to bring a claim of retaliation because her formal job duties and tasks included reporting harassment and discrimination. An employer cannot restrict employees' rights by creating excessively broad job descriptions. *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). "Formal job descriptions often bear little resemblance to the duties an employee" is expected to perform. *Id.* at 424–25. However, "a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties." *Id.* at 425.

The law remains unclear and the Ninth Circuit has yet to speak as to the applicability of the "manager rule" for retaliation under either Title IX or Title VI. The "manager rule" has been applied, however, in some Circuits in the context of retaliation claims under the Fair Labor Standards Act ("FLSA"). *See McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486–87 (10th Cir. 1996); *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 627–28 (5th Cir.

2008); *Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 102 (1st Cir. 2004). The "manager rule" requires an employee "[to] step outside his or her role of representing the company" in order to engage in protected activity. *McKenzie*, 94 F.3d at 1486–87 ("[T]he employee must [take certain actions] or otherwise engage in activities that reasonably could be perceived as *directed towards the assertion of rights protected by the FLSA*."). Further, the "manager rule" is distinguishable from the *Kasten* "fair notice" rule. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) ("[A] complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.").

The Ninth Circuit has not applied the "manager rule" in an FLSA context. *See Rosenfield v. Globaltranz Enters.*, 811 F.3d 282, 287 (9th Cir. 2015). In *Rosenfield*, the court did not definitively weigh in whether if the manager rule should be applied. *Id.* It is unclear if the "manager rule" is broader, narrower, or the same as the *Kasten* "fair notice" rule. *Id.* Regardless, *Kasten's* "fair notice" rule is controlling in the Ninth Circuit for FLSA causes of action. *Id.* However, this instant claim is brought under Title IX and Title VI, and the Court finds that the "manager rule" should not apply as the Ninth Circuit has not even applied the "manager rule" in a FLSA context. Additionally, applying the "manager rule" to either Title IX or Title VI would potentially eliminate a large category of workers from its anti-retaliation protections. Nothing from the language of either of these statutes indicates that the statutory protection granted to an employee's conduct turns on the employee's job description.

Defendant contends that Plaintiff did not engage in a protected activity since reporting Nakajima's and Gerwig's harassing and discriminatory conduct was in accordance with her assigned job duties. (Doc. No. 9 at 10–14.) However, the Court must accept all factual allegations as true and draw on reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr.*, 497 F.3d at 975. Here, Plaintiff alleges that as the Academic Dean, she was responsible for planning, organizing, administering,

developing, and evaluating the instructional programs, projects and activities of her division. (Doc. No. 7 ¶ 6.) As alleged in her first amended complaint, Plaintiff's job title and duties do not indicate that she was a compliance officer or a human resource professional. (*Id.*) Additionally, Plaintiff reported the conduct to Cohen. (*Id.*) Cohen was responsible for investigating the alleged conduct by Nakajima and Gerwig. (*Id.*)

Based on the facts alleged in Plaintiff's first amended complaint, the Court finds Plaintiff's role as Dean does not immunize the Defendant from a retaliation claim. The Court **DENIES** the Defendant's motion to dismiss Plaintiff's first, second, and third causes of action.

### C. Plaintiff Likely Suffers from a Cognizable Disability

California state and federal courts follow the *McDonnell Douglas* three-part, burden-shifting framework to assess a plaintiff's disability discrimination claims and to determine whether there are triable issues of fact for resolution by a jury. *Faust v. California Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (Cal. Ct. App. 2007) (applying the test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To establish a prima facie case of disability discrimination, the Plaintiff must show: (1) she suffers from a disability; (2) she was otherwise qualified to do the job; and (3) she was subjected to an adverse employment action because of the disability. *See Smith v. Clark County Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

To succeed on a FEHA claim for failure to accommodate, a plaintiff must show that she (1) has a disability of which the employer is aware, and (2) is a qualified individual. *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1054 (C.D. Cal. 2005) (citing Cal. Gov't Code § 12940(m)) (citations omitted). "Unlike for a claim for employment discrimination, a plaintiff need not establish that an adverse employment action was caused by the plaintiff's disability because [ ] a FEHA claim for failure to accommodate is an independent cause of action." *Diaz*, 373 F. Supp. 2d at 1054; *see Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 254 (Cal. Ct. App. 2000); *Perez v. P&G Mfg. Co.*, 161 F. Supp. 2d 1110, 1119 (E.D. Cal. 2001).

