UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN KAILIKOLE, an individual,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>PALOMAR COMMUNITY COLLEGE DISTRICT, a governmental entity; and DOES 1 through 25, inclusive,<br><br>　　　　　　　　　　Defendants. | Case No.: 18-CV-02877-AJB-MSB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PURSUANT TO CAL. CODE CIV. PROC. § 425.16**<br><br>**(Doc. No. 14)** |

Pending before the Court is Defendant Palomar Community College District's motion to dismiss pursuant to Cal. Code Civ. Proc. § 425.16. (Doc. No. 14.) Plaintiff filed an opposition to Defendant's motion to dismiss, to which Defendant replied. (Doc. Nos. 18, 19.) Having reviewed the papers submitted and oral argument from both parties, the Court **DENIES** Defendant's motion to dismiss in its entirety.

### I.　　BACKGROUND

Kathryn Kailikole ("Plaintiff") brings seven causes of action, under state and federal law, for retaliation and disability discrimination against her previous employer, Palomar Community College District ("Defendant"). (Doc. No. 7.) Plaintiff alleges that on December 14, 2017 she was "mysteriously and suddenly placed on paid leave." (*Id.* ¶ 13.) She was told she could not speak to anyone at the college and was not given information

about why she was removed, other than that it involved an investigation related to a confidentiality issue. (*Id.* ¶ 14.) Plaintiff remained on paid leave for five months without ever being informed of the nature of the allegations. (*Id.* ¶ 15.)

Plaintiff's retaliation claims are rooted in her participation as a witness in an investigation against Takashi Nakajima ("Nakajima") and Arthur Gerwig ("Gerwig"), who were professors at Palomar Community College District accused of sexual harassment and race discrimination. (*Id.* ¶¶ 5–10.) In May 2017, Plaintiff received a report from a faculty member about their racist and sexually harassing conduct, and reported the incident to Shawna Cohen, the District's Manager of the Equal Opportunity and Compliance Office and a Deputy Title IX Coordinator. (*Id.* ¶ 6.) On November 1, 2017, an investigator for the school district concluded that Plaintiff was credible, and Nakajima and Gerwig were guilty of violating the College's anti-harassment policies. (*Id.* ¶ 9.) No action was taken against these professors. (*Id.* ¶ 10.) Plaintiff inquired and discussed with other faculty in November 2017 as to why action was not being taken. (*Id.*) On December 12, 2017, the District placed Nakjima and Gerwig on one month of unpaid leave. (*Id.* ¶ 12.) Plaintiff was subsequently placed on paid leave on December 14, 2017. (*Id.* ¶ 13.) Plaintiff alleges that her computer was searched, without her consent, to acquire evidence that would discredit her report of Nakajima's and Gerwig's racist and sexually harassing conduct. (*Id.* ¶ 19.) Through this search, an email dated December 8, 2017 was obtained. (*Id.*) This email contained a forwarded message from the Plaintiff to another faculty member about an incident involving Nakajima and Gerwig. (*Id.*) The faculty member then forwarded the email to his wife. (*Id.* ¶¶ 20–22.) Based on this conduct, the District investigator concluded that Plaintiff was part of a conspiracy to leak confidential information about Nakajima and Gerwig outside the College. (*Id.*) Plaintiff's disability claims are rooted in her informing the Defendant of her disability and her subsequent termination. (*Id.* ¶¶ 2, 11, 14.)

## II.     LEGAL STANDARD

Pursuant to California Code of Civil Procedure section 425.16 (the anti-SLAPP statute), a defendant may bring a special motion to strike a cause of action "arising from

any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue." Cal. Code Civ. Proc. ["CCP"], § 425.16, subd. (b)(1). A court determines whether a motion to strike a complaint should be granted by conducting a two-step process. *Holbrook v. City of Santa Monica*, 144 Cal. App. 4th 1242, 1247 (Cal. Ct. App. 2006). In the first prong, the defendant has the burden of making "a threshold showing that the challenged cause of action is one arising from protected activity." CCP § 425.16, subd. (e); *Holbrook*, 144 Cal. App. 4th at 1247. If the defendant meets that burden, then the plaintiff must establish "a probability of prevailing on the claim" supported by admissible evidence. CCP § 425.16, subd. (b); *Navellier v. Sletten*, 29 Cal. 4th 82, 88–89 (2002).

