DWIN LEGAL, APC
Evan Dwin (SBN 241027)
550 Laguna Drive, Suite A
Carlsbad, CA 92008
Tel: (760) 536-6471
Fax:(760) 585-4649

Attorneys for Plaintiff
KATHRYN KAILIKOLE

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| KATHRYN KAILIKOLE, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>PALOMAR COMMUNITY COLLEGE DISTRICT, a governmental entity; and DOES 1 through 25, inclusive;<br><br>Defendants. | Case No. 3:18-cv-02877-AJB-MSB<br><br>**PLAINTIFF KATHRYN KAILIKOLE'S APPLICATION FOR ATTORNEYS' FEES PURSUANT TO THE COURT'S ORDER DATED AUGUST 22, 2019 DENYING DEFENDANT'S ANTI-SLAPP MOTION** |
|---|---|

## I. INTRODUCTION.

On August 22, 2019, this Court denied Defendant Palomar Community College District's (the "District") anti-SLAPP Motion, in which the District sought to strike Plaintiff Kathryn Kailikole's ("Plaintiff") entire First Amended Complaint. The amended complaint consisted of seven claims for discrimination and retaliation, including federal claims for retaliation under Title IX and Title VI.

Because the law is "unequivocally clear" that California's anti-SLAPP statute does not apply to federal claims, the Court awarded Plaintiff her attorneys' fees in opposing the anti-SLAPP motion with respect to her two federal claims.

The arguments in Plaintiff's opposition regarding whether her claims arose from "protected activity," and the majority of the issues on merits of Plaintiff's claims applied to all Plaintiff's claims, including her two federal claims. There were

also several issues which applied only to Plaintiff's federal claims, such as whether the anti-SLAPP statute can apply to federal claims and the District's erroneous claim that federal anti-discrimination laws do not protect managers who report harassment. Accordingly, it is reasonable for Plaintiff to recover 2/7 (or 28.6%) of the lodestar amount of the total reasonable attorneys' fees related to the entire opposition to the District's anti-SLAPP motion. In addition, Plaintiff is entitled to recover her reasonable attorneys' fees for attorney hours spent preparing this application for fees. Based on prevailing market rates for the San Diego market and the hours spent by Plaintiff's attorneys, Plaintiff seeks to recover $9,852.70 in attorneys' fees for the opposition, which is 2/7 of the total lodestar of $34,450, plus $6,545 for the time spent on this fee application for a total of $16,397.70.

## II. PLAINTIFF'S CLAIMS AND THE DISTRICT'S ANTI-SLAPP MOTION.

Plaintiff filed the Amended Complaint in this Action on January 18, 2019. (Doc. 7.) In the Amended Complaint, Plaintiff alleges that her former employer, the District, paced her on paid leave, non-renewed her contract and terminated her employment in retaliation for Plaintiff reporting racist and sexually harassing conduct by two professors at Palomar College and to avoid providing her with a reasonable accommodation for her disability. (Doc. 7.) Based on these allegations, Plaintiff alleges two causes of action under federal law, retaliation under 20 U.S.C. section 1681 ("Title IX") and retaliation under 42 U.S.C. 2000d ("Title VI"). (Doc. 7, ¶¶ 87-95, 96-104.) Plaintiff also alleges five causes of action under California law: 1) retaliation in violation of Government Code section 12940 *et seq.* ("FEHA"); 2) disability discrimination under FEHA; 3) failure to accommodate disability under FEHA; 4) failure to engage in the interactive process in violation of FEHA; and 5) retaliation in violation of Labor Code section 1102.5. (Doc. 7, ¶¶ 105-139.)

On or about March 19, 2019, the District filed a special motion to strike the Amended Complaint pursuant to California Code of Civil Procedure section 425.16

(the "anti-SLAPP Motion"). (Doc. 14.) The District submitted more than 800 pages of purported evidence in support of the anti-SLAPP Motion and cited 36 cases and 13 different statutes in its brief. (Doc. 14-1, 14-2, 14-3, 14-4.)

