1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                       SOUTHERN DISTRICT OF CALIFORNIA

9

10    KATHRYN KAILIKOLE, an individual,      Case No.: 18-cv-02877-AJB-MSB

11                              Plaintiff,
                                             **ORDER GRANTING IN PART**
12    v.                                     **PLAINTIFF'S MOTION FOR**
                                             **ATTONEYS' FEES**
13    PALOMAR COMMUNITY COLLEGE
      DISTRICT, a governmental entity; and
14    DOES 1 through 25, inclusive,          **(Doc. No. 37)**

15                              Defendant.

16

17          Before the Court is Plaintiff's motion for attorneys' fees. (Doc. No. 37.) For the

18    reasons stated herein, the Court **GRANTS IN PART** the motion.

19                              **I.    BACKGROUND**

20          Kathryn Kailikole ("Plaintiff") brought seven causes of action against her former

21    employer, Palomar Community College District ("Defendant" or "District"), which

22    included five state claims and two federal claims, namely one under Title IX of the

23    Education Amendments of 1972, as amended, 20 U.S.C. § 1681 *et seq.* and another under

24    Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*). (Doc. No. 7.)

25    Defendant thereafter filed a motion to dismiss all seven causes of action pursuant to

26    section 425.16 of the California Code of Civil Procedure ("anti-SLAPP motion"). (Doc.

27    No. 14.)

28    //

1

1  On August 22, 2019, the Court denied Defendant's anti-SLAPP motion in its

2  entirety. (Doc. No. 34.) The Court declined to dismiss the five state causes of action

3  because Defendant did not establish that its conduct was within the scope of "protected

4  activity." (*Id.* at 9.) The Court also denied the motion as to the federal causes of action

5  under Title IX and Title VI, finding that "[t]he law is unequivocally clear; California's

6  anti-SLAPP statute does not apply to federal claims." (*Id*. at 3.)

7  The Court then ordered Plaintiff to "submit an itemization detailing the attorneys'

8  fees incurred in opposing Defendant's motion to dismiss *the federal claims* pursuant to

9  Cal. Code Civ. Proc. § 425.16." (*Id.* at 10 (emphasis in original).) Pursuant to the Court's

10  Order, Plaintiff submitted an attorneys' fee application, requesting $19,414.56, inclusive

11  of the hours spent on the fee application. (Doc. Nos. 37, 51 at 3.) Defendant opposed the

12  application, arguing that the Court did not have jurisdiction to impose attorneys' fees

13  resulting from its anti-SLAPP motion, and that Plaintiff's requested fees are excessive.

14  (Doc. No. 48 at 2, 6.)

15  ## II.  LEGAL STANDARD

16  Pursuant to 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in

17  any case unreasonably and vexatiously may be required by the court to satisfy personally

18  the excess costs, expenses, and attorneys' fees reasonably incurred because of such

19  conduct." Sanctions under § 1927 requires a finding of bad faith or recklessness. *Lahiri v.*

20  *Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010); *In re*

21  *Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir.1996). "Bad faith is present

22  where an attorney knowingly or recklessly raises a frivolous argument." *Keegan*, 78 F.3d

23  at 436. An argument is frivolous if it is "wholly without merit" or "the result is obvious."

24  *Int'l Union of Petroleum & Industrial Workers v. W. Indus. Maint.*, Inc., 707 F.2d 425,

25  430 (9th Cir. 1983); *In re Nat'l Mass Media Telecomm. Sys., Inc.*, 152 F.3d 1178, 1181

26  (9th Cir. 1998). If sanctions are awarded, § 1927 "authorizes the taxing of only excess

27  costs incurred because of an attorney's unreasonable conduct; it does not authorize

28  imposition of sanctions to reimburse a party for the ordinary costs of trial." *United States*

1    *v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1347 (9th Cir. 1985).

2    Reasonableness is the benchmark for sanctions, and reasonable attorneys' fees are

3    determined based on the two-part "lodestar" approach. *Intel Corp. v. Terabyte Int'l*, 6

4    F.3d 614, 622 (9th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

5    Moreover, "costs of obtaining sanctions may be included in a sanctions award under

6    § 1927." *Blixseth v. Yellowstone Mountain Club*, LLC, 854 F.3d 626, 631 (9th Cir. 2017).