### i. Anxiety or Stress may be Considered a Disability Under FEHA

"[T]he Legislature has determined that the definitions of 'physical disability' and 'mental disability' under [California law] require a 'limitation' upon a major life activity, but do not require, as does the Americans with Disabilities Act of 1990, a 'substantial limitation.' This distinction is intended to result in broader coverage under [California law] than under [the ADA]." *Jensen*, 85 Cal. App. 4th at 258 (quoting Stats. 2000, ch. 1049, § 6.) A plaintiff need only show that her condition limited, rather than substantially limited, a major life activity. *Jensen*, 85 Cal. App. 4th. at 257–59. Anxiety, nervousness, depression, helplessness, and panic attacks could, as a matter of law, meet the definition of mental disability even under the "substantial limitation" standard. *Id.* at 259.

The Defendant asserts that Plaintiff's anxiety does not reach the level of "limitation" that would constitute a disability under FEHA. Plaintiff alleges that her anxiety caused her to feel overwhelmed, helpless, and nervous. (Doc. No. 7 ¶ 4.) Plaintiff also states that she suffered from vertigo, cysts, as well as panic attacks and that her anxiety "limit[ed] her in her major life activities." (*Id.*) The Court cannot make a factual determination as to whether the anxiety Plaintiff faced is sufficient to meet the "limitation" standard of a disability under FEHA, or even the stricter ADA "substantial limitation" standard. Anxiety is considered a disability under FEHA, which as a matter of law, is sufficient to proceed. The Court declines to make a factual determination as to whether the Plaintiff's anxiety was severe enough to qualify under either a "limitation" standard or "substantial limitation" standard.

### ii. Plaintiff's Disability was not "Work-Related"

Defendant argues workplace stress related to an employee's job performance is not alone a cognizable disability under FEHA. "An employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance does not constitute a disability under FEHA." *Higgins-Williams v. Sutter Medical Foundation*, 237 Cal. App. 4th 78, 84 (Cal. Ct. App. 2015). Defendant asserts that Plaintiff has failed to allege a recognizable disability under

FEHA because Plaintiff's anxiety is strictly "work-related." (Doc. No. 9 at 17.) However, the instant action is distinguishable from *Higgins-Williams* since no facts have been presented here that indicate that Plaintiff's stress and anxiety relates to working under a particular supervisor. Additionally, no facts indicate that the stress was specifically "work-related."

Plaintiff alleges that she first became aware of her anxiety in early May 2017, after having a panic attack at work. (Doc. No. 7 ¶ 4.) In May 2017, Plaintiff met with Dr. Khan to inform him of this anxiety. (*Id.*) It was not until December 2017 that she "discussed her anxiety with Dr. Khan and expressed concern about her overwhelming workload, which included duties that are not typically part of the Dean's job." (*Id.* ¶¶ 11, 68.) This meeting took place after months of Plaintiff acting as a witness in the investigation of Nakajima's and Gerwig's racist and sexually harassing conduct. (*Id.* ¶ 8.) Plaintiff stated that she was suffering from anxiety *and* expressed concern for her workload. These two individualized concerns, in context, do not appear to hint that Plaintiff's anxiety and stress stemmed from her workload. Rather, she had anxiety, and in addition, had concerns about her workload. Because the Court must accept all factual allegations as true, we must accept Plaintiff's assertion that these are individualized, unrelated concerns as true. *See Cedars-Sinai Med. Ctr.*, 497 F.3d at 975. Additionally, Plaintiff discussed her disability with Dr. Khan during a May 2017 meeting. (Doc. No. 7 ¶ 4.) This was approximately two months before she reported the racist and sexually harassing conduct, indicating her anxiety was separate from her concerns about the investigation adding to her workload.