The California Legislature enacted the anti-SLAPP statute to prevent and deter "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." CCP § 425.16, subd. (a). As such, the Legislature requires courts to construe this section broadly. *Id.*

### III.   DISCUSSION

#### A.   First and Second Causes of Action

The first and second causes of action (Title IX and Title VI claims, respectively) are federal claims. The law is unequivocally clear; California's anti-SLAPP statute does not apply to federal claims. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). Accordingly, the Court **DENIES** Defendant's motion to dismiss the first and second causes of action.

#### B.   Third through Seventh Causes of Action

Defendant argues Plaintiff's entire lawsuit arises from Defendant's protected activity. (Doc. No. 14 at 8.)

A claim "arises from protected activity" where the defendant's conduct fits into one of the following four categories of protected free speech and petitioning activities: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral

1  statement or writing made in connection with an issue under consideration or review by a
2  legislative, executive, or judicial body, or any other official proceeding authorized by law;
3  (3) any written or oral statement or writing made in a place open to the public or a public
4  forum in connection with an issue of public interest; or (4) any other conduct in furtherance
5  of the exercise of the constitutional right of petition or the constitutional right of free speech
6  in connection with a public issue or an issue of public interest. CCP § 425.16(e); *Park v.*
7  *Bd. of Trustees of the California State Univ.*, 2 Cal. 5th 1057, 1062–63 (2017).

8  The court disregards the labeling of the claim and instead examines the "principal
9  thrust or gravamen" of the claim. *Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal. App. 4th
10 1264, 1272 (Cal. Ct. App. 2009).

11                 i.     Section 425.16, subdivision (e)(2)

12 Defendant asserts the pre-termination procedures constituted an "official proceeding
13 authorized by law." (Doc. No. 14-1 at 15.) Plaintiff does not oppose this assertion. (*See*
14 *generally* Doc. No. 18.) Defendant argues the alleged wrongful acts (placing Plaintiff on
15 leave, not renewing her employment contract, and ultimately terminating her) were carried
16 out in furtherance, or in anticipation, of the official proceeding, and thus, constituted
17 "protected activity." (Doc. No. 19 at 3.)

18 Defendant relies upon *Vergos*, *Miller*, and *Hansen* for its argument that Defendant's
19 acts constituted protected activity under the anti-SLAPP statute. (Doc. No. 14-1 at 15–16.)
20 However, the instant case is distinguishable from each of these cases. In *Vergos*, plaintiff
21 alleged he was sexually harassed in his public employment and filed a civil rights claim
22 against the manager who denied his administrative grievance. *Vergos v. McNeal*, 146 Cal.
23 App. 4th 1387, 1390 (Cal. Ct. App. 2007). The court held that the hearing officer's decision
24 to deny the employee's grievance was protected activity because to hold otherwise "could
25 result in public employees' reluctance to assume the role of a hearing officer . . . and thus
26 thwart the petitioning activities of employees with grievances." *Id.* at 1398.

27 Unlike here, the *Vergos* court addressed an anti-SLAPP motion filed by the
28 individual officer, not by the public university employer. *Id.* at 1390. The *Vergos* court was

not required to, and thus did not, address whether any claims against the employer defendant arose from protected activity. *See Park*, 2 Cal. 5th at 1070. Here, Plaintiff sued only the public entity, and it is the public entity that filed the motion to strike. As such, Defendant's reliance on *Vergos* is misplaced.

In *Miller*, a former employee sued its city employer for racial discrimination, harassment, retaliation, failure to correct, intentional infliction of emotional distress, and defamation. *Miller v. City of Los Angeles*, 169 Cal. App. 4th 1373, 1378 (Cal. Ct. App. 2009). There, the court held defendant's motion to strike was proper because plaintiff's claims arose out of his public employer's investigation and determination of plaintiff's misconduct. *Id.* at 1383. Notably, defendant's motion to strike was filed *only* as to the claims for intentional infliction of emotional distress and defamation. *Id.* at 1378–79. Here, Plaintiff's claims are for retaliation and discrimination. Accordingly, *Miller* is not instructive in resolving Defendant's motion to strike claims for retaliation and discrimination.

Finally, in *Hansen*, a retired employee sued his public employer for retaliation prohibited under the whistleblower statute. *Hansen v. California Dept. of Corrs. and Rehab.*, 171 Cal. App. 4th 1537, 1541 (Cal. Ct. App. 2008). There, defendant launched an investigation into allegations made that plaintiff had committed criminal acts. *Id.* The court held the public employer's "internal investigation itself was an official proceeding authorized by law" and statements and writings made in connection therewith were protected activity. *Id.* at 1544. Significantly, the court noted the plaintiff's "complaint [was] based on statements and writings [defendant's] personnel made during the internal investigation and in securing the search warrant." *Id.* at 1544. Here, Plaintiff's allegations are not based on *statements or writings*; rather, they are based on the *adverse employment actions* of placing Plaintiff on paid leave, not renewing her employment contract, and terminating her. (Doc. No. 7 ¶ 28.)  As such, *Hansen* does not aid Defendant in establishing its acts constituted "protected activity."