In the anti-SLAPP Motion, the District's asserted that all 7 of Plaintiff's claims, including her two federal claims, purportedly arise out of "protected activity." (Doc. 14-1, 10:1-28.) The District further claimed that none of Plaintiffs claims can succeed because, it alleges, it terminated Plaintiff for legitimate, non-retaliatory and non-discriminatory reasons. (Doc. 14-1, 7:13-14:2, 14:5-15:17.) The District also made an argument specific to Plaintiff's federal claims based on its position that a supervisor who reports discrimination and harassment is not protected from retaliation under Title VI and Title IX. (Doc. 14-1, 15:18-18:12).

In her opposition, Plaintiff responded to each of Defendant's arguments as to all claims, including demonstrating that none of her causes of action "arise from "protected activity" and that each of cause of action has merit. (Doc. 18.) Plaintiff further argued that the anti-SLAPP Motion should be denied as to her federal claims because an anti-SLAPP Motion cannot be brought as to federal claims. (Doc. 18, 10:18-11:2).

On July 18, 2019, the Court heard Defendant's anti-SLAPP Motion and took the matter under submission. (Doc. 29.) On July 24, 2019, without seeking leave of the Court, the District submitted supplemental briefing on the issue of whether all of Plaintiff's claims "arise from protected activity." (Doc. 30.) Plaintiff filed a response to the District's supplemental brief on July 25, 2019. (Doc. 31.)

On August 22, 2019, the Court denied the anti-SLAPP Motion in its entirety. (Doc. 34.) The Court held that the "law is unequivocally clear" that California's anti-SLAPP statute does not apply to federal claims. (Doc. 34, 3:16-21.) The Court also denied the anti-SLAPP motion in its entirety because none of Plaintiff's claims arise out of protected activity. (Doc. 34, 3:23-24, 9:21-26.) The Court did not need to reach the issue of the merits because Plaintiff's claims do not arise out of protected

activity.[1] The Court ordered Plaintiff to submit an itemization detailing the attorneys' fees incurred in opposing the anti-SLAPP motion as to her federal claims. (Doc. 34.) In accordance with that Order, Plaintiff submits this application to recover attorneys' fees related to Defendant's frivolous attempt to strike her federal claims.

### III. PLAINTIFF IS ENTITLED TO RECOVER HER REASONABLE ATTORNEYS' FEES RELATED TO HER FEDERAL CLAIMS.

"If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award courts and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." Cal. Code Civ. Proc. 425.16(c)(1); *Workman v. Colichman*, 245 Cal. Rptr. 3d 636, 651-53 (Ct. App. 2019); *Moore v. Shaw*, 116 Cal. App. 4th 182, 199-200 (2004). A motion is frivolous if the caselaw is clear that section 425.16 does not apply and no caselaw supports its application. *See, Workman, supra*, 245 Cal. Rptr. 3d at 651.

In denying the anti-SLAPP Motion, the Court held that the law was "unequivocal" that the anti-SLAPP statute does not apply to federal claims. Thus, an award of attorneys' fees applying the lodestar method is appropriate because the anti-SLAPP Motion was frivolous as to Plaintiff's federal claims.

### IV. THE ADJUSTED LODESTAR METHOD FOR CALCULATING FEES APPLIES TO ANTI-SLAPP MOTIONS.

A court assessing attorneys' fees awarded in connection with an anti-SLAPP motion "begins with the touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly rate of each attorney . . . involved in the presentation of the case." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001)1131-32 (*citing Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977); *see also*

---

[1] While the Court did not reach the merits, Plaintiff had no choice but to research, brief and present evidence on the merits as to all of her claims in opposing the anti-SLAPP Motion. (Declaration of Evan Dwin ("Dwin Decl. ¶ 18.)

*Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (2000)

The lodestar is "the basic fee for comparable legal services in the community." *Ketchum, supra*, 24 Cal. 4th at 1132. The relevant community is the generally the forum in which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Recoverable fees include compensation for all hours reasonably spent "including those necessary to establish and defend the fee claim." *Serrano, supra*, 32 Cal. 3d at 369; *Davis v. City and Cty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992) (citation omitted), *opinion vacated on other grounds by* 984 F.2d 345 (9th Cir. 1993).

"The reasonable market value of the attorney's services is the measure of the reasonable hourly rate." *Chacon v. Litke*, 181 Cal. App. 4th 1234, 1260 (2010). "This standard applies regardless of whether the attorneys claiming fees charged nothing for their services, charged at below-market or discounted rates, represent the client on aa straight contingent fee basis, or are in house counsel." *Id.* The determination of reasonable hourly rates is made by examining the prevailing market rates in the relevant community charged for similar services by "lawyers of reasonably comparable skill, experience and reputation." *Davis, supra*, 976 F.2d at 1546. "Affidavits of the plaintiff's attorney . . . and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *Id.* at 980.