7                                     **III. DISCUSSION**

8        **A. Authority to Award Attorneys' Fees**

9           Defendant asserts that the Court lacks authority to issue sanctions in this case, and

10   that his anti-SLAPP motion was brought in good faith and not frivolous. (Doc. No. 48 at

11   2–4.) The Court disagrees.

12          Section 1927 authorizes the Court to issue sanctions for Defendant's attorney's

13   unreasonable and vexatious multiplication of proceedings in this case. *See* 28 U.S.C.

14   § 1927. Notwithstanding the fact that "[t]he law is unequivocally clear; California's

15   anti-SLAPP statute does not apply to federal claims," (Doc. No. 34 at 3), Defendant

16   sought to dismiss Plaintiff's federal causes of action by filing an anti-SLAPP motion

17   against those claims, (Doc. No. 14 at 14). *See Hilton v. Hallmark Cards*, 599 F.3d 894,

18   901 (9th Cir. 2010) ("a federal court can only entertain anti-SLAPP special motions to

19   strike in connection with state law claims"); *Bulletin Displays, LLC v. Regency Outdoor*

20   *Adver., Inc.*, 448 F.Supp.2d 1172, 1180–82 (C.D. Cal. 2006) ("Although the anti-SLAPP

21   statute does apply to state law claims brought in federal court . . . it does not apply to

22   federal question claims in federal court because such application would frustrate

23   substantive federal rights.") (citations omitted). Given the clarity of law on this issue, the

24   Court finds that the anti-SLAPP motion against Plaintiff's federal claims was "entirely

25   without merit," and that its result was "obvious." *Int'l Union of Petroleum & Industrial*

26   *Workers*, 707 F.2d at 430.

27          Moreover, despite having multiple occasions to brief the issue of attorneys' fees

28   relating to the anti-SLAPP motion, Defendant presented no argument as to why its

3

1   anti-SLAPP motion against the federal causes of action was not frivolous other than to

2   assert that because it challenged Plaintiff's federal claims along with her state law claims,

3   "[a]s a whole, the motion was brought in good faith, and was not frivolous." (Doc. No. 48

4   at 4 (emphasis in original).) This argument is unavailing. There is no requirement that a

5   defendant challenge all causes of action even where the challenge is clearly inapplicable

6   to some. *See Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir. 1985) ("Of course, counsel's

7   avowed concern for thoroughness and completeness is not inconsistent with a finding of

8   recklessness or bad faith."). Thus, the Court finds that Defendant's anti-SLAPP

9   arguments as to the federal claims were frivolous.[1] *See Keegan*, 78 F.3d at 436; *Int'l*

10  *Union of Petroleum & Industrial Workers*, Inc., 707 F.2d at 430.

11          Furthermore, a reasonable attorney performing legal research would have readily

12  discovered case law unequivocally contrary to Defendant's anti-SLAPP arguments on the

13  federal claims. The quality of Defendant's arguments was therefore "a gross deviation

14  from the standard of" legal arguments one would expect under these circumstances.

15  *Recklessly*, Black's Law Dictionary (11th ed. 2019). As such, the Court finds that

16  Defendant "recklessly raised a frivolous argument," and therefore engaged in conduct

17  tantamount to bad faith. *Keegan*, 78 F.3d at 436.

18

19  _____

20  [1] Defendant appears to argue that his anti-SLAPP motion against the federal claims was not without
    merit because "[t]here is a split of authority as to whether or not a defendant can utilize a state's
21  anti-SLAPP statute in federal court to challenge a complaint." (Doc. 48 at 2.) In support, Defendant
    cited the concurring opinion in *Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013) for the
22  proposition that *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.* "is wrong and should be
    reconsidered." (Doc. 48 at 3.) Defendant's reliance on this concurring opinion, however, is misplaced
23  because *Newsham* has no bearing on the question at issue here. The issue here is whether California's
    anti-SLAPP statute may be applied against federal claims, whereas *Newsham* concerned whether the
24  anti-SLAPP statute may be applied against state law claims in federal diversity suits. As such, the
    concurring opinion's disagreement with how *Newsham* applied the *Erie* doctrine does not affect the
25  federal question claims in this case. The distinction is readily apparent.