Based on the foregoing, the Court finds that it remains unclear whether Plaintiff suffered from anxiety and whether the disability was simply caused by temporary workplace stressors. These determinations cannot be made at this stage of the litigation. Thus, this Court **DENIES** Defendant's Motion to Dismiss Plaintiff's fourth, fifth, and sixth causes of action.

/ / /

/ / /

### D. Plaintiff Exhausted her Administrative Remedies

An "internal" remedy is "established by a private organization." *Payne v. Anaheim Memorial Medical Center, Inc.*, 130 Cal. App. 4th 729, 739 (Cal. Ct. App. 2005). An "administrative" remedy is "traditionally provided by statute." *Id.* Both are considered "alternatives to an action [ ] in court." *Id.* Alternative remedies must include a right to be heard and to have a decision rendered fairly and sufficiently. *Id.* at 239–40. Exhaustion of "*administrative* remed[ies] is a jurisdictional prerequisite to resort to the courts." *Abelleira v. District Court of Appeal*, 17 Cal. 2d 280, 293 (Cal. 1941) (emphasis added).

An employee "who claim[s] to have suffered employment-related discrimination need not exhaust [ ] internal remedies prior to filing a complaint. *Schifando v. City of Los Angeles*, 31 Cal. 4th 1074, 1092 (Cal. 2003). In *Schifando*, the court noted the value of the exhaustion of internal grievance procedures, where the Legislature did not mandate administrative review. *Id.* at 1075. However, there is no required exhaustion of internal remedies where an employee would have other mandated exhaustion prerequisites under FEHA. *Id.*

Defendant conflates administrative and internal remedies. *See Campbell v. Regents of University of California*, 35 Cal. 4th 311, 332 (Cal. 2005) (finding that a whistleblower was required to exhaust administrative remedies); *Palmer v. Regents of the University of California*, 107 Cal. App. 4th 899, 910 (Cal. Ct. App. 2003) (holding that a whistleblower was required to exhaust internal remedies as required by the Legislature). Further, Defendant relies upon authority that is distinguishable from the instant action. First, *Campbell* and *Palmer* involve whistleblowers. Here, the Plaintiff was allegedly retaliated against for reporting sexual harassment and race discrimination, not whistleblowing. Second, *Campbell* emphasizes that there must be "a respect for internal grievance procedures and [an] exhaustion requirement where the Legislature has not specifically mandated its own administrative review process." *Campbell*, 35 Cal. 4th at 321. Here, it is unclear whether there was a respect for the internal grievance procedures in the workplace.

///

Administrative and internal remedies are distinct and require Plaintiff to participate in separate steps before resorting to the courts. Here, the Legislature mandated an administrative review process that Plaintiff participated in. *See e.g., Terris v. County of Santa Barbara*, 20 Cal. App. 5th 551, 553 (Cal. Ct. App. 2018) (finding summary judgment proper because plaintiff failed to file a complaint with an Equal Employment Opportunity Officer office for her FEHA claims). Here, Plaintiff received a right to sue letter. (Doc. No. 11 at 22.) Thus, Plaintiff exhausted her administrative remedies.

The supposed failure to exhaust internal remedies does not bar Plaintiff's seventh cause of action. Plaintiff sufficiently exhausted the required administration remedies and received a right to sue letter. (Doc. No. 11 at 22.) Thus, the Court **DENIES** Defendant's motion to dismiss Plaintiff's seventh cause of action.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendant's motion to dismiss in its entirety. (Doc. No. 9.)

**IT IS SO ORDERED**.

Dated: April 26, 2019

Hon. Anthony J. Battaglia
United States District Judge

11
18-CV-02877-AJB-MSB