The holdings in *Nam* and *Park* are instructive here. In both cases, the defendants raised similar arguments as Defendant. In *Nam*, the plaintiff, a medical resident of University of California Davis, was investigated and terminated after complaining about medical procedures. *Nam v. Regents of the Univ. of California*, 1 Cal. App. 5th 1176, 1180–82 (Cal. Ct. App. 2016). Plaintiff sued her employer, a public hospital, for discrimination, sexual harassment, and wrongful termination. *Id.* at 1184. The defendant, Regents, filed an anti-SLAPP motion asserting the suit was "based on the oral and written complaints it received about [plaintiff], the various written warnings it provided her, the results of the ensuing investigations, and her written notice of termination," which all constituted protected activity. *Id.* at 1186. The court rejected this argument and held it was "perfectly clear" that the gravamen of plaintiff's claims was based on defendant's retaliatory conduct for challenging the department's policies and procedures and rejecting inappropriate sexual advances. *Id.* at 1193. The court questioned whether plaintiff's suit should have been characterized as a SLAPP *at all* because "a quintessential SLAPP is filed by an economic powerhouse to dissuade its opponent from exercising its constitutional right to free speech or to petition." *Id.* at 1191.

In *Park*, the plaintiff, a Korean professor at California State University, was denied tenure while Caucasian faculty members with comparable records were granted tenure. *Park*, 2 Cal. 5th at 1068. The Supreme Court disapproved of defendant's argument that "all aspects of its tenure process, including its ultimate decision, are inextricably intertwined protected activity." *Id.* at 1071. The court held the ultimate tenure decision *itself* is not protected activity. *Id.* at 1069. In reaching this decision, the court explained that denying protection for the ultimate decision itself would not chill participation on matters of public importance and "none of the core purposes the Legislature sought to promote when enacting the anti-SLAPP statute are furthered by ignoring the distinction between a government entity's decisions and the individual speech or petitioning that may contribute to them." *Id.* at 1071.

Presently, Defendant asserts the facts here are distinguishable from *Nam* and *Park* for two reasons. First, Defendant contends, unlike the defendants in *Nam* and *Park*, its personnel decisions were subject to statutory requirements. (Doc. No. 14-1 at 18.) Specifically, Defendant is subject to California Government Code section 54950 (the Ralph M. Brown Act), which mandates all official business conducted by public entities in California be openly accessible to the public. (*Id.* at 12.) Defendant argues because the disciplinary actions taken against Plaintiff were under a publicly disclosed vote and subject to public scrutiny, the termination decision was a protected activity. (*Id.* at 19.)

However, the *Park* court observed that "[g]overnment decisions are frequently 'arrived at after discussion and a vote at a public meeting.'" *Park*, 2 Cal. 5th at 1067 (quoting *San Ramon Valley Fire Protection Dist. v. Contra Costa Cty. Employees' Retirement Assn.*, 125 Cal. App. 4th 343, 358 (Cal. Ct. App. 2004)). Even so, "[a]cts of governance mandated by law, without more, are not exercises of free speech or petition." *San Ramon*, 125 Cal. App. 4th at 354.

Defendant argues a finding that public entity decisions are protected activity will not immunize public entities from judicial scrutiny. (Doc. No. 14-1 at 20.) The Court disagrees. A termination decision reached unanimously under a publicly disclosed vote does little – if anything at all – to alleviate the concern that public employers could simply terminate employees with unlawful motives and then shield themselves with the anti-SLAPP statute.

Second, Defendant asserts, unlike the defendants in *Nam* and *Park*, Defendant's protected activity forms the gravamen of Plaintiff's complaint and is not "merely incidental" to Plaintiff's causes of action. (Doc. No. 14-1 at 19.) Specifically, Defendant argues that, unlike in *Nam* and *Park*, Plaintiff alleged the retaliatory and discriminatory conduct occurred *after* Defendant had initiated an investigation into Plaintiff's misconduct. (*Id.* at 19–20.) Defendant places heavy weight on this distinguishable fact. However, no authority has been cited to establish that allegations of retaliatory and discriminatory conduct after the commencement of an investigation would bring the conduct within the scope of "protected activity." In support of this argument, Defendant only quotes the *Nam*

court, which stated, "had defendants received the complaints about [plaintiff's] performance and proceeded to discipline her in a manner commensurate with her shortcomings, in the absence of evidence of retaliation, its acts would have been characterized as protected." (*Id.* at 13 (quoting *Nam*, 1 Cal. App. 5th at 1192).)