A court may also rely on its own knowledge, experience and familiarity with the relevant legal market in determining reasonable hour rates. *Ingram v. Oroudjian*, 648 F. 3d 925, 928 (9th Cir. 2011). Further, "[t]rial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). The trial court's goal should be "to do rough justice, not to achieve auditing perfection." *Id.*

In addition, once the trial court has determined the lodestar, it may adjust the amount based on factors including: 1) the novelty and difficulty of the questions involved; 2) the skill displayed in presenting them; 3) the extent to which the nature

of the litigation precluded other employment by the attorneys; and 4) the contingent nature of the fee award. *Ketchum, supra* 24 Cal. 4th at 1132; *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (in the Ninth Circuit, courts calculate an award of attorneys' fees by multiplying "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.")

## V. THE REQUESTED RATES FOR PLAINTIFF'S COUNSEL ARE REASONABLE.

Courts in the Southern District of California have consistently approved rates of between $550 per hour and $730 for attorneys with experience of between 10 and 15 years. (Dwin Decl. ¶¶ 14-16.) For example, in August of last year in *San Diego Comic Convention v. Dan Farr Prods.*, 2018 U.S. Dist. LEXIS 143802 **39, this Court found that, the following rates are reasonable for the San Diego market: 1) between $550 per hour and $685 per hour for a partner with over fourteen years of experience; 2) between $550 and $730 per hour for an attorney who graduated from the University of San Diego in 2007 (*i.e.*, approximately eleven years of experience); 3) $545 per hour for an associate attorney who graduated law school in 2014 (*i.e.*, approximately 4 years of experience); and 4) between $675 and $765 per hour for other partner level attorneys. (Dwin Decl. ¶ 14, Ex. 2.)

Similarly, in *Vess v. Bank of America, N.A.*, 2013 U.S. Dist. LEXIS 157427 **10 (S.D. Cal., October 24, 2013) six years ago, this Court, applying the lodestar method, approved attorneys' fees requested by the plaintiffs' lawyers which included a requested rate of $575 per hour for an employment attorney with approximately eleven years of experience. (Dwin Decl. ¶ 15, Exs. 5-6; Declaration of Alisa Martin, ¶¶ 10, 16-17.); *see also Iorio v. Allianz Life Ins. Co. of N. Am.*, 2011 U.S. Dist. LEXIS 50452 *31-32 (S.D. Cal. March 3, 2011) (approving partner rates as high as $750 per hour in 2011).

Here, Plaintiff is requesting a rate of $550 per hour for Evan Dwin, who is the principal of his firm and has 14 years of experience, and rate of $300 per hour for

1  Miguel Mendez-Pintado, who has one year of experience. (Dwin Decl. ¶¶ 2-6.)
2  Based on the foregoing, and relevant billing survey data, these rates are reasonable
3  for the San Diego market for attorneys of comparable skill, experience and
4  reputation. (Dwin Decl. ¶¶ 14, 16, 21 Exs. 2-7.)

5  **VI.  THE HOURS WORKED BY PLAINTIFF'S COUNSEL ARE**
6  **REASONABLE.**

7  The anti-SLAPP motion was a complex motion, which was prepared by three
8  attorneys in a national law firm specializing in employment law. (Dwin Decl. ¶ 7.)
9  The District's anti-SLAPP motion contained several novel arguments regarding the
10 definition of "protected activity" by government actors, cited 36 cases and 13 statutes
11 and was accompanied by more than 800 pages of purported evidence. (Dwin Decl. ¶
12 7.) The District also made at least one argument as to the merits of each of Plaintiff's
13 seven causes of action. (Dwin Decl. ¶ 17.)

14 The District's anti-SLAPP motion was further complicated by the fact that the
15 District removed the case to federal court where the Federal Rules of Civil Procedure
16 conflict with certain provisions of the anti-SLAPP statute, which is contained in
17 California's Code of Civil Procedure. (Dwin Decl. ¶ 8.) These procedural issues,
18 including the proper standard to apply to the merits, applied to all 7 of Plaintiff's
19 causes of action. (Dwin Decl. ¶ 8.)