26
    The Court also notes that in this section of Defendant's opposition to Plaintiff's request for attorneys'
27  fees, it made repeated references to "Ninth District." (*Id.* at 2–3.) There being no "Ninth District" in the
    federal court or California state system, the Court construes these references as meaning the Ninth
28  Circuit Court of Appeals.

18-cv-02877-AJB-MSB

1    Based on the foregoing, the Court finds that by recklessly bringing a frivolous

2  anti-SLAPP motion against Plaintiff's federal claims, Defendant has unnecessarily

3  multiplied these proceedings. Accordingly, pursuant to 28 U.S.C. § 1927, the Court

4  awards Plaintiff reasonable attorneys' fees incurred in defending her federal claims

5  against the anti-SLAPP motion.[2]

6  **B. Reasonableness of Requested Fees**

7    Plaintiff requests attorneys' fees in the amount of $19,414.56, which includes

8  hours spent on the fee application and reply. (Doc. Nos. 37, 51 at 3) Under the two-part

9  lodestar approach for determining attorneys' fees, the court "must first determine the

10  presumptive lodestar figure by multiplying the number of hours reasonably expended on

11  the litigation by the reasonable hourly rate." *Intel Corp.*, 6 F.3d at 622 (citing *Hensley v.*

12  *Eckerhart*, 461 U.S. 424, 433 (1983)). Second, the court considers whether to adjust the

13  presumptively reasonable lodestar figure based on factors listed in *Kerr v. Screen Extras*

14  *Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975). *Intel Corp.*, 6 F.3d at 622. "The fee

15  applicant has the burden of producing satisfactory evidence, in addition to the affidavits

16  of its counsel, that the requested rates are in line with those prevailing in the community

17  for similar services." *Id.* at 622–23. If the applicant satisfies its burden of showing that

18  the asserted rate and hours expended are reasonable, "the resulting product is presumed to

19  be the reasonable fee." *Id.* at 622–23.

20  1) Hourly Rates

21    Plaintiff's attorneys assert that the hourly rates of $550 for Evan Dwin ("Mr.

22  Dwin") and $300 for Miguel Mendez-Pintado ("Mr. Mendez-Pintado") are reasonable

23  based on the prevailing market rate and the relevant community of San Diego, California.

24  (Doc. No. 37 at 6–7.) Mr. Dwin is graduate of the University of California Los Angeles

25  School of Law, is the principal of his firm, and has fourteen years of experience

26

27  [2] As the Court awards attorneys' fees pursuant to its statutory authority under 28 U.S.C. § 1927, it need
not consider Defendant's argument that the Court lacks authority to enforce the sanctions provisions of

28  the anti-SLAPP statute to Plaintiff's federal claims. (Doc. No. 48 at 2–4.)

1    practicing law. (*Id.* at 6–7.) In support of his requested rate, Mr. Dwin submitted cases

2    arising in the Southern District of California to show that his hourly rate is consistent

3    with those previously approved in the local community for attorneys with similar

4    experience. (*Id.* at 6; Doc. No. 37-1 at 12–92.) Based on this evidence, the Court finds

5    that Mr. Dwin's claimed hourly rate of $550 is reasonable. *See Intel Corp.*, 6 F.3d at

6    622–23. As to Mr. Mendez-Pintado, he graduated from the University of San Diego

7    School of Law in 2018 and has one year of experience. (Doc. Nos. 37 at 6–7, 37-1 at 2.)

8    To determine the local market rate for similarly situated attorneys, Mr. Dwin telephoned

9    counsel for Defendant, Kevonna Ahmad ("Ms. Ahmad"), who graduated from the same

10   law school and in the same year as Mr. Mendez-Pintado. (Doc. No. 37-1 at 7.) Ms.