The distinction Defendant highlights is not persuasive. Defendant cites no authority that supports its position. Moreover, the significant phrase in the *Nam* quote is "in the absence of evidence of retaliation." Presently, this Court has already determined that Plaintiff has pled sufficient facts to evidence retaliatory and discriminatory conduct. (Doc. No. 20 at 5–7.) Finally, the argument is troublesome from a public policy standpoint. Defendant seeks to have this Court exonerate its actions by bringing it within the scope of "protected activity" because Plaintiff pled the retaliation and discrimination occurred *after* the investigation. To make such a holding would entice public employers with ill motives to prematurely or unjustifiably commence investigations by instilling confidence that they'll prevail on a motion to strike. As the *Nam* court put it: "[t]he anti-SLAPP statute was not intended to allow an employer to use a protected activity as the means to discriminate or retaliate and thereafter capitalize on the subterfuge by bringing an anti-SLAPP motion to strike the complaint." *Nam,* 1 Cal. App. 4th at 1191.

In an anti-SLAPP analysis, we must accept as true the plaintiff's pleaded facts. *Young v. Tri-City Healthcare Dist.*, 210 Cal. App. 4th 35, 54 (2012). Here, Plaintiff alleged she reported Nakajima and Gerwig's racist and sexually harassing conduct. (Doc. No. 7 ¶ 6.) Plaintiff alleged she requested disability accommodation. (*Id.* ¶ 11.) Plaintiff further alleged Defendant thereafter retaliated and discriminated against her by placing her on paid leave, not renewing her contract, and terminating her. (*Id.* ¶ 28.) As alleged, the adverse employment decisions were not taken because of Plaintiff's performance issues or the pre-termination procedures; rather the thrust of Plaintiff's complaint is that Defendant retaliated against her for reporting Nakajima's and Gerwing's racist and sexually harassing conduct and discriminated against her for her disability. (Doc. No. 7 ¶¶ 2, 6, 11, 14.)

### ii.     Section 425.16, subdivision (e)(4)

Defendant next argues the alleged wrongful acts were undertaken in connection with a public interest and thus, were protected. (Doc. No. 14-1 at 17.) Plaintiff was responsible for managing taxpayer funded grants, while receiving a taxpayer funded salary, which Defendant argues was a matter of public interest. (*Id.*) Defendant contends Plaintiff's performance issues placed Defendant in jeopardy of losing grants that fund college programs and professor salaries. (*Id.*) Moreover, an investigation of Plaintiff's "suspicious communications" where confidential information was leaked to persons outside of the District "was a legitimate public interest." (*Id.*) Defendant argues the alleged performance issues imposed a "duty" on Defendant to perform the acts that form the basis of Plaintiff's complaint. (*Id.*)

In support of this public interest argument, Defendant relies on *Hunter v. CBS Broadcasting, Inc.*, 221 Cal. App. 4th 1510 (2012). In *Hunter*, a television station decided to hire a young, female weather news anchor instead of an older, male applicant. *Id.* at 1514. The male applicant sued the television station alleging age and gender discrimination. *Id.* at 1515. In finding defendant's conduct fit within subdivision (e)(4) of the anti-SLAPP statute, the court reasoned "reporting the news" was an exercise of free speech, weather reporting was a matter of public interest, defendant's selection of weather anchors to report the news "helped advance or assist" First Amendment expression, and therefore, the selection qualified as "protected activity." *Id.* at 1521.

To the extent Plaintiff managed taxpayer funded grants and received a tax-payer funded salary, Plaintiff's performance issues may have been a matter of public interest. Regardless, Defendant failed to establish how its conduct consists of activities *furthering free speech or petitioning rights* required to bring its conduct within the scope of "protected activity". Thus, this Court **DENIES** Defendant's Motion to Dismiss Plaintiff's third, fourth, fifth, sixth, and seventh causes of action.

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendant's motion to dismiss pursuant to Cal. Code Civ. Proc. § 425.16. in its entirety, (Doc. No. 14), and **ORDERS** Plaintiff to submit an itemization detailing the attorneys' fees incurred in opposing Defendant's motion to dismiss *the federal claims* pursuant to Cal. Code Civ. Proc. § 425.16 by September 13, 2019.

**IT IS SO ORDERED**.

Dated: August 22, 2019

Hon. Anthony J. Battaglia
United States District Judge