20 Moreover, if an anti-SLAPP motion is granted, not only is the plaintiff's case
21 dismissed, but the plaintiff is required to pay the Defendant's attorney's fees. Thus, it
22 was extremely important for Plaintiff's counsel to file a thoroughly research and well-
23 written brief, make every reasonable argument available, submit an extensive amount
24 of evidence and arrive the hearing well-prepared to oppose to the anti-SLAPP
25 motion. Plaintiff's attorneys were also forced to spend additional time opposing the
26 motion when the District submitted further briefing after the matter was taken under
27 submission by the Court. (Dwin Decl. ¶ 8.)

28 As set forth in more detail in the Declaration of Evan Dwin, Mr. Dwin spent

44.8 hours and Mr. Mendez Pintado spent 29.4 hours between researching the opposition, drafting the opposition, gathering and preparing the evidence submitted in support of the opposition, preparing and appearing at the hearing on the anti-SLAPP motion and responding to the District's supplemental briefing. (Dwin Decl. ¶ 10, Ex. 1.) Given the complexity of the motion, the number of authorities cited by the District, the volume of purported evidence submitted and the critical importance of prevailing, the time spent on the opposition was reasonable. (Dwin Decl. ¶ 10.) Thus, the total lodestar for the entire opposition is as follows:

| Attorney | Rate | Hours | Total Fees |
|---|---|---|---|
| Evan Dwin | $550 | 44.8 | $24,640 |
| Miguel Mendez-Pintado | $300 | 29.4 | $8,820 |
|  |  |  | **$33,460** |

(Dwin Decl. ¶ 19.)

Plaintiff's counsel also had to prepare and file this application for fees. Mr. Dwin spent 11.9 hours preparing this fee application for an additional lodestar of $6,545 (*i.e.*, 11.9 x $550). (Dwin Decl. ¶¶ 10, 20, Ex. 1.)

**VII. THE COURT SHOULD AWARD 28.6% OF THE TOTAL LODESTAR AMOUNT PLUS ALL FEES RELATED TO THIS FEE APPLICATION.**

The District brought the anti-SLAPP motion as to all seven causes of action. Accordingly, nearly all of the facts cited in the brief and all of the legal argument on the merits, except for short sections specific to the disability claims and the Labor Code section 1102.5 claim, apply to Plaintiff's federal claims as well her other claims. Thus, it is not possible to specifically attribute all of the attorney time spend on the opposition to any specific cause of action. (Dwin Decl. ¶ 18.) Accordingly, Plaintiff asserts that she should recover 28.6% (*i.e.*, 2/7) of the entire lodestar, which evenly allocates the work on the motion between each of Plaintiff's seven causes of

action. (Dwin Decl. ¶ 18.) This allocation is reasonable and likely low because there are at least two sections of the opposition – the section regarding the "manager rule" issue and the section regarding the inapplicability of the anti-SLAPP statute to federal claims – which apply <u>only</u> to the federal claims. Thus, Plaintiff seeks to recover $9,569.56 in attorneys' fees for the opposition (*i.e.*, $33,460 x .286) plus $6,545 for this fee application for a total of $16,114.56. (Dwin Decl. ¶ 20.)

Plaintiff is not seeking a multiplier or enhancement in this application, even though one would be appropriate.[2] Specifically, there was a high level risk in defending the motion because of the possibility of dismissal and an award of attorneys' fees to the District. Further, Plaintiff achieved an excellent result - a complete denial of the motion and a partial award of attorneys' fees, which is rare for a plaintiff opposing an anti-SLAPP motion. Thus, Plaintiff's fee request, which is limited to an evenly allocated percentage of the lodestar as to the frivolous portion of the anti-SLAPP motion plus the fees incurred in filing this application, is reasonable.

## VIII. CONCLUSION

Based on the foregoing, Plaintiff requests attorneys' fees in the amount of $16,114.56 for opposing the District's frivolous anti-SLAPP Motion as to her federal claims.

Dated: September 10, 2019            **DWIN LEGAL, APC**

By: /s/ Evan Dwin
    Evan Dwin
Attorneys for Plaintiff KATHRYN KAILIKOLE

---

[2] Plaintiff reserves her right to seek an enhanced award on any future fee awards, such as if she is awarded a judgment or if there is a settlement that requires a motion for attorneys' fees.