11   Ahmad relayed that her hourly rate was $310. Based on this evidence, the Court finds

12   that Mr. Mendez-Pintado's claimed hourly rate of $300 is reasonable. *See Intel Corp.*, 6

13   F.3d at 622–23.

14        2) Hours Expended

15        Turning to the hours expended in defending the federal causes of action against

16   Defendant's anti-SLAPP motion, Plaintiff asserts that Mr. Dwin spent 44.8 hours and Mr.

17   Mendez-Pintado spent 29.4 hours. (Doc. No. 37 at 7–8.) These hours were derived from

18   determining the total hours each attorney spent on the entire anti-SLAPP motion, and

19   concluding that 2/7 (29%) of the total is the reasonable hours spent on the federal claims

20   because they comprised two of the seven causes of action challenged by the anti-SLAPP

21   motion. (*Id.* at 8–9.) This method of calculation appears reasonable at first blush;

22   however, given the clarity of law that the anti-SLAPP statute does not apply to federal

23   claims, the Court does not find that the number of hours spent can be, as Plaintiff

24   proposes, equally apportioned among the seven claims.

25        Although Plaintiff's counsels maintain that the hours expended are reasonable

26   "[g]iven the complexity of the motion, the number of authorities cited by the District, the

27   volume of purported evidence submitted and the critical importance of prevailing," (*Id.* at

28   8), the Court's authority under § 1927 authorizes an award *only for excess costs* incurred

6

1   by the multiplication of the proceedings—here, by having to defend her federal claims.

2   *See Associated Convalescent Enterprises, Inc.*, 766 F.2d at 1347 (Section 1927

3   "authorizes the taxing of only excess costs incurred because of an attorney's unreasonable

4   conduct"). It does not include costs incurred for the entire anti-SLAPP motion and work

5   that would have been performed, regardless of the attack on the federal claims, i.e.,

6   reviewing the moving papers as to the state claims, and the evidence and authority relating

7   thereto. *See id.* (Section 1927 "does not authorize imposition of sanctions to reimburse a

8   party for the ordinary costs of trial").

9        As fee applicants, Plaintiff's counsel bear the burden to demonstrate that they

10  made a "good faith effort to exclude from the fee request hours that are excessive,

11  redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. While Plaintiff's

12  attorneys claim that they were unable to separate the hours worked between the federal

13  and state claims, their itemized timesheets include time entries that clearly specify hours

14  spent on the federal claims. (Doc. No. 37-1 at 9–10.) The record shows that the time

15  spent on the federal claims was 5.5 hours for Mr. Dwin and 2.7 hours for Mr.

16  Mendez-Pintado. (*See, e.g., id.* at 9 ("procedural requirements in federal court and

17  application to discrimination cases"), 10 ("use of SLAPP motions for federal causes of

18  actions").) To the extent that Plaintiff's attorneys assert that additional hours were spent

19  on issues, evidence, and legal research common to the defense of the federal and state

20  claims, the Court declines to find that such overlap entailed excess costs.

21       In opposing Plaintiff's fee application, Defendant asserts that the reasonable hours

22  expended should be calculated based on the number of pages Plaintiff used to defend her

23  federal claims. (Doc. 48 at 5–6.) Defendant states that of the twenty-five pages Plaintiff

24  submitted to oppose the entire anti-SLAPP motion, three-and-a-half pages were devoted

25  to the federal claims. (*Id.* at 5–7; Doc. No. 37 at 9.) The hours reasonably spent on these

26  claims thus amount to 3.5/25 (14%) of the total hours each attorney spent on the motion.

27       Applying Defendant's algorithm, the reasonable hours spent for Mr. Dwin (14% of

28  44.8 total hours spent on the anti-SLAPP motion) equals <u>6.3 hours</u>, and the reasonable

7

1   hours spent for Mr. Mendez-Pintado (14% of 29.4 total hours spent on the anti-SLAPP

2   motion) equals 4.2 hours. These hours approximately track those listed in Mr. Dwin's and

3   Mr. Mendez-Pintado's submitted timesheets. (Doc. No. 37-1 at 9–10 (showing 5.5 hours

4   for Mr. Dwin and 2.7 hours for Mr. Mendez-Pintado).) In addition, the Court notes that

5   Mr. Dwin is an experienced employment law attorney, and the defense of the federal

6   claims did not involve unsettled questions of law and were readily resolved through

7   simple case law research. As such, the Court finds these adjusted hours reasonable. *See*

8   *Kerr*, 526 F.2d at 670. Multiplying the reasonable hours expended by the reasonable

9   rates, Mr. Dwin's sum is $3,465 (6.3 x $550), and Mr. Mendez-Pintado's sum is $1,260

10   (4.2 x $300). Altogether, the excess costs reasonably incurred by Plaintiff in defending

11   her federal claims total $4,725.

12        3)  "Fees-on-Fees"

13        Plaintiff also seeks to recover $6,545 for the 11.9 hours Mr. Dwin spent preparing

14   the fee application, plus $3,300 for the 6 hours he spent replying to Defendant's

15   opposition. (Doc. Nos. 37 at 9, 51-1 at 2.) Defendant contends that given the Court's

16   simple directive for Plaintiff "to submit an itemization detailing the attorneys' fees

17   incurred in opposing Defendant's motion to dismiss *the federal claims*[,]" (Doc. No. 34

18   at 10), Plaintiff's claimed hours for the fee application are excessive, (Doc. 48 at 7).

19        Because a fee applicant bears the burden to demonstrate the reasonableness of their

20   request, a court may reduce the requested award where documentation of the time

21   expended is inadequate. *See Hensley*, 461 U.S. at 433. As to the fee application, the Court

22   finds that certain time entries submitted in support thereof are too vague for the Court to

23   determine whether the hours reflected therein were reasonably expended. For example,

24   counsel submitted the following entries:

- begin drafting application for attorney's fees (1.4)
- continue drafting and revising application for fees (.9)
- continue drafting and revising application for fees and supporting declaration (1.1)
- compile evidence in support of fee application (1.2)

8

18-cv-02877-AJB-MSB

1
- draft and revise fee application and supporting declaration (1.2)

2
- continue drafting and revising fee application and supporting declaration (1.3)

3
- compile and prepare exhibits in support of motion (.8)

4   (Doc. No. 37-1 at 9–10.) The Court is unable to determine from these overly generalized

5   entries how much time was spent on the different sections of the fee application, and how

6   much time was spent on the various portions of the 110-page supporting documentation.

7   (Doc. No. 37, 37-1.) Neither the fee application nor Mr. Dwin's corresponding

8   declaration provide details necessary to determine whether the hours expended on these

9   entries were reasonable, as opposed to redundant and unnecessary. Without more, the

10   Court does not find that counsel has met his burden of demonstrating the reasonableness

11   of certain time entries reflected in his billing records. As such, the Court will deduct the

12   insufficiently detailed billing entries listed above, which total 7.9 hours, from the

13   requested 11.9 hours for the fee application. Thus, Plaintiff's counsel may recover 4

14   hours for the fee application.

15   Turning to the hours spent replying to Defendant's opposition, the Court finds that

16   counsel has adequately accounted for the 6 hours expended on Plaintiff's reply brief.

17   Because Defendant challenged not only the reasonableness of the fees requested, but also

18   the authority upon which the Court could award fees, Plaintiff was forced to conduct

19   additional research and draft a brief responsive to Defendant's multi-layered arguments.

20   (*See* Doc. No. 51-1 at 2.) Therefore, the Court finds that the claimed 6 hours spent on the

21   reply brief in support of the fee application is reasonable. Accordingly, adding the

22   reasonable hours spent on the fee application and reply (4 hours + 6 hours = 10 hours),

23   multiplied by Mr. Dwin's reasonable hourly rate (10 hours x $550), the Court concludes

24   that Plaintiff's counsel is entitled to "fees-on-fees" award of $5,500. *See Blixseth*, LLC,

25   854 F.3d at 631.

26   //

27   //

28   //

9

1

## IV. CONCLUSION

2      For the foregoing reasons, the excess costs reasonably incurred by Plaintiff in

3  defending her federal claims total $4,725, and those associated with the fee application

4  total $5,500. Added together, these costs equal $10,225. Thus, the Court **GRANTS IN**

5  **PART** Plaintiff's motion for attorneys' fees, and awards Plaintiff fees in the reduced

6  amount of **$10,225**.

7

8  **IT IS SO ORDERED.**

9  Dated:  October 22, 2020

10                                                                 Hon. Anthony J. Battaglia

11                                                                 